## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ATRIUM CORPORATION, *et al.*,[1] | ) | Case No. 10-10150 (BLS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## JOINT PLAN OF REORGANIZATION OF ATRIUM CORPORATION AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

Richard M. Cieri (*pro hac vice* pending)
Joshua A. Sussberg (*pro hac vice* pending)
Brian E. Schartz (*pro hac vice* pending)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

Domenic E. Pacitti (Bar No. 3989)
Michael Yurkewicz (Bar No. 4165)
KLEHR HARRISON HARVEY
BRANZBURG LLP
919 Market Street, Suite 1000
Wilmington, DE 19801-3062
Telephone:     (302) 426-1189
Facsimile:     (302) 426-9193

*Proposed Counsel to the Debtors and Debtors in Possession*

Dated:  January 20, 2010

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are:  Atrium Corporation (4598); ACIH, Inc. (7822); Aluminum Screen Manufacturers, Inc. (6750); Atrium Companies, Inc. (2488); Atrium Door and Window Company - West Coast (2008); Atrium Door and Window Company of Arizona (2044); Atrium Door and Window Company of the Northeast (5384); Atrium Door and Window Company of the Northwest (3049); Atrium Door and Window Company of the Rockies (2007); Atrium Enterprises Inc. (6531); Atrium Extrusion Systems, Inc. (5765); Atrium Florida, Inc. (4562); Atrium Vinyl, Inc. (0120); Atrium Windows and Doors of Ontario, Inc. (0609); Champion Window, Inc. (1143); North Star Manufacturing (London) Ltd. (6148); R.G. Darby Company, Inc. (1046); Superior Engineered Products Corporation (4609); Thermal Industries, Inc. (3452); and Total Trim, Inc. (8042).  The corporate address for the Debtors is 3890 W. Northwest Highway, Suite 500, Dallas, Texas 75220.

**TABLE OF CONTENTS**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND
    GOVERNING LAW ...................................................................................................4
    A.      Defined Terms...............................................................................................4
    B.      Rules of Interpretation.................................................................................15
    C.      Computation of Time....................................................................................15
    D.      Governing Law.............................................................................................15
    E.      Reference to Monetary Figures.....................................................................16
    F.      Reference to the Debtors or the Reorganized Debtors. ................................16

ARTICLE II. ADMINISTRATIVE CLAIMS AND OTHER UNCLASSIFIED CLAIMS....................................16
    A.      Administrative Claims..................................................................................16
    B.      Priority Tax Claims. .....................................................................................17
    C.      Statutory Fees...............................................................................................17

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ...................................17
    A.      Classification of Claims and Interests..........................................................17
    B.      Summary of Classification............................................................................18
    C.      Treatment of Claims and Interests................................................................18
    D.      Special Provision Governing Claims that are Not Impaired..........................24
    E.      Acceptance or Rejection of the Plan.............................................................25
    F.      Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. ................25
    G.      Subordinated Claims.....................................................................................25

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN .....................................................25
    A.      The New Value Alternative and the Stand-Alone Alternative. .....................25
    B.      Restructuring Transactions............................................................................26
    C.      Existing Letters of Credit..............................................................................26
    D.      Receivables Purchase Agreements. ..............................................................26
    E.      Sources of Consideration for Plan Distributions. .........................................26
    F.      Stand-Alone Alternative Stock Auction Procedures.....................................28
    G.      Corporate Existence......................................................................................29
    H.      Vesting of Assets in the Reorganized Debtors. ............................................29
    I.      Cancellation of Existing Securities...............................................................30
    J.      Corporate Action..........................................................................................30
    K.      New Certificate of Incorporation and New By-Laws. ..................................31
    L.      Directors and Officers of the Reorganized Debtors and Reorganized Atrium. ...........................31
    M.      Effectuating Documents; Further Transactions. ...........................................31
    N.      Section 1146 Exemption...............................................................................31
    O.      Employee and Retiree Benefits. ...................................................................31
    P.      Preservation of Causes of Action. ................................................................32

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES............................32
    A.      Assumption and Rejection of Executory Contracts and Unexpired Leases.................................32
    B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases....................................33
    C.      Cure of Defaults for Executory Contracts and Unexpired Leases Assumed. ...............................33
    D.      Insurance Policies.........................................................................................34
    E.      Modifications, Amendments, Supplements, Restatements or Other Agreements.........................34
    F.      Reservation of Rights. ..................................................................................34
    G.      Nonoccurrence of Effective Date. ................................................................34
    H.      Contracts and Leases Entered Into After the Petition Date..........................34

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS....................................................35

K&E 15870975.22

DEL1 73728-1

A.       Timing and Calculation of Amounts to Be Distributed. ...............................................35
B.       Disbursing Agent. ....................................................................................................35
C.       Rights and Powers of Disbursing Agent. ..................................................................35
D.       Delivery of Distributions and Undeliverable or Unclaimed Distributions. ..................35
E.       Manner of Payment. ..................................................................................................37
F.       Section 1145 Exemption. ...........................................................................................37
G.       Compliance with Tax Requirements. .........................................................................37
H.       Allocations. ...............................................................................................................37
I.       No Postpetition Interest on Claims. ...........................................................................37
J.       Setoffs and Recoupment. ...........................................................................................38
K.       Claims Paid or Payable by Third Parties. ..................................................................38

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND
      DISPUTED CLAIMS ...........................................................................................................38
A.       Allowance of Claims. ................................................................................................38
B.       Claims Administration Responsibilities. ....................................................................38
C.       Estimation of Claims and Interests. ...........................................................................39
D.       Adjustment to Claims Without Objection. ..................................................................39
E.       Time to File Objections to Claims. .............................................................................39
F.       Disallowance of Claims or Interests. .........................................................................39
G.       Amendments to Claims. .............................................................................................40
H.       No Distributions Pending Allowance. ........................................................................40
I.       Distributions After Allowance. ..................................................................................40

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS ............................40
A.       Compromise and Settlement of Claims, Interests and Controversies .............................40
B.       Discharge of Claims and Termination of Interests. .....................................................40
C.       Release of Liens. .......................................................................................................41
D.       Releases by the Debtors. ............................................................................................41
E.       Releases by Holders. .................................................................................................41
F.       Exculpation. ..............................................................................................................42
G.       Injunction. ................................................................................................................42
H.       Setoff and Recoupment. .............................................................................................43
I.       Subordination Rights Under the Senior Subordinated Notes. .......................................43
J.       Term of Injunctions or Stays. ....................................................................................43

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE
      PLAN ...................................................................................................................................43
A.       Conditions Precedent to Confirmation. .......................................................................43
B.       Conditions Precedent to the Effective Date. ................................................................44
C.       Waiver of Conditions. ...............................................................................................45
D.       Effect of Failure of Conditions. .................................................................................45

ARTICLE X. MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN ....................................45
A.       Modification and Amendments. ..................................................................................45
B.       Effect of Confirmation on Modifications. ...................................................................45
C.       Revocation or Withdrawal of Plan. ............................................................................45

ARTICLE XI. RETENTION OF JURISDICTION ...............................................................................................46

ARTICLE XII. MISCELLANEOUS PROVISIONS ..............................................................................................47
A.       Immediate Binding Effect. .........................................................................................47
B.       Additional Documents. ..............................................................................................47
C.       Payment of Fees and Expenses of the Senior Secured Agent and the Ad Hoc Group of
      Senior Secured Lenders. ............................................................................................48

K&E 15870975.22

DEL1 73728-1

| | | |
|---|---|---|
| D. | Statutory Committee and Cessation of Fee and Expense Payment.................................. | 48 |
| E. | Reservation of Rights. ................................................................................................... | 48 |
| F. | Successors and Assigns. ................................................................................................ | 48 |
| G. | Notices. .......................................................................................................................... | 48 |
| H. | Entire Agreement. .......................................................................................................... | 50 |
| I. | Exhibits. ......................................................................................................................... | 50 |
| J. | Severability of Plan Provisions. ................................................................................... | 50 |
| K. | Votes Solicited in Good Faith. ...................................................................................... | 50 |
| L. | Closing of Chapter 11 Cases. ........................................................................................ | 50 |
| M. | Conflicts.......................................................................................................................... | 50 |
| N. | Filing of Additional Documents. ................................................................................... | 51 |

K&E 15870975.22

DEL1 73728-1

# INTRODUCTION

Atrium Corporation and its debtor affiliates, as debtors and debtors in possession (each, a "**Debtor**" and, collectively, the "**Debtors**") propose this joint plan of reorganization (the "**Plan**") for the resolution of the Claims (as such term is defined below) against, and Interests (as such term is defined below) in, each of the Debtors pursuant to chapter 11 of the Bankruptcy Code (as such term is defined below). Capitalized terms used in the Plan and not otherwise defined shall have the meanings ascribed to such terms in Article I.A.

Holders may refer to the Disclosure Statement (as such term is defined below) for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information and projections of future operations, as well as a summary and description of the Plan.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME AND GOVERNING LAW

A.      *Defined Terms.*

As used in this Plan, capitalized terms have the meanings set forth below.

1.      "*11.0% Senior Subordinated Notes*" means the approximately $47.9 million in 11.0% senior subordinated notes due December 15, 2012, issued by Atrium Companies, Inc. under the Senior Subordinated Notes Indenture.

2.      "*11.0% Senior Subordinated Notes Claims*" means any Claim derived from or based upon the 11% Senior Subordinated Notes.

3.      "*15.0% Senior Subordinated Notes*" means the approximately $220.3 million in 15.0% senior subordinated notes due December 15, 2012, issued by Atrium Companies, Inc. under the Senior Subordinated Notes Indenture.

4.      "*15.0% Senior Subordinated Notes Claims*" means any Claim derived from or based upon the 11% Senior Subordinated Notes.

5.      "*ACIH Notes*" means the approximately $4.6 million in 11.5% senior discount notes, issued by ACIH, Inc. pursuant to the ACIH Notes Indenture.

6.      "*ACIH Notes Claims*" means any Claim arising under the ACIH Notes.

7.      "*ACIH Notes Indenture*" means that certain indenture (and any guarantees and other documents entered into connection therewith), dated as of December 28, 2004, and amended on each of August 11, 2005, November 11, 2005, March 31, 2008, April 30, 2008, May 15, 2008, May 22, 2008, May 30, 2008, August 13, 2008 and October 15, 2008, by and among ACIH, Inc., as issuer, and U.S. National Bank Association, as indenture trustee.

8.      "*ACIH Notes Indenture Trustee*" means U.S. Bank National Association, and/or its successors, as indenture trustee under the ACIH Notes Indenture.

9.      "*ACIH Warrants*" means those certain warrants provided to certain Holders of the ACIH Notes, entitling such Holders to purchase a certain a number of shares of the Series C Preferred Stock, subject to adjustment pursuant to the terms of such ACIH Warrants.

10.     "*Accrued Professional Compensation*" means, at any given time, all accrued, contingent and/or unpaid fees and expenses (including success fees) for legal, financial advisory, accounting and other services and reimbursement of expenses that are awardable and allowable under sections 328, 330 or 331 of the Bankruptcy Code

or otherwise rendered allowable before the Effective Date by any retained Professional in the Chapter 11 Cases, or that are awardable and allowable under section 503 of the Bankruptcy Code, that the Bankruptcy Court has not denied by Final Order, (a) all to the extent that any such fees and expenses have not been previously paid (regardless of whether a fee application has been Filed for any such amount) and (b) after applying any retainer that has been provided to such Professional. To the extent that the Bankruptcy Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Accrued Professional Compensation.

11. *"Ad Hoc Group of Senior Secured Lenders"* refers to [TO COME].

12. *"Administrative Claim"* means a Claim for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of the Judicial Code; and (c) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4) and (5) of the Bankruptcy Code.

13. *"Affiliate"* has the meaning set forth in section 101(2) of the Bankruptcy Code.

14. *"Allowed"* means with respect to any Claim, except as otherwise provided herein: (a) a Claim that is scheduled by the Debtors as neither disputed, contingent nor unliquidated and not disputed; (b) a Claim that either is not a Disputed Claim or has been allowed by a Final Order; (c) a Claim that is allowed (i) pursuant to the terms of the Plan, (ii) in any stipulation that is approved by the Bankruptcy Court or (iii) pursuant to any contract, instrument, indenture or other agreement entered into or assumed in connection herewith; (d) a Claim relating to a rejected Executory Contract or Unexpired Lease that either (i) is not a Disputed Claim or (ii) has been allowed by a Final Order; or (e) a Claim as to which a Proof of Claim has been timely Filed and as to which no objection has been Filed. Except for any Claim that is expressly Allowed herein, any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim has been Filed, is not considered Allowed and shall be deemed expunged upon entry of the Confirmation Order.

15. *"Bankruptcy Code"* means chapter 11 of title 11 of the United States Code.

16. *"Bankruptcy Court"* means the United States Bankruptcy Court for the District of Delaware.

17. *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local and chambers rules of the Bankruptcy Court.

18. *"Business Day"* means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

19. *"Canadian Court"* means the Ontario Superior Court of Justice in Toronto, Ontario, Canada.

20. *"Canadian Debtor"* means the Debtor North Star Manufacturing (London) Ltd.

21. *"Cash"* means the legal tender of the United States of America.

22. *"Causes of Action"* means any action, claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Cause of Action also includes: (a) any right of setoff, counterclaim or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity;

K&E 15870975.22

DEL1 73728-1

(b) the right to object to Claims or Interests; (c) any claim pursuant to sections 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

23.    *"CCAA"* means Companies' Creditors Arrangement Act (Canada).

24.    *"CCAA Implementation Order"* means the order or orders of the Canadian Court in the CCAA Proceeding necessary to implement the Plan in Canada as it relates to the Canadian Debtor.

25.    *"CCAA Proceeding"* means the proceedings initiated by the Canadian Debtor on the Petition Date in the Canadian Court pursuant to the provisions of the CCAA.

26.    *"Chapter 11 Cases"* means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court under case number 10-_____ (___).

27.    *"Claim"* means any claim, as such term is defined in section 101(5) of the Bankruptcy Code, against a Debtor.

28.    *"Claims Bar Date"* means the dates to be established by the Bankruptcy Court by which Proofs of Claim must be Filed.

29.    *"Claims Register"* means the official register of Claims maintained by The Garden City Group, Inc., located at P.O. Box 9576, Dublin, Ohio 43017-4876, (866) 405-2137, retained as the Debtors' notice, claims and solicitation agent.

30.    *"Class"* means a class of Claims or Interests as set forth in Article III pursuant to section 1122(a) of the Bankruptcy Code.

31.    *"Confirmation"* means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to all conditions specified in Article IX.A having been satisfied or waived pursuant to Article IX.C.

32.    *"Confirmation Date"* means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

33.    *"Confirmation Hearing"* means the hearing held by the Bankruptcy Court on Confirmation pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

34.    *"Confirmation Order"* means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

35.    *"Consummation"* means the occurrence of the Effective Date.

36.    *"Cross Border Protocol"* means the Cross-Border Insolvency Protocol, in respect of the Chapter 11 Cases and the CCAA Proceeding, as approved by the Bankruptcy Court on January [•], 2010 and by the Canadian Court on January [•], 2010.

37.    *"Cure Claim"* means a Claim based upon a Debtor's default under an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtor pursuant to section 365 of the Bankruptcy Code.

38.    *"D&O Liability Insurance Policies"* means all insurance policies for directors', managers' and officers' liability maintained by the Debtors as of the Petition Date, including (a) the directors' and officers' liability and employment practice liability provided through XL Special Insurance Company, which provides coverage from

February 10, 2009, through February 10, 2010 [Policy No. ELU109710-09]; (b) excess directors' and officers' liability and employment practice liability provided through Twin City Fire Insurance Company, which provides coverage from February 10, 2009, through February 10, 2010 [Policy No. PE0220130-09]; and (c) directors' and officers' management liability provided through XL Special Insurance Company, which provides coverage from February 10, 2009, through February 10, 2010 [Policy No. ELU109711-09].

39. "*Debtor*" means Atrium Corporation or any of its affiliated debtors and debtors in possession, each in its respective individual capacity as a debtor and debtor in possession in the Chapter 11 Cases.

40. "*Debtors*" means, collectively: (a) Atrium Corporation; (b) ACIH, Inc.; (c) Aluminum Screen Manufacturers, Inc.; (d) Atrium Companies, Inc.; (e) Atrium Door and Window Company - West Coast; (f) Atrium Door and Window Company of Arizona; (g) Atrium Door and Window Company of the Northeast; (h) Atrium Door and Window Company of the Northwest; (i) Atrium Door and Window Company of the Rockies; (j) Atrium Enterprises Inc.; (k) Atrium Extrusion Systems, Inc.; (l) Atrium Florida, Inc.; (m) Atrium Vinyl, Inc.; (n) Atrium Windows and Doors of Ontario, Inc.; (o) Champion Window, Inc.; (p) North Star Manufacturing (London) Ltd.; (q) R.G. Darby Company, Inc.; (r) Superior Engineered Products Corporation; (s) Thermal Industries, Inc.; and (t)Total Trim, Inc.

41. "*DIP Agent*" means GE Business Financial Services, Inc., in its capacity as agent for the $40,000,000 Debtor in Possession Credit Facility for Atrium Corporation and Certain of its Subsidiaries.

42. "*DIP Claims*" means any claims arising under or related to the $40,000,000 Debtor in Possession Credit Facility for Atrium Corporation and Certain of Its Subsidiaries.

43. "*DIP Lender*" means the institutions party from time to time as "Lenders" for the $40,000,000 Debtor in Possession Credit Facility for Atrium Corporation and Certain of Its Subsidiaries.

44. "*DIP Order*" means that certain *Interim Order (I) Authorizing Debtors (A) to Obtain Postpetition Secured Financing Pursuant To 11 U.S.C. §§ 105, 361, 362, 364(C)(1), 364(C)(2), 364(C)(3), 364(D)(1) and 364(E) and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363; (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364; and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(B) and (C)* and *Final Order (I) Authorizing Debtors (A) to Obtain Postpetition Secured Financing Pursuant To 11 U.S.C. §§ 105, 361, 362, 364(C)(1), 364(C)(2), 364(C)(3), 364(D)(1) and 364(E) and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363; and (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364.*

45. "*Disbursing Agent*" means the Reorganized Debtors or the Entity or Entities selected by the Debtors or Reorganized Debtors, as applicable, to make or facilitate distributions contemplated under the Plan.

46. "*Disclosure Statement*" means the *Disclosure Statement for the Joint Plan of Reorganization of Atrium Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, dated January 20, 2010, as amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan and that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules and any other applicable law.

47. "*Disputed*" means, with respect to any Claim or Interest, any Claim or Interest that is (a) disputed under the Plan, or subject, or potentially subject, to a timely objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order, (b) improperly asserted, by the untimely or otherwise improper filing of a Proof of Claim as required by order of the Bankruptcy Court or (c) that is disallowed pursuant to section 502(d) of the Bankruptcy Code. A Claim or Administrative Claim that is Disputed as to its amount shall not be Allowed in any amount for purposes of distribution until it is no longer a Disputed Claim.

48. "*Distribution Date*" means the date that is as soon as practicable after the Effective Date, but no later than ten days after the Effective Date.

49.     "*Distribution Record Date*" means the date that the Confirmation Order is entered by the Bankruptcy Court.

50.     "*Effective Date*" means the date selected by the Debtors that is a Business Day after the Confirmation Date on which (a) the conditions to the occurrence of the Effective Date have been met or waived pursuant to Article IX.B and Article IX.C and (b) no stay of the Confirmation Order is in effect. Unless otherwise specifically provided in the Plan, anything required to be done by the Debtors or the Reorganized Debtors, as applicable, on the Effective Date shall be done on the Effective Date.

51.     "*Entity*" means an entity as such term is defined in section 101(15) of the Bankruptcy Code.

52.     "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

53.     "*Exculpated Claim*" means any Claim related to any act or omission in connection with, relating to, or arising out of the Debtors' in or out-of-court restructuring efforts, the Chapter 11 Cases, formulation, preparation, dissemination, negotiation or filing of the Disclosure Statement, the Plan (including any term sheets related thereto) or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of the New Common Stock and the New Value Alternative Loans or the New Senior Secured Term Loans, as the case may be, or the distribution of property under the Plan or any other agreement.

54.     "*Exculpated Party*" means each of: (a) the Debtors, the Reorganized Debtors and their Affiliates; (b) the Senior Secured Agent and the Holders of Senior Secured Claims, in each case, in their capacity as such; (c) the members of the Ad Hoc Group of Senior Secured Lenders, in their capacity as such; (d) the DIP Agent and the DIP Lenders, in each case, in their capacity as such; (e) Kenner; (f) the Plan Investor, if any; and (g) with respect to each of the foregoing Entities in clauses (a) through (f), such Entities' current or former subsidiaries, Affiliates, managed accounts or funds, officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other Professionals.

55.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

56.     "*Existing Letters of Credit*" means all outstanding and undrawn letters of credit under the Senior Secured Credit Agreement.

57.     "*Exit Facility*" means the credit facility that may be entered into by the Reorganized Debtors on the Effective Date, which credit facility would be used to, among other things, satisfy the DIP Claims in full in cash on the Effective Date.

58.     "*Federal Judgment Rate*" means 0.35%, the federal judgment rate in effect as of the Petition Date.

59.     "*Fee Claim*" means a Claim for Accrued Professional Compensation.

60.     "*File," "Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

61.     "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended and as to which the time to appeal, seek *certiorari* or move for a new trial, re-argument, or rehearing has expired and no appeal, petition for *certiorari* or motion for a new trial, re-argument or rehearing has been timely Filed, or as to which any appeal that has been taken, any petition for *certiorari* or motion for a new trial, re-argument or rehearing that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

62.    *"General Unsecured Claims"* means any Unsecured Claim that is not (a) a 11.0% Senior Subordinated Notes Claims; (b) a 15.0% Senior Subordinated Notes Claims; (c) a Qualified Unsecured Trade Claim, (d) a General Unsecured Claim of ACIH, (e) a General Unsecured Claim of Atrium Corporation, (f) an Intercompany Claim or (g) a Section 510(b) Claim.

63.    *"General Unsecured Claims Distribution"* means $200,000, payable to Holders of Allowed General Unsecured Claims in Class 6B.

64.    *"General Unsecured Claims of ACIH"* means (a) any Unsecured Claim against ACIH, Inc. and (b) the ACIH Notes Claims.

65.    *"General Unsecured Claims of Atrium Corporation"* means any Unsecured Claim of Atrium Corporation.

66.    *"Governmental Unit"* means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

67.    *"Holder"* means an Entity holding a Claim or an Interest.

68.    *"Impaired"* means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

69.    *"Intercompany Claim"* means any Claim held by a Debtor against another Debtor or any Claim held by an Affiliate against a Debtor.

70.    *"Interim Compensation Order"* means the *Order Granting Debtors' Motion to Establish Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. ###].

71.    *"Intercompany Interest"* means an Interest in a Debtor held by another Debtor or an Interest in a Debtor held by an Affiliate of a Debtor.

72.    *"Interests"* means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized or outstanding shares of capital stock of the Debtors together with any warrants, options or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto.  For the avoidance of doubt, with respect to Atrium Corporation, Interests include the following:  (a) Series A Preferred Stock; (b) Series B Preferred Stock; (c) Series C Preferred Stock; and (d) ACIH Warrants.

73.    *"Judicial Code"* means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

74.    *"Kenner"* means Kenner & Company, Inc. and any other fund or Entity that is sponsored, managed or advised by Kenner & Company, Inc. and which holds interests in Atrium Corporation (including each of their respective principals, officers and employees).

75.    *"Lien"* means a lien as defined in section 101(37) of the Bankruptcy Code.

76.    *"Management Equity Incentive Plan"* means that certain post-Effective Date management equity incentive plan, the form of which shall be included in the Plan Supplement, and shall consist of restricted stock units, stock options, stock appreciation rights and/or similar rights and interests for up to 10% of the New Common Stock issued on the Effective Date.

77.    *"New Atrium Board"* means the initial board of directors of Reorganized Atrium.

78.    *"New Boards"* mean, collectively, the New Atrium Board and the New Subsidiary Boards.

K&E 15870975.22

DEL1 73728-1

79.     "*New By-Laws*" means the form of the by-laws of each of Reorganized Atrium and the Reorganized Debtors, which forms shall be included in the Plan Supplement.

80.     "*New Certificate of Incorporation*" means the form of the certificates of incorporation of Reorganized Atrium and the Reorganized Debtors, which forms shall be included in the Plan Supplement.

81.     "*New Common Stock*" means a certain number of common shares in the capital of Reorganized Atrium authorized pursuant to the Plan, of which up to 20,000,000 shares shall be initially issued and outstanding as of the Effective Date.  Under the Stand-Alone Alternative, such shares shall consist of a class of full-voting shares and a class of limited-voting shares (freely convertible at the option of the holder thereof, at any time, into full-voting shares), in each case having identical economic rights and with the voting rights as set forth in the New Certificate of Incorporation and New Stockholders Agreement.  Each Holder of a Class 4 Allowed Senior Secured Claim and, subject to the conditions set forth in Article III.C.5(b) and Article III.C.6(b), below, each Holder of a Class 5A Allowed 11.0% Senior Subordinated Notes Claim or a Class 5B Allowed 15.0% Senior Subordinated Notes Claim, shall have the option, to the extent applicable, to allocate its distribution of New Common Stock (if any) hereunder to either or both of such classes.

82.     "*New Common Stock Auction*" means, in connection with the Stand-Alone Alternative, the one-time offering to the Holders of Interests in Atrium Corporation of up to, but not exceeding, 25.0% of the New Common Stock pursuant to the Stand-Alone Alternative Stock Auction Procedures.

83.     "*New Money Investment*" means, in connection with the New Value Alternative, a Cash investment from the Plan Investor of at least $125,000,000.

84.     "*New Senior Secured Loan Agreement*" means, in connection with the Stand-Alone Alternative, that certain loan agreement, dated as of the Effective Date, governing the New Senior Secured Term Loans, substantially in the form included in the Plan Supplement.

85.     "*New Senior Secured Term Loans*" means, in connection with the Stand-Alone Alternative, a first-priority senior secured term loan in the amount of $200 million made pursuant to the New Senior Secured Loan Agreement.

86.     "*New Stockholders Agreement*" means that certain agreement, by and among Reorganized Atrium and the holders of the New Common Stock, to be entered into only in connection with the effectuation of the Stand-Alone Alternative on the Effective Date, the form and substance of which shall be included in the Plan Supplement.

87.     "*New Subsidiary Boards*" means, with respect to each of the Reorganized Debtors other than Reorganized Atrium and ACIH, Inc., the initial board of directors of each such Reorganized Debtor.

88.     "*New Value Alternative*" means (a) the New Money Investment in exchange for 92.5% of the New Common Stock and (b) a refinancing of Allowed Senior Secured Claims with proceeds from the New Money Investment and the New Value Alternative Loans.

89.     "*New Value Alternative Deadline*" means the first Business Day that is 45 days after the Petition Date.

90.     "*New Value Alternative Loan Agreements*" means, in connection with the New Value Alternative, those certain loan agreements, including, intercreditor agreements, to the extent necessary and applicable, dated as of the Effective Date, governing the New Value Alternative Loans in the total amount of $250,000,000, the form and substance of which shall be substantially in the forms included in the Plan Supplement.

91.     "*New Value Alternative Loans*" means, in connection with the New Value Alternative, loans in the aggregate amount of $250,000,000, to be obtained by Reorganized Atrium on the terms contemplated in Article IV.E.1 of the Plan.

K&E 15870975.22

DEL1 73728-1

92.    *"Ordinary Course Professional Order"* means the *Order Authorizing the Debtors' Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business* [Docket No. ###].

93.    *"Other Secured Claim"* means any Secured Claim that is not a Senior Secured Claim.

94.    *"Person"* means a person, as such term as defined in section 101(41) of the Bankruptcy Code.

95.    *"Petition Date"* means January 20, 2010, the date on which each of the Debtors commenced the Chapter 11 Cases.

96.    *"Plan"* means this *Joint Plan of Reorganization of Atrium Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, including the Plan Supplement (as modified, amended or supplemented from time to time), which is incorporated herein by reference.

97.    *"Plan Investor"* means, collectively, those investors, including Kenner, that may be identified in any valid and binding commitment to provide the New Money Investment and/or New Value Alternative Loans, in each case, duly executed and delivered, and containing only conditions that are reasonably acceptable, to the Senior Secured Agent and the Ad Hoc Group of Senior Secured Lenders, as "Plan Investors."

98.    *"Plan Supplement"* means the compilation of documents and forms of documents, schedules and exhibits to the Plan to be Filed by the Debtors no later than five days before the Voting Deadline on notice to parties in interest, and additional documents Filed before the Effective Date as amendments to the Plan Supplement, including the following:  (a) New By-Laws; (b) New Certificate of Incorporation; (c) New Senior Secured Loan Agreement or New Value Alternative Loan Agreements, as the case may be; (d) Rejected Executory Contract and Unexpired Lease List; (e) a list of retained Causes of Action, if any; (f) Management Equity Incentive Plan; (g) New Stockholders Agreement; (h) the amount of Cure Claims, if any, associated with each Executory Contract and Unexpired Lease assumed pursuant to Article V.A of the Plan; (i) the Qualified Vendor Support Agreement; and (j) the Exit Facility, the form of each of which shall be subject to the consent (which consent shall not be unreasonably withheld) of the Senior Secured Agent, the Ad Hoc Group of Senior Secured Lenders, and to the extent the New Value Alternative is implemented the Plan Investor, in each case as provided in Article IX.B hereof; *provided*, *however*, and solely in connection with the Stand-Alone Alternative, the New By-Laws, the New Certificate of Incorporation, the New Senior Secured Loan Agreement and the New Stockholders Agreement shall be subject to the consent of the Senior Secured Agent and the Ad Hoc Group of Senior Secured Lenders in all respects.  Any reference to the Plan Supplement in this Plan shall include each of the documents identified above as (a) through (i). The Debtors shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date in accordance with Article IX.B hereof and the terms set forth herein relating to necessary consent.

99.    *"Plan Support Agreement"* means the agreement, effective of the January [20], 2010, among the Debtors and certain Holders of Senior Secured Claims holding more than 66 2/3% of total Senior Secured Claims, pursuant to which such Holders agreed subject to certain conditions specified therein to support, and vote in favor of, this Plan.

100.    *"Priority Non-Tax Claims"* means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

101.    *"Priority Rights"* means the priority provision contained in Article 15 of the Senior Subordinated Notes Indenture.

102.    *"Priority Tax Claim"* means any Claim of the kind specified in section 507(a)(8) of the Bankruptcy Code.

103.    *"Pro Rata"* means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in that Class.

104.    *"Professional"* means an Entity:    (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331 and 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.  For greater certainty, "Professional" does not include any of the Canadian Professionals, as such term is defined in the Cross-Border Protocol.

105.    *"Proof of Claim"* means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

106.    "*Qualified Unsecured Trade Claims*" means all Unsecured Claims directly relating to and arising solely from the receipt of goods and services by the Debtors arising with, and held by, Entities with whom the Debtors are conducting, and will continue to conduct, business as of the Effective Date, which Entities have executed a Qualified Vendor Support Agreement; *provided*, *however*, that Qualified Unsecured Trade Claims shall not include Administrative Claims.

107.    *"Qualified Vendor Support Agreement"* means the support agreement entered into by Holders of Qualified Unsecured Trade Claims and the applicable Reorganized Debtor on the Confirmation Date, the form of which will be included in the Plan Supplement, in which such Holder shall agree to provide payment terms not worse those terms provided as of the Petition Date for at least 18 months following the Effective Date.

108.    *"Receivables Purchase Agreements"* means, together, (a) the Amended and Restated Receivables Sale and Servicing Agreement, dated as of December 28, 2007, by and between  Atrium Funding Corporation II, as the buyer, certain of the other Debtors, as the originators, and Atrium Companies, Inc., as the servicer and (b) the Amended and Restated Receivables Funding and Administration Agreement, dated as of December 28, 2007, by and among Atrium Funding Corporation II, the financial institutions signatory thereto from time to time, as advancing institutions and General Electric Capital Corporation, as both an advancing institution and the administrative agent, as the same may be amended from time to time, including pursuant to the Seventh Amendment and Waiver to Securitization Agreements, dated as of January 20, 2010, by and among Atrium Companies, Inc., Atrium Funding Corporation II, certain of the other Debtors and General Electric Capital Corporation.

109.    *"Reinstated"* means: (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim or Interest so as to leave such Claim or Interest not Impaired or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of a Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default:  (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) expressly does not require to be cured; (ii) reinstating the maturity (to the extent such maturity has not otherwise accrued by the passage of time) of such Claim or Interest as such maturity existed before such default; (iii) compensating the Holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim or Interest arises from a failure to perform a nonmonetary obligation other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), compensating the Holder of such Claim or Interest (other than the Debtor or an insider) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim or Interest entitles the Holder.

110.    *"Rejected Executory Contract and Unexpired Lease List"* means the list (as may be amended), as determined by the Debtors or the Reorganized Debtors, of Executory Contracts and Unexpired Leases (including any amendments or modifications thereto) that will be rejected by the Reorganized Debtors pursuant to the provisions of Article V and which shall be included in the Plan Supplement.

111.    *"Rejection Claim"* means a Claim arising from the rejection of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code.

K&E 15870975.22

DEL1 73728-1

112.    *"Rejection Claims Bar Date"* means the first Business Day that is 30 days after the later of: (a) the day of entry of an order of the Bankruptcy Court approving the rejection of the relevant Executory Contract or Unexpired Lease; and (b) the Claims Bar Date.

113.    *"Released Party"* means each of:  (a) the Senior Secured Agent, in its capacity as such; (b) each Holder of a Senior Secured Claim, in its capacity as such; (c) the members of the Ad Hoc Group of Senior Secured Lenders, in their capacity as such; (d) the DIP Agent and the DIP Lenders, in each case, in their capacity as such; (e) the Senior Subordinated Notes Indenture Trustee; (f) Kenner; (g) the Plan Investor, if any; (h) with respect to each of the foregoing entities in clauses (a) through (g), such Person's current and former Affiliates, subsidiaries, officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals, in each case in their capacity as such; and (i) the Debtors' and the Reorganized Debtors' current and former officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other Professionals.

114.    *"Reorganized Atrium"* means Atrium Corporation, or any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date.

115.    *"Reorganized Debtors"* means the Debtors, or any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date.

116.    *"Schedules"* means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, as such schedules may be amended, modified or supplemented from time to time.

117.    *"Section 510(b) Claim"* means any Claim arising from (a) rescission of a purchase or sale of a security of the Debtors or an Affiliate of the Debtors, (b) purchase or sale of such a security or (c) reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

118.    *"Secured"* means when referring to a Claim:  (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed as such pursuant to the Plan.

119.    *"Securities Act"* means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, together with the rules and regulations promulgated thereunder.

120.    *"Security"* means a security as defined in section 2(a)(1) of the Securities Act.

121.    *"Senior Secured Agent"* means GE Business Financial Services, as administrative agent under the Senior Secured Credit Agreement.

122.    *"Senior Secured Claims"* means, collectively, the Senior Secured Principal Claims and the Senior Secured Interest Claims.

123.    *"Senior Secured Credit Agreement"* means that certain Second Amended and Restated Credit Agreement, dated as of October 15, 2008, by and among Atrium Companies, Inc., as borrower, certain of its Affiliates, as guarantors, various financial institutions, as lenders, GE Business Financial Services, as administrative agent and collateral agent, GE Capital Markets Inc. and CIT Capital Securities LLC, as joint lead arrangers and joint bookrunners and CIT Capital Securities LCC, as syndication agent, and any guarantees, security documents and other documents in connection therewith.

124.    *"Senior Secured Interest Claims"* means the Senior Secured Revolver Interest Equivalent Claims and Senior Secured Term Interest Equivalent Claims.

13

125.    "*Senior Secured Principal Claims*" means the Senior Secured Revolver Claims, the Senior Secured Term Claims and the Swap Claims.

126.    "*Senior Secured Revolver Claims*" means any Claim derived from or based upon the revolving loan facility under the Senior Secured Credit Agreement, including capitalized and uncapitalized payment-in-kind interest pursuant to the terms thereof, but excluding the Senior Secured Revolver Interest Equivalent Claims.

127.    "*Senior Secured Revolver Interest Equivalent Claims*" means any Claim for an amount payable on account of loans under the revolving loan facility under the Senior Secured Credit Agreement equivalent to the amount of overdue cash pay interest to the Effective Date, regardless of whether interest is allowed or allowable under section 506(b) of the Bankruptcy Code.

128.    "*Senior Secured Term Claims*" means any Claim derived from or based upon the term loan facility under the Senior Secured Credit Agreement, including capitalized and uncapitalized payment-in-kind interest pursuant to the terms thereof, but excluding the Senior Secured Term Interest Equivalent Claims.

129.    "*Senior Secured Term Interest Equivalent Claims*" means any Claim for an amount payable on account of loans under the term loan facility under the Senior Secured Credit Agreement equivalent to the amount of overdue cash pay interest to the Effective Date, regardless of whether interest is allowed or allowable under section 506(b) of the Bankruptcy Code.

130.    "*Senior Subordinated Notes*" means, together, the 11.0% Senior Subordinated Notes and the 15.0% Senior Subordinated Notes.

131.    "*Senior Subordinated Notes Claims*" means the 11.0% Senior Subordinated Notes Claims and the 15.0% Senior Subordinated Notes Claims.

132.    "*Senior Subordinated Notes Indenture*" means that certain indenture, dated as of October 15, 2008, by and among Atrium Companies, Inc., as issuer, certain of its Affiliates, as guarantors, Atrium Corporation, solely with respect to section 10.21 therein and U.S. Bank National Association, as indenture trustee, and any guarantees and other documents entered into in connection therewith.

133.    "*Senior Subordinated Notes Indenture Trustee*" means U.S. Bank National Association, and/or its successors, as indenture trustee under the Senior Subordinated Notes Indenture.

134.    "*Series A Preferred Stock*" means the 75,000 authorized shares of Series A Convertible Preferred Stock, issued on March 8, 2007 by Atrium Corporation, of which 55,656 shares are outstanding as of the Petition Date.

135.    "*Series B Preferred Stock*" means the 478,087 authorized shares of Series B Convertible Preferred Stock, issued on October 15, 2008 by Atrium Corporation, of which 478,087 shares are outstanding as of the Petition Date.

136.    "*Series C Preferred Stock*" means the 200,000 authorized shares of Series C Convertible Preferred Stock, issued on October 15, 2008 by Atrium Corporation, of which 19,388 shares are outstanding as of the Petition Date.

137.    "*Stand-Alone Alternative*" means a debt-for-equity exchange on account of the Senior Secured Claims, pursuant to which each Holder of an Allowed Senior Secured Claim shall receive its Pro Rata share of the New Senior Secured Term Loans and 98% of the New Common Stock (subject to dilution on account of the Management Equity Incentive Plan).

138.    "*Stand-Alone Alternative Stock Auction Procedures*" means, with respect to the Stand-Alone Alternative, the procedures setting forth the terms and conditions of the New Common Stock Auction.

14

139.     *"Subordination Rights"* means the subordination provision contained in Article 14 of the Senior Subordinated Notes Indenture.

140.     *"Swap Contract"* means that certain International Swap Dealers Association, Inc. Master Agreement, dated as of January 13, 2005, by and between Merrill Lynch Capital Services, Inc. and Atrium Companies, Inc.

141.     *"Swap Contract Claims"* means all Claims arising under the Swap Contract.

142.     *"Unexpired Lease"* means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

143.     *"Unsecured Claim"* means any Claim that is neither Secured nor entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court, including any Claim arising from the rejection of an Executory Contract or Unexpired Lease under section 365 of the Bankruptcy Code.

144.     *"U.S. Trustee"* means the United States Trustee for the District of Delaware.

145.     *"Voting Deadline"* means 4:00 p.m. (prevailing Eastern Time) on [Date].

*B.*     *Rules of Interpretation.*

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule or exhibit, as it may thereafter be amended, modified or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; and (13) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further Bankruptcy Court order.

*C.*     *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

*D.*     *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect

to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, *however*, that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state or province of incorporation of the applicable Debtor or Reorganized Debtor, as applicable.

E.    *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

F.    *Reference to the Debtors or the Reorganized Debtors.*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

# ARTICLE II.
## ADMINISTRATIVE CLAIMS AND OTHER UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A.    *Administrative Claims.*

1.    Administrative Claims.

Except with respect to Administrative Claims that are Fee Claims and except to the extent that a Holder of an Allowed Administrative Claim and the applicable Debtor(s) agree to less favorable treatment with respect to such Holder, each Holder of an Allowed Administrative Claim shall be paid in full in Cash on the later of: (a) on or as soon as reasonably practicable after the Effective Date; (b) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed; and (c) the date such Allowed Administrative Claim becomes due and payable, or as soon thereafter as is practicable; *provided*, *however*, that Allowed Administrative Claims that arise in the ordinary course of the Debtors' business shall be paid in full in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to, such transactions. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed by Final Order.

2.    Professional Compensation.

(a)    *Fee Claims.*

Professionals asserting a Fee Claim for services rendered before the Confirmation Date must File and serve on the Debtors and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, the Interim Compensation Order or other order of the Bankruptcy Court, an application for final allowance of such Fee Claim no later than 20 days after the Effective Date; *provided*, *however*, that any Professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professional Order may continue to receive such compensation or reimbursement of expenses for services rendered before the Confirmation Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professional Order. Objections to any Fee Claim must be Filed and served on the Reorganized Debtors and the requesting party no later than 50 days after the Effective Date. To the extent necessary, the Plan and the Confirmation Order shall amend and supersede any previously entered order regarding the payment of Fee Claims. For greater certainty, the Canadian Professionals (as

K&E 15870975.22

DEL1 73728-1

that term is defined in the Cross-Border Protocol) are not required to file and serve applications in respect of any Fee Claims.

(b) <em>Post-Confirmation Date Fees and Expenses</em>.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Reorganized Debtors shall, in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional or other fees and expenses related to implementation and Consummation of the Plan incurred by the Reorganized Debtors through and including the Effective Date. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional for services rendered or expenses incurred after the Confirmation Date in the ordinary course of business without any further notice to any party or action, order or approval of the Bankruptcy Court.

3. <u>Administrative Claim Bar Date</u>.

Except as otherwise provided in this Article II.A, requests for payment of Administrative Claims must be Filed and served on the Reorganized Debtors pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than 10 days before the Effective Date. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests, if any, must be Filed and served on the Reorganized Debtors and the requesting party no later than 60 days after the Effective Date.

B.      *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

C.      *Statutory Fees.*

On the Distribution Date, the Debtors shall pay, in full in Cash, any fees due and owing to the U.S. Trustee at the time of Confirmation. On and after the Effective Date, Reorganized Atrium shall pay the applicable U.S. Trustee fees for each of the Reorganized Debtors until the entry of a final decree in each Debtor's Chapter 11 Case or until such Chapter 11 Case is converted or dismissed.

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

A.      *Classification of Claims and Interests.*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against, and Interests in, the Debtors. All Claims and Interests, except for Administrative Claims and Priority Tax Claims, are classified in the Classes set forth in this Article III. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released or otherwise satisfied before the Effective Date.

17

B.      *Summary of Classification.*

The Plan constitutes a separate chapter 11 plan of reorganization for each Debtor and, unless otherwise explained herein, the classifications set forth in Classes 1 to 10 shall be deemed to apply to each Debtor, as applicable.  Atrium Corporation is not obligated under the Senior Secured Credit Agreement and the Senior Subordinated Notes and, therefore, Atrium Corporation does not have a Class 4, Class 5A or a Class 5B.  In addition, General Unsecured Claims against Atrium Corporation and ACIH, Inc. are classified separately in Classes 6C and 6D, respectively.

The following chart summarizes the classification of Claims against, and Interests in, the Debtors pursuant to the Plan:

| Class | Claim/Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | DIP Claims | Not Impaired | Deemed to Accept |
| 2 | Priority Non-Tax Claims | Not Impaired | Deemed to Accept |
| 3 | Other Secured Claims | Not Impaired | Deemed to Accept |
| 4 | Senior Secured Claims | Impaired | Entitled to Vote |
| 5A | 11.0% Senior Subordinated Notes Claims | Impaired | Entitled to Vote |
| 5B | 15.0% Senior Subordinated Notes Claims | Impaired | Entitled to Vote |
| 6A | Qualified Unsecured Trade Claims | Impaired | Entitled to Vote |
| 6B | General Unsecured Claims | Impaired | Entitled to Vote |
| 6C | General Unsecured Claims of Atrium Corporation | Impaired | Deemed to Reject |
| 6D | General Unsecured Claims of ACIH | Impaired | Deemed to Reject |
| 7 | Section 510(b) Claims | Impaired | Deemed to Reject |
| 8 | Intercompany Claims | Not Impaired / Impaired | Deemed to Accept / Deemed to Reject |
| 9 | Intercompany Interests | Not Impaired | Deemed to Accept |
| 10 | Interests in Atrium Corporation | Impaired | Deemed to Reject |

C.      *Treatment of Claims and Interests.*

To the extent a Class contains Allowed Claims or Allowed Interests with respect to a particular Debtor, the treatment provided to each Class for distribution purposes is specified below:

1.      <u>Class 1 – DIP Claims</u>

(a)      *Classification*:  Class 1 consists of all DIP Claims.

(b)      *Treatment*:  Except to the extent that a Holder of a DIP Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each DIP Claim, each Holder of such DIP Claim shall be paid in full in Cash on the Effective Date.

(c)      *Voting*:  Class 1 is not Impaired by the Plan and each Holder of a Class 1 DIP Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 1 DIP Claims are not entitled to vote to accept or reject the Plan.

2.      <u>Class 2 - Priority Non-Tax Claims</u>.

(a)      *Classification*:  Class 2 consists of all Priority Non-Tax Claims.

(b)      *Treatment*:  Except to the extent that a Holder of an Allowed Priority-Non Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement,

K&E 15870975.22

DEL1 73728-1

release and discharge of each Allowed Priority Non-Tax Claim, each Holder of such Allowed Priority Non-Tax Claim shall be paid in full in Cash on or as reasonably practicable after (i) the Effective Date, (ii) the date on which such Priority Non-Tax Claim against the Debtors becomes an Allowed Priority Non-Tax Claim or (iii) such other date as may be ordered by the Bankruptcy Court.

(c) *Voting*: Class 2 is not Impaired by the Plan and each Holder of a Class 2 Priority Non-Tax Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 2 Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan.

3. <u>Class 3 - Other Secured Claims</u>.

(a) *Classification:* Class 3 consists of all Other Secured Claims.

(b) *Treatment:* Except to the extent that a Holder of an Other Secured Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed Other Secured Claim, each Holder of such Allowed Other Secured Claim shall receive one of the following treatments, in the sole discretion of the applicable Debtor: (i) the Debtors or the Reorganized Debtors shall pay such Allowed Other Secured Claims in full in Cash, including the payment of any interest required to be paid under section 506(b) of the Bankruptcy Code; (ii) the Debtors or the Reorganized Debtors shall deliver the collateral securing any such Allowed Other Secured Claim; or (iii) the Debtors or the Reorganized Debtors shall otherwise treat such Allowed Other Secured Claim in any other manner such that the Claim shall be rendered not Impaired.

(c) *Voting:* Class 3 is not Impaired by the Plan and each Holder of a Class 3 Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 3 Other Secured Claims are not entitled to vote to accept or reject the Plan.

4. <u>Class 4 - Senior Secured Claims</u>.

(a) *Classification:* Class 4 consists of all Senior Secured Claims.

(b) *Allowance:* The Senior Secured Claims shall be Allowed and deemed to be Allowed Claims in the aggregate amount of $[###], in the following individual amounts: (i) Senior Secured Revolver Claims totaling $[###]; (ii) Senior Secured Term Claims totaling $[###]; (iii) Senior Secured Revolver Interest Equivalent Claims totaling $[###], regardless of whether interest on account of loans under the revolving loan facility under the Senior Secured Credit Agreement is Allowed or allowable under section 506(b) of the Bankruptcy Code; (iv) Senior Secured Term Interest Equivalent Claims totaling $[###], regardless of whether interest on account of loans under the revolving loan facility under the Senior Secured Credit Agreement is allowed or allowable under section 506(b) of the Bankruptcy Code; and (iv) Swap Contract Claims totaling $[###].

(c) *Treatment:* In exchange for full and final satisfaction, settlement, release and discharge of each Allowed Senior Secured Claim, each Holder of such Allowed Senior Secured Claim shall receive the following distribution on the Effective Date:

(i) If valid and binding commitments to provide the New Money Investment and the New Value Alternative Loans, in each case, containing only conditions that are reasonably acceptable to the Senior Secured Agent and the Ad Hoc Group of Senior Secured Lenders, are duly executed and delivered to the Senior Secured Agent and the Ad Hoc Group of Senior Secured Lenders on or before the New

19

Value Alternative Deadline and the New Value Alternative is effectuated thereafter, such Holder's Pro Rata share of Cash in an amount equal to 95% of the aggregate amount of Senior Secured Principal Claims and Senior Secured Interest Claims, in each case, outstanding on the Effective Date; *or*

If (1)(a) valid and binding commitments to provide the New Money Investment and New Value Alternative Loans, in each case, containing only conditions that are reasonably acceptable to the Senior Secured Agent and the Ad Hoc Group of Senior Secured Lenders, are not duly executed and delivered to the Senior Secured Agent and the Ad Hoc Group of Senior Secured Lenders on or before the New Value Alternative Deadline or (b) the New Value Alternative is not effectuated for any reason whatsoever and (2) the Stand-Alone Alternative is effectuated thereafter, (A) irrespective of whether interest on account of such loans under the revolving loan facility and the term loan facility under the Senior Secured Credit Agreement is Allowed or allowable under section 506(b) of the Bankruptcy Code, payment in Cash in full of such Holder's Senior Secured Interest Claims and (B) such Holder's Pro Rata share, after payment in Cash in full of the Senior Secured Interest Claims, regardless of whether interest on account of loans under the revolving loan facility and the term loan facility under the Senior Secured Credit Agreement is Allowed or allowable under section 506(b) of the Bankruptcy Code, of (x) the New Senior Secured Term Loans and (y) 98.0% of the New Common Stock issued on the Effective Date (subject to dilution on account of the Management Equity Incentive Plan). In connection with the Stand-Alone Alternative, each Holder of a Class 4 Allowed Senior Secured Claim shall have the right, but not the obligation, to participate as an Offeror in the New Common Stock Auction.

(d)　　*Voting*: Class 4 is Impaired by the Plan. Therefore, Holders of Class 4 Senior Secured Claims are entitled to vote to accept or reject the Plan.

5.　　<u>Class 5A - 11.0% Senior Subordinated Notes Claims</u>.

(a)　　*Classification:* Class 5A consists of all 11.0% Senior Subordinated Notes Claims.

(b)　　*Treatment:* In exchange for full and final satisfaction, settlement, release and discharge of each Allowed 11.0% Senior Subordinated Notes Claim, each Holder of such Allowed 11.0% Senior Subordinated Notes Claim shall receive a distribution in connection with one of the following alternatives:

(i)　　If valid and binding commitments to provide the New Money Investment and New Value Alternative Loans, in each case, containing only conditions that are reasonably acceptable to the Senior Secured Agent and the Ad Hoc Group of Senior Secured Lenders, are duly executed and delivered to the Senior Secured Agent and the Ad Hoc Group of Senior Secured Lenders on or before the New Value Alternative Deadline and the New Value Alternative is effectuated thereafter, each Holder of an Allowed 11.0% Senior Subordinated Notes Claim shall receive (A) its Pro Rata share of 2.5% of the New Common Stock (subject to dilution on account of the Management Equity Incentive Plan) and (B) an opportunity to participate in New Money Investment up to a certain percentage to be discussed; *or*

(ii)　　(A) If (1) valid and binding commitments to provide the New Money Investment and New Value Alternative Loans, in each case, containing only conditions that are reasonably acceptable to the Senior Secured Agent and the Ad Hoc Group of Senior Secured Lenders, are not duly executed and delivered to the Senior

20

Secured Agent and the Ad Hoc Group of Senior Secured Lenders on or before the New Value Alternative Deadline or (2) the New Value Alternative is not effectuated for any reason whatsoever and (B) the Stand-Alone Alternative is effectuated thereafter, each Holder of an Allowed 11.0% Senior Subordinated Notes Claim shall receive its Pro Rata, together with each Holder of a Class 5B Allowed 15% Senior Subordinated Notes Claims, share of 2.0% of the New Common Stock (subject to dilution on account of the Management Equity Incentive Plan) (it being understood that "Pro Rata" as used in this subclause shall mean, with respect to each Holder of Allowed 11.0% Senior Subordinated Notes Claims or Allowed 15.0% Senior Subordinated Notes Claims, the amount of such Holder's Allowed 11.0% Senior Subordinated Notes Claims or Allowed 15.0% Senior Subordinated Notes Claims, as applicable, divided by the aggregate amount of Allowed Senior Subordinated Notes Claims);

*provided*, *however*, that a distribution to Holders of Allowed 11.0% Senior Subordinated Notes Claims is contingent on (A) Class 5A voting to accept the Plan and (B) 100% of the Holders of Allowed 11.0% Senior Subordinated Notes Claims agreeing to waive any and all Priority Rights under the Senior Subordinated Notes Indenture; *provided further*, that if either or both of the foregoing conditions are not satisfied, the New Common Stock otherwise available for distribution to Holders of Allowed 11.0% Senior Subordinated Notes Claims and Holders of Allowed 15.0% Senior Subordinated Notes Claims shall be distributed to the Holders of Class 4 Allowed Senior Secured Claims, and the Holders of the 11.0% Senior Subordinated Notes Claims and 15.0% Senior Subordinated Notes Claims will not receive any distribution on account of Allowed 11.0% Senior Subordinated Notes Claims and Allowed 15.0% Senior Subordinated Notes Claims, as applicable.

(c)    *Voting:* Class 5A is Impaired. Therefore, Holders of Class 5A 11.0% Senior Secured Claims are entitled to vote to accept or reject the Plan.

6.    <u>Class 5B - 15.0% Senior Subordinated Notes Claims</u>.

(a)    *Classification:* Class 5B consists of all 15.0% Senior Subordinated Notes Claims.

(b)    *Treatment:* In exchange for full and final satisfaction, settlement, release and discharge of each Allowed 15.0% Senior Subordinated Notes Claim, each Holder of such Allowed 15.0% Senior Subordinated Notes Claim shall receive a distribution in connection with one of the following alternatives:

(i)    If valid and binding commitments to provide the New Money Investment and New Value Alternative Loans, in each case, containing only conditions that are reasonably acceptable to the Senior Secured Agent and the Ad Hoc Group of Senior Secured Lenders, are duly executed and delivered to the Senior Secured Agent and the Ad Hoc Group of Senior Secured Lenders on or before the New Value Alternative Deadline and the New Value Alternative is effectuated thereafter, each Holder of an Allowed 15.0% Senior Subordinated Notes Claim shall receive (A) its Pro Rata share of 5.0% of the New Common Stock (subject to dilution on account of the Management Equity Incentive Plan) and (B) an opportunity to participate in New Money Investment up to a certain percentage to be discussed; <u>*or*</u>

(ii)    (A) If (1) valid and binding commitments to provide the New Money Investment and New Value Alternative Loans, in each case, containing only conditions that are reasonably acceptable to the Senior Secured Agent and the Ad Hoc Group of

K&E 15870975.22

DEL1 73728-1

Senior Secured Lenders, are not duly executed and delivered to the Senior Secured Agent and the Ad Hoc Group of Senior Secured Lenders on or before the New Value Alternative Deadline or (2) the New Value Alternative is not effectuated for any reason whatsoever and (B) the Stand-Alone Alternative is effectuated thereafter, each Holder of an Allowed 15.0% Senior Subordinated Notes Claim shall receive, together with each Holder of an Allowed 11.0% Senior Subordinated Notes Claims, its Pro Rata share of 2.0% of the New Common Stock (subject to dilution on account of the Management Equity Incentive Plan) (it being understood that "Pro Rata" as used in this subclause shall mean, with respect to each Holder of Allowed 11.0% Senior Subordinated Notes Claims or Allowed 15.0% Senior Subordinated Notes Claims, the amount of such Holder's Allowed 11.0% Senior Subordinated Notes Claims or Allowed 15.0% Senior Subordinated Notes Claims, as applicable, divided by the aggregate amount of Allowed Senior Subordinated Notes Claims);

*provided*, *however*, that a distribution to Holders of Allowed 15.0% Senior Subordinated Notes Claims is contingent on (A) Class 5B voting to accept the Plan and (B) 100% of the Holders of Allowed 11.0% Senior Subordinated Notes Claims agreeing to waive any and all Priority Rights under the Senior Subordinated Notes Indenture; *provided further*, that if either or both of the foregoing conditions are not satisfied, the New Common Stock otherwise available for distribution to Holders of Allowed 15.0% Senior Subordinated Notes Claims and Allowed 11.0% Senior Subordinated Notes Claims shall be distributed to the Holders of Class 4 Allowed Senior Secured Claims, and the Holders of the 15.0% Senior Subordinated Notes Claims and Allowed 11.0% Senior Subordinated Notes Claims will not receive any distribution on account of Allowed 15.0% Senior Subordinated Notes Claims and Allowed 11.0% Senior Subordinated Notes Claims, as applicable.

(c)     *Voting:*  Class 5B is Impaired.  Therefore, Holders of Class 5B 15.0% Senior Secured Claims are entitled to vote to accept or reject the Plan.

7.     Class 6A - Qualified Unsecured Trade Claims.

(a)     *Classification:*  Class 6A consists of all Qualified Unsecured Trade Claims.

(b)     *Treatment:*  Except to the extent that a Holder of an Allowed Qualified Unsecured Trade Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed Qualified Unsecured Trade Claim, and subject to execution of, and continued performance under, a Qualified Vendor Support Agreement, each Holder of an Allowed Qualified Unsecured Trade Claim will be paid in full in Cash (i) on the Effective Date or as soon as reasonably practicable thereafter or (ii) in the ordinary course of business in accordance with the terms of any agreement that governs such Allowed Qualified Unsecured Trade Claim or in accordance with the course of practice between the Debtors and such Holder with respect to such Allowed Qualified Unsecured Trade Claim; *provided*, *however*, that Holders of Qualified Unsecured Trade Claims are not entitled to postpetition interest, late fees or penalties on account of such Claims.  Holders of Allowed Qualified Unsecured Trade Claims who received any payments from the Debtors during the Chapter 11 Cases pursuant to any order of the Bankruptcy Court shall not be excluded from receiving distributions under the Plan on account of such Claims unless such Claims were fully satisfied by any prior payments from the Debtors or otherwise waived.  The Debtors reserve all rights to challenge the legal basis and amount of any asserted Qualified Unsecured Trade Claim, and each such Holder reserves all rights and defenses with respect to any such challenge.

K&E 15870975.22

DEL1 73728-1

(c)    *Voting:*  Class 6A is Impaired by the Plan.  Therefore, Holders of Class 6A Claims are entitled to vote to accept or reject the Plan.

8.    <u>Class 6B - General Unsecured Claims</u>.

(a)    *Classification:*  Class 6B consists of all General Unsecured Claims.

(b)    *Treatment:*  Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive the lesser of (i) $0.04 on account of each dollar of its Allowed General Unsecured Claim and (ii) its Pro Rata share of the General Unsecured Claims Distribution.

(c)    *Voting:*  Class 6B is Impaired by the Plan.  Therefore, Holders of Class 6B Claims are entitled to vote to accept or reject the Plan.

9.    <u>Class 6C - General Unsecured Claims of Atrium Corporation</u>

(a)    *Classification:*  Class 6C consists of all General Unsecured Claims of Atrium Corporation.

(b)    *Treatment:*  Holders of General Unsecured Claims of Atrium Corporation shall not receive any distribution on account of such General Unsecured Claims of Atrium Corporation.  On the Effective Date, all General Unsecured Claims of Atrium Corporation shall be discharged.

(c)    *Voting:*  Class 6C is Impaired and Holders of Class 6C General Unsecured Claims of Atrium Corporation are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 6C General Unsecured Claims of Atrium Corporation are not entitled to vote to accept or reject the Plan.

10.    <u>Class 6D - General Unsecured Claims of ACIH</u>.

(a)    *Classification:*  Class 6D consists of all General Unsecured Claims of ACIH.

(b)    *Treatment:*  Holders of General Unsecured Claims of ACIH shall not receive any distribution on account of such General Unsecured Claims of ACIH.  On the Effective Date, all General Unsecured Claims of ACIH shall be discharged.

(c)    *Voting:*  Class 6D is Impaired and Holders of Class 6D General Unsecured Claims of ACIH are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 6D General Unsecured Claims of ACIH are not entitled to vote to accept or reject the Plan.

11.    <u>Class 7 - Section 510(b) Claims</u>.

(a)    *Classification:*  Class 7 consists of all Section 510(b) Claims against the Debtors.

(b)    *Treatment*:  Holders of Section 510(b) Claims shall not receive any distribution on account of such 510(b) Claims.  On the Effective Date, all Section 510(b) Claims shall be discharged.

(c)      *Voting:* Class 7 is Impaired and Holders of Class 7 Section 510(b) Claims are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Class 7 Section 510(b) Claims are not entitled to vote to accept or reject the Plan.

12. Class 8 - Intercompany Claims.

     (a)      *Classification:* Class 8 consists of all Intercompany Claims.

     (b)      *Treatment:* No distribution shall be made on account of Intercompany Claims. On the Effective Date, or as soon thereafter as is practicable, all Intercompany Claims will be reinstated in full or in part or cancelled or discharged in full or in part, in each case, to the extent determined appropriate by the Reorganized Debtors. The Debtors and the Reorganized Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan. Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices.

     (c)      *Voting:* Holders of Class 8 Intercompany Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, as applicable. Holders of Class 8 Intercompany Claims are not entitled to vote to accept or reject the Plan.

13. Class 9 - Intercompany Interests.

     (a)      *Classification:* Class 9 consists of all Intercompany Interests.

     (b)      *Treatment*: Intercompany Interests shall be Reinstated on the Effective Date.

     (c)      *Voting*: Class 9 is not Impaired by the Plan and Holders of Class 9 Intercompany Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 9 Intercompany Interests are not entitled to vote to accept or reject the Plan.

14. Class 10 - Interests in Atrium Corporation.

     (a)      *Classification:* Class 10 consists of all Interests in Atrium Corporation.

     (b)      *Treatment:* Holders of Interests in Atrium Corporation shall not receive any distribution on account of such Interests. On the Effective Date, all Interests in Atrium Corporation shall be cancelled and discharged.

     (c)      *Voting:* Class 10 is Impaired and Holders of Class 10 Interests are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Class 10 Interests are not entitled to vote to accept or reject the Plan.

D.      *Special Provision Governing Claims that are Not Impaired.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Claims that are not Impaired, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims that are not Impaired.

K&E 15870975.22

DEL1 73728-1

*E.      Acceptance or Rejection of the Plan.*

1.      Voting Classes.

Classes 4, 5A, 5B, 6A and 6B are Impaired under the Plan and are entitled to vote to accept or reject the Plan.

2.      Presumed Acceptance of the Plan.

Classes 1, 2, 3 and 9 are not Impaired under the Plan. The Holders in such Classes are deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

3.      Presumed Rejection of Plan.

Classes 6C, 6D, 7 and 10 are Impaired and shall receive no distribution under the Plan. The Holders in such Classes are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

4.      Intercompany Claims.

Class 8 is either conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, as applicable. The Holders in such Class are not entitled to vote to accept or reject the Plan.

*F.      Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims. The Debtors shall seek Confirmation pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.

*G.      Subordinated Claims.*

The allowance, classification and treatment of all Allowed Claims and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims in each Class in connection with any contractual, legal and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal or equitable subordination relating thereto.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

*A.      The New Value Alternative and the Stand-Alone Alternative.*

The Plan provides for potential implementation of one of two restructuring alternatives: (1) the New Value Alternative or (2) the Stand-Alone Alternative.

1.      The New Value Alternative.

In the event that valid and binding commitments to provide the New Money Investment and New Value Alternative Loans, in each case, containing only conditions that are reasonably acceptable to the Senior Secured Agent and the Ad Hoc Group of Senior Secured Lenders, are duly executed and delivered to the Senior Secured Agent and the Ad Hoc Group of Senior Secured Lenders on or before the New Value Alternative Deadline, the Debtors shall continue to seek Confirmation in accordance with both the New Value Alternative and the Stand-Alone Alternative. The New Value Alternative contemplates an investment from the Plan Investor of at least $125,000,000 in exchange for 92.5% of the New Common Stock (subject to dilution under the Management Equity

25

Incentive Plan), a portion of which will be applied to the distribution for Holders of Class 4 Allowed Senior Secured Claims, with any excess being used to provide liquidity to the Reorganized Debtors. The New Value Alternative further contemplates that Reorganized Atrium will obtain the New Value Alternative Loans in an aggregate amount equal to $250,000,000, the proceeds of which will be applied to the distribution for Holders of Class 4 Allowed Senior Secured Claims.

2. The Stand-Alone Alternative.

In the event that (a)(i) valid and binding commitments to provide the New Money Investment and New Value Alternative Loans, in each case, containing only conditions that are reasonably acceptable to the Senior Secured Agent and the Ad Hoc Group of Senior Secured Lenders, are not duly executed and delivered to the Senior Secured Agent and the Ad Hoc Group of Senior Secured Lenders on or before the New Value Alternative Deadline or (ii) the New Value Alternative is not effectuated for any reason whatsoever , the Debtors shall seek Confirmation only in accordance with the Stand-Alone Alternative. The Stand-Alone Alternative contemplates the conversion of Class 4 Allowed Senior Secured Claims into each such Holder's Pro Rata share (after payment in cash in full of the Senior Secured Revolving Interest Equivalent Claims and Senior Secured Term Interest Equivalent Claims) of (A) the New Senior Secured Loans and (B) 98% of the New Common Stock (subject to dilution under the Management Equity Incentive Plan). Additionally, the Stand-Alone Alternative provides for a one-time offering to the Holders of Interests in Atrium Corporation of up to 25.0% of the New Common Stock issued to the Holders of Allowed Senior Secured Claims on the terms and conditions set forth in the Stand-Alone Alternative Stock Auction Procedures.

B. *Restructuring Transactions.*

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Plan, including: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state law; and (4) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

C. *Existing Letters of Credit.*

On the Effective Date, all Existing Letters of Credit shall be replaced or otherwise addressed as part of the Exit Facility.

D. *Receivables Purchase Agreements.*

On the Effective Date, solely to the extent the Stand-Alone Alternative is implemented, either (a) the Receivables Purchase Agreements shall be extended on the same terms and conditions as amended as of the Petition Date or (b) a replacement receivables facility shall be implemented on terms and conditions reasonably acceptable to Holders of a majority of the Senior Secured Claims (excluding the Swap Claims).

E. *Sources of Consideration for Plan Distributions.*

The Reorganized Debtors shall fund distributions under the Plan as follows:

K&E 15870975.22

DEL1 73728-1

1. <u>The New Value Alternative Loans</u>.

In the event that valid and binding commitments to provide the New Money Investment and New Value Alternative Loans, in each case, containing only conditions that are reasonably acceptable to the Senior Secured Agent and the Ad Hoc Group of Senior Secured Lenders, are duly executed and delivered to the Senior Secured Agent and the Ad Hoc Group of Senior Secured Lenders on or before the New Value Alternative Deadline and the New Value Alternative is effectuated thereafter, Allowed Senior Secured Claims shall be satisfied with proceeds received on account of, or exchanged in return for, the New Value Alternative Loans and proceeds from the New Money Investment. Confirmation shall be deemed approval of the New Value Alternative Loans (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith) and authorization for the Reorganized Debtors to enter into and execute documentation with respect to the New Value Alternative Loans, subject to such modifications as the Reorganized Debtors may deem to be reasonably necessary to consummate such New Value Alternative Loans.

2. <u>The New Senior Secured Term Loans</u>.

In the event that (a)(i) valid and binding commitments to provide the New Money Investment and New Value Alternative Loans, in each case, containing only conditions that are reasonably acceptable to the Senior Secured Agent and the Ad Hoc Group of Senior Secured Lenders, are not duly executed and delivered to the Senior Secured Agent and the Ad Hoc Group of Senior Secured Lenders on or before the New Value Alternative Deadline or (ii) the New Value Alternative is not effectuated for any reason whatsoever and (b) the Stand-Alone Alternative is effectuated thereafter, on the Effective Date the Reorganized Debtors shall enter into the New Senior Secured Term Loans. Confirmation shall be deemed approval of the New Senior Secured Term Loans (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith) and authorization for the Reorganized Debtors to enter into and execute documentation with respect to the New Senior Secured Term Loans, subject to such modifications as the Reorganized Debtors may deem to be reasonably necessary to consummate such New Senior Secured Term Loans.

3. <u>Issuance and Distribution of New Common Stock</u>.

The issuance of the New Common Stock by Reorganized Atrium, including options or other equity awards, if any, in connection with the Management Equity Incentive Plan, is authorized without the need for any further corporate action and without any further action by the Holders. An unlimited number of common shares shall be authorized under the New Certificate of Incorporation of Reorganized Atrium. On the Effective Date, an initial number of shares of New Common Stock shall be issued and distributed as follows:

In the event that valid and binding commitments to provide the New Money Investment and New Value Alternative Loans, in each case, containing only conditions that are reasonably acceptable to the Senior Secured Agent and the Ad Hoc Group of Senior Secured Lenders, are duly executed and delivered to the Senior Secured Agent and the Ad Hoc Group of Senior Secured Lenders on or before the New Value Alternative Deadline and the New Value Alternative is effectuated thereafter , subject to the conditions set forth in Article III.C.5(b)(i) and Article III.C.6(b)(i), above, an aggregate of 1,500,000 shares of New Common Stock will be issued to the Holders of Claims in Class 5A and Class 5B, subject to dilution with respect to any shares issued pursuant to the Management Equity Incentive Plan.

In the event that (a)(i) valid and binding commitments to provide the New Money Investment and New Value Alternative Loans, in each case, containing only conditions that are reasonably acceptable to the Senior Secured Agent and the Ad Hoc Group of Senior Secured Lenders, are not duly executed and delivered to the Senior Secured Agent and the Ad Hoc Group of Senior Secured Lenders on or before the New Value Alternative Deadline or (ii) the New Value Alternative is not effectuated for any reason whatsoever and (b) the Stand-Alone Alternative is effectuated thereafter, an aggregate 20,000,000 shares of New Common Stock will be issued to (a) Holders of Claims in Class 4 and (b) subject to the conditions set forth in Article III.C.5(b)(ii) and Article III.C.6(b)(ii), above, 400,000 shares of New Common Stock will be issued to the Holders of Claims in Class 5A and Class 5B, in each case subject to the election by such Holder to received either full voting or limited-voting New Common Stock or

K&E 15870975.22

DEL1 73728-1

both. The percentage represented by such shares of New Common Stock will be subject to dilution with respect to any shares issued pursuant to the Management Equity Incentive Plan. If any such Holder desires to receive any portion of such New Common Stock to be comprised of the limited-voting class thereof, such Holder shall have submitted to the Debtors at least seven days before the Effective Date its irrevocable notice specifying the amount of New Common Stock to be comprised of the limited-voting class thereof. If a Holder does not provide such notice to the Debtors as described in the preceding sentence, such Holder shall be deemed to have requested all of its New Common Stock to be comprised of the full voting class thereof.

All of the shares of New Common Stock issued pursuant to the Plan shall be duly authorized, validly issued, fully paid and non-assessable. Each distribution and issuance of the New Common Stock under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

Upon the Effective Date, and only in connection with implementation of the Stand-Alone Alternative, (i) Reorganized Atrium shall enter into the New Stockholders Agreement with each Entity that is to be a counter-party thereto and the New Stockholders Agreement shall be deemed to be valid, binding and enforceable in accordance with its terms, and each holder of New Common Stock shall be bound thereby and (ii) the Holders of Claims in Class 4, and, subject to the conditions set forth in Article III.C.5(b) and Article III.C.6(b), above, the Holders of Claims in Class 5A and Class 5B, shall be required to execute the New Stockholders Agreement before receiving their distribution of the New Common Stock under the Plan.

*F.*     *Stand-Alone Alternative Stock Auction Procedures.*

   1.   <u>Applicability of the Stand-Alone Alternative Stock Auction Procedures</u>.

Absent implementation of the New Value Alternative on or before the New Value Alternative Deadline, the Stand-Alone Alternative Stock Auction Procedures described in this Article IV.F shall govern the New Common Stock Auction.

   2.   <u>Participants</u>.

Each Holder of an Allowed Senior Secured Claim shall have the one-time opportunity, but not the obligation, to participate as an offeror in the New Common Stock Auction (each such participating Holder of an Allowed Senior Secured Claim, an "***Offeror***"). Additionally, each Holder of a Class 10 Allowed Interest as of the Petition Date (the "***New Common Stock Auction Record Date***") shall have the one-time right, but not the obligation, to purchase, for Cash, New Common Stock in the New Common Stock Auction (each such participating Holder of a Class 10 Allowed Interest, a "***Purchaser***").

   3.   <u>Purchaser Cap</u>.

The aggregate amount of New Common Stock sold to Purchasers pursuant the New Common Stock Auction shall not exceed 25% of the total amount of New Common Stock otherwise issued to Holders of Class 4 Senior Secured Claims under Article III.C.4(c) (the "***Purchaser Cap***").

   4.   <u>Indication of Offers and the Submission of Binding Offers</u>.

Each Holder of an Allowed Senior Secured Claim will be sent an auction participation form pursuant to which it may indicate its intent to participate as an Offeror in the New Common Stock Auction (the "***New Common Stock Offeror Form***"). Each Offeror shall include on its New Common Stock Offeror Form a binding offer (each, a "***Binding Offer***") specifying the amount of New Common Stock it agrees to sell (the "***New Common Stock Offer***") and the amount of Cash consideration per share of New Common Stock such Offeror will accept in exchange for each share included in the New Common Stock Offer (the "***Offer Price***").

K&E 15870975.22

DEL1 73728-1

5. Identification of Purchasers and the Purchaser Representative.

After the New Common Stock Record Date, each Holder of a Class 10 Allowed Interest will be sent a form pursuant to which it may elect to participate as a Purchaser in the New Common Stock Auction (the "**New Common Stock Purchaser Form**").  To participate as a Purchaser, completed New Common Stock Purchaser Forms must be received by the Reorganized Debtors and Senior Secured Agent no later than 10 days after the Effective Date.  The Purchasers shall appoint a representative to act on their behalf in the New Common Stock Auction (the "**Purchaser Representative**") and identify such Purchaser Representative to the Reorganized Debtors and Senior Secured Agent no later than 15 days after the Effective Date.

6. Accepted Offers.

Within 25 days of the Effective Date (the "**Acceptance Date**"), the Purchaser Representative, in consultation with the Senior Secured Agent and a representative appointed by the Ad Hoc Group Senior Secured Lenders, shall select the Binding Offers it agrees to accept (the "**Accepted Offers**"); *provided*, *however*, that (i) the amount of New Common Stock represented by Accepted Offers shall not exceed the Purchaser Cap, (ii) no Binding Offers shall be accepted unless all Binding Offers at a lower Offer Price have been accepted and (iii) in the event that acceptance of all Binding Offers at a specific Offer Price would cause the Purchaser Cap to be exceeded, such Binding Offers at such Offer Price shall be accepted on a pro rata basis in accordance with the number of shares being offered by each Offeror at such price.  The closing date with respect to the purchase of the New Common Stock represented by the New Common Stock Offer Amount under the Accepted Offers shall be no later than 15 days after the Acceptance Date (the "**Closing Date**").  On the Closing Date, each relevant Offeror shall assign to the relevant Purchaser all of its right, title and interest in and to the New Common Stock identified in such Offeror's Accepted Offer, without recourse or warranty (other than that Offeror owns and has the right to transfer the New Common Stock and such transfer will be free and clear of all liens and adverse claims), upon such Offeror's receipt of payment, in Cash in an amount equal to the relevant Offer Price multiplied by the number shares of New Common Stock being purchased from such Offeror.

G. *Corporate Existence.*

Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated in the Plan or the Plan Supplement, on the Effective Date each Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership or other form of entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other analogous formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial or federal law).

H. *Vesting of Assets in the Reorganized Debtors.*

Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, all property in each Estate, all Causes of Action and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances, except for Liens securing the New Value Alternative Loans or the New Senior Secured Term Loans, as the case may be.  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire or dispose of property and compromise or settle any Claims, Interests or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

K&E 15870975.22

DEL1 73728-1

I.    *Cancellation of Existing Securities.*

Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated in the Plan or the Plan Supplement, on the Effective Date:  (1) the obligations of the Debtors under the Senior Secured Credit Agreement, the Senior Subordinated Notes Indenture, the ACIH Notes Indenture and any other certificate, share, note, bond, indenture, purchase right, option, warrant or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes or other instruments or documents evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan), shall be cancelled solely as to the Debtors, and the Reorganized Debtors shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors pursuant, relating or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, certificates, notes or other instruments evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged; *provided*, *however*, notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of (a) allowing Holders of Senior Secured Claims, the Senior Secured Agent, Holders of 11.0% Senior Subordinated Notes Claims (if applicable) and Holders of 15.0% Senior Subordinated Notes Claims (if applicable) to receive distributions under the Plan as provided herein, (b) allowing the Senior Secured Agent, if applicable, to make distributions under the Plan as provided herein and (c) allowing the Senior Secured Agent to seek compensation and/or reimbursement of fees and expenses in accordance with the terms of this Plan and the DIP Order, and directly from each of the Holders of Senior Secured Claims in accordance with the terms of Senior Secured Credit Agreement; *provided*, *further*, *however*, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order or the Plan or result in any expense or liability to the Reorganized Debtors, except to the extent set forth in or provided for under this Plan.  On and after the Effective Date, all duties and responsibilities of the Senior Secured Agent under the Senior Secured Credit Agreement and the Senior Subordinated Notes Indenture Trustee under the Senior Subordinated Notes Indenture, as applicable, shall be discharged unless otherwise specifically set forth in or provided for under the Plan.

J.    *Corporate Action.*

Upon the Effective Date, or as soon thereafter as is reasonably practicable, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including:  (1) adoption or assumption, as applicable, of the agreements with existing management; (2) selection of the directors and officers for the Reorganized Debtors; (3) the distribution of the New Common Stock; (4) implementation of the restructuring transactions contemplated by Article IV.B, hereof, as required to effectuate the New Value Alternative or the Stand-Alone Alternative, as applicable; (5) adoption of the Management Equity Incentive Plan; (6) the execution and entry into the New Value Alternative Loans or the New Senior Secured Term Loans, as the case may be; (7) the execution and entry into the Exit Facility; and (8) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan involving the corporate structure of the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors or officers of the Debtors or the Reorganized Debtors.  On or (as applicable) before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors shall be authorized and (as applicable) directed to issue, execute and deliver the agreements, documents, securities and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtors, including the New Value Alternative Loans or New Senior Secured Term Loans, as the case may be, and any and all other agreements, documents, securities and instruments relating to the foregoing.  The authorizations and approvals contemplated by this Article IV.J shall be effective notwithstanding any requirements under non-bankruptcy law.  The issuance of the New Common Stock shall be exempt from the requirements of section 16(b) of the Securities Exchange Act of 1934 (pursuant to Rule 16b-3 promulgated thereunder) with respect to any acquisition of such securities by an officer or director (or a director deputized for purposes thereof) as of the Effective Date.

K&E 15870975.22

DEL1 73728-1

K.    *New Certificate of Incorporation and New By-Laws.*

On or immediately before the Effective Date, the Reorganized Debtors will file their respective New Certificates of Incorporation with the applicable Secretaries of State and/or other applicable authorities in their respective states, provinces or countries of incorporation in accordance with the corporate laws of the respective states, provinces or countries of incorporation.  Pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Certificates of Incorporation will prohibit the issuance of non-voting equity securities.  After the Effective Date, the Reorganized Debtors may amend and restate their respective New Certificates of Incorporation and New By-Laws and other constituent documents as permitted by the laws of their respective states, provinces or countries of incorporation and their respective New Certificates of Incorporation and New By-Laws.

L.    *Directors and Officers of the Reorganized Debtors and Reorganized Atrium.*

As of the Effective Date, the term of the current members of the board of directors of Atrium Corporation shall expire, and the initial boards of directors, including the New Atrium Board and the New Subsidiary Boards, as well as the officers of each of the Reorganized Debtors shall be appointed in accordance with the New Certificates of Incorporation and New By-Laws of each Reorganized Debtor.  On the Effective Date, the New Atrium Board shall be increased to seven directors.

If the Stand-Alone Plan is implemented, the New Atrium Board shall consist of seven directors, one of whom shall be the Chief Executive Officer of the Company and the remaining six of whom shall be appointed in a manner reasonably acceptable to the Senior Secured Agent and the Ad Hoc Group of Senior Secured Lenders.

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose in advance of the Confirmation Hearing the identity and affiliations of any Person proposed to serve on the initial New Atrium Board and the New Subsidiary Boards, as well as those Persons that  serve as an officer of any of the Reorganized Debtors.  To the extent any such director or officer is an "insider" under the Bankruptcy Code, the nature of any compensation to be paid to such director or officer will also be disclosed.  Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the New Certificates of Incorporation, New By-Laws and other constituent documents of the Reorganized Debtors.

M.    *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Reorganized Debtors and Reorganized Atrium, and the officers and members of the New Boards thereof, are authorized to and may issue, execute, deliver, file or record such contracts, Securities, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan, including the New Common Stock, in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorization or consents except for those expressly required pursuant to the Plan.

N.    *Section 1146 Exemption.*

Pursuant to section 1146 of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee or governmental assessment.

O.    *Employee and Retiree Benefits.*

All employment, retirement, indemnification and other agreements or arrangements in place as of the Effective Date with the Debtors' officers, directors or employees, who will continue in such capacities or similar capacities after the Effective Date, or retirement income plans and welfare benefit plans for such Persons, or variable

incentive plans regarding payment of a percentage of annual salary based on performance goals and financial targets for certain employees identified as key leaders, top level managers or sales leaders, or indemnification arrangements with directors of non-Debtor subsidiaries, shall remain in place after the Effective Date, and the Reorganized Debtors will continue to honor such agreements, arrangements, programs and plans; *provided, however*, that the foregoing shall not apply to any stock-based compensation or incentive plan, agreement or arrangement existing as of the Petition Date. Nothing in the Plan shall limit, diminish or otherwise alter the Reorganized Debtors' defenses, claims, Causes of Action or other rights with respect to any such contracts, agreements, policies, programs and plans. Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, on and after the Effective Date, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

P.      *Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII hereof, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against them. The Debtors or Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon, after or as a consequence of the Confirmation or Consummation.

The Reorganized Debtors reserve and shall retain the Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors, as the case may be. The applicable Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order or approval of the Bankruptcy Court.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein, all Executory Contracts or Unexpired Leases will be deemed assumed in accordance with the provisions and requirements of section 365 of the Bankruptcy Code, other than those Executory Contracts or Unexpired Leases that (1) were previously assumed or rejected by the Debtors, (2) are identified on the Rejected Executory Contract and Unexpired Lease List, (3) are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date or (4) are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions and the rejection of the Executory Contracts or Unexpired Leases listed on the Rejected Executory Contract and Unexpired Lease List pursuant to section 365(a) of the Bankruptcy Code. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to

approval by the Bankruptcy Court on or after the Effective Date by a Final Order. Each Executory Contract and Unexpired Lease assumed pursuant to the Plan or by any order of the Bankruptcy Court, which has not been assigned to a third party before the Confirmation Date, shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed on the later of (1) 30 days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection or (2) the Claims Bar Date. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time will be automatically disallowed, forever barred from assertion and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order or approval of the Bankruptcy Court. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims, General Unsecured Claims of Atrium Corporation or General Unsecured Claims of ACIH and shall be treated in accordance with Article III.C.8, Article III.C.9 or Article III.C.10 of the Plan, as applicable.

**All Rejection Claims for which a Proof of Claim is not timely Filed will be forever barred from assertion against the Debtors or the Reorganized Debtors, their Estates, and their property unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Rejection Claims shall, as of the Effective Date, be subject to the discharge and permanent injunction set forth in Article VIII hereof.**

C.      *Cure of Defaults for Executory Contracts and Unexpired Leases Assumed.*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. At least ten days before the Confirmation Hearing, the Debtors shall distribute, or cause to be distributed, notices of proposed assumption and proposed amounts of Cure Claims to the applicable third parties, which notices shall include procedures for objecting to proposed assumptions of Executory Contracts and Unexpired Leases and any amounts of Cure Claims to be paid in connection therewith, and resolution of disputes by the Bankruptcy Court Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be Filed, served and actually received by the Debtors at least three days before the Confirmation Hearing. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or cure amount.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date of the Debtors or Reorganized Debtors assume such Executory Contract or Unexpired Lease. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order or approval of the Bankruptcy Court.

33

D.    *Insurance Policies.*

All of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, are treated as Executory Contracts under the Plan. On the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents and instruments.

Notwithstanding anything herein to the contrary, as of the Effective Date, the Debtors shall assume (and assign to the Reorganized Debtors if necessary to continue the D&O Liability Insurance Policies in full force) all of the D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' assumption the D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained herein, Confirmation shall not discharge, impair or otherwise modify any obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies and each such obligation shall be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be Filed. On or before the Effective Date, the Reorganized Debtors may obtain reasonably sufficient tail coverage (*i.e.*, D&O insurance coverage that extends beyond the end of the policy period) under a directors' and officers' liability insurance policy for the current and former directors, officers and managers for such terms or periods of time, and placed with such insurers to be reasonable under the circumstances or as otherwise specified and ordered by the Bankruptcy Court in the Confirmation Order.

E.    *Modifications, Amendments, Supplements, Restatements or Other Agreements.*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority or amount of any Claims that may arise in connection therewith.

F.    *Reservation of Rights.*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Rejected Executory Contract and Unexpired Lease List, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Reorganized Debtors, as applicable, shall have 30 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

G.    *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting unexpired leases pursuant to section 365(d)(4) of the Bankruptcy Code.

H.    *Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.  *Timing and Calculation of Amounts to Be Distributed.*

Unless otherwise provided in the Plan, on the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for Allowed Claims in each applicable Class.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII of the Plan.  Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.  The Debtors shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Voting Deadline.

B.  *Disbursing Agent.*

All distributions under the Plan shall be made by the Disbursing Agent on the Effective Date.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Disbursing Agent is otherwise so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.

C.  *Rights and Powers of Disbursing Agent.*

1.  Powers of the Disbursing Agent.

The Disbursing Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court or the Canadian Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.  Expenses Incurred On or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

D.  *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1.  Delivery of Distributions.

(a)  Delivery of Distributions to Senior Secured Agent.

Except as otherwise provided in the Plan, all distributions to Holders of Senior Secured Claims shall be governed by the Senior Secured Credit Agreement and shall be deemed completed when made to the Senior Secured Agent, who shall be deemed to be the Holder of all Senior Secured Claims for purposes of distributions to be made hereunder.  The Senior Secured Agent shall hold or direct such distributions for the benefit of the Holders of Allowed Senior Secured Claims, as applicable.  As soon as practicable in accordance with the requirements set forth in Article IV.J of the Plan, the Senior Secured Agent shall arrange to deliver such distributions to or on behalf of such Holders of Allowed Senior Secured Claims.

K&E 15870975.22

DEL1 73728-1

(b)     Delivery of Distributions to Senior Subordinated Notes Indenture Trustee.

To the extent of any distributions in accordance with Article III.C.5 and Article III.C.6 hereof, all distributions to Holders of 11.0% Senior Subordinated Notes Claims and Holders of 15.0% Senior Subordinated Notes Claims shall be governed by the Senior Subordinated Notes Indenture and shall be deemed completed when made to the Senior Subordinated Notes Indenture Trustee, who shall be deemed to be the Holders of 11.0% Senior Subordinated Notes Claims and Holders of 15.0% Senior Subordinated Notes Claims for purposes of distributions to be made hereunder.  The Senior Subordinated Notes Indenture Trustee shall hold or direct such distributions for the benefit of the Holders of Allowed 11.0% Senior Subordinated Notes Claims and Holders of Allowed 15.0% Senior Subordinated Notes Claims, as applicable.  As soon as practicable in accordance with the requirements set forth in Article IV.I of the Plan, the Senior Subordinated Notes Indenture Trustee shall (1) arrange to deliver such distributions to or on behalf of such Holders of Allowed 11.0% Senior Subordinated Notes Claims and Holders of Allowed 15.0% Senior Subordinated Notes Claims, (2) exercise its charging liens against any such distributions and (3) seek compensatory and reimbursement for any fees and expenses incurred in making such distributions.

(c)     Delivery of Distributions in General.

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Reorganized Debtors or the applicable Disbursing Agent, as appropriate: (1) to the signatory set forth on any of the Proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if the Debtors have been notified in writing of a change of address); (2) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtors or the applicable Disbursing Agent, as appropriate, after the date of any related Proof of Claim; (3) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Reorganized Debtors or the applicable Disbursing Agent, as appropriate, has not received a written notice of a change of address; or (4) on any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf.  Subject to Article VI.G, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.  The Debtors, the Reorganized Debtors, and the Disbursing Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct.

2.     Minimum Distributions.

No fractional shares of New Common Stock shall be distributed and no Cash shall be distributed in lieu of such fractional amounts.  When any distribution pursuant to the Plan on account of an Allowed Claim would otherwise result in the issuance of a number of shares of New Common Stock that is not a whole number, the actual distribution of shares of New Common Stock shall be rounded as follows: (a) fractions of one-half (½) or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment therefore. The total number of authorized shares of New Common Stock to be distributed to holders of Allowed Claims shall be adjusted as necessary to account for the foregoing rounding.

3.     Undeliverable Distributions and Unclaimed Property.

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date.  After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial or state escheat, abandoned or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be discharged and forever barred.

E.       *Manner of Payment.*

1.   All distributions of the New Common Stock under the Plan shall be made by the Disbursing Agent on behalf of Reorganized Atrium.

2.   All distributions of the New Value Alternative Loans or the New Senior Secured Term Loans, as the case may be, to the Holders of Claims under the Plan shall be made by the Disbursing Agent on behalf of Reorganized Atrium.

3.   All distributions of Cash under the Plan shall be made by the Disbursing Agent on behalf of the applicable Debtor.

4.   At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

F.       *Section 1145 Exemption.*

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance and distribution of the New Common Stock as contemplated by Article III.B of the Plan under either the New Value Alternative, the Stand-Alone Alternative or pursuant to the Stand-Alone Alternative Stock Auction Procedures, as the case may be, shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution or sale of Securities.  In addition, under section 1145 of the Bankruptcy Code, such New Common Stock will be freely tradable in the U.S. by the recipients thereof, subject to  the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with applicable securities laws and any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments and subject to any restrictions in the New Stockholders Agreement and Reorganized Atrium's New Certificate of Incorporation and, only in connection with implementation of the Stand-Alone Alternative, the New Stockholders Agreement.

G.       *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate.  The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances.

H.       *Allocations.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

I.       *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in the DIP Order, Plan or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim.

K&E 15870975.22

DEL1 73728-1

J.      *Setoffs and Recoupment.*

The Debtors may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such Claim it may have against the Holder of such Claim.

K.      *Claims Paid or Payable by Third Parties.*

1.      Claims Paid by Third Parties.

The Debtors or the Reorganized Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

2.      Claims Payable by Third Parties.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

3.      Applicability of Insurance Policies.

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

A.      *Allowance of Claims.*

After the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately before the Effective Date.

B.      *Claims Administration Responsibilities.*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors shall have the sole authority: (1) to File, withdraw or litigate to judgment objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order or approval by the

38

Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Bankruptcy Court.

C.      *Estimation of Claims and Interests.*

Before or after the Effective Date, the Debtors or Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim or Interest that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

D.      *Adjustment to Claims Without Objection.*

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtors without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

E.      *Time to File Objections to Claims.*

Any objections to Claims shall be Filed on or before the later of (1) the date that is one year after the Effective Date and (2) such later date as may be fixed by the Bankruptcy Court.

F.      *Disallowance of Claims or Interests.*

Any Claims held by Entities from which property is recoverable under section 542, 543, 550 or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Reorganized Debtors. All Claims Filed on account of an indemnification obligation to a director, officer or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order or approval of the Bankruptcy Court. All Claims Filed on account of an employee benefit shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent the Reorganized Debtors elect to honor such employee benefit (or assume the agreement(s) providing such employee benefit are assumed under the Plan), without any further notice to or action, order or approval of the Bankruptcy Court.

**EXCEPT AS PROVIDED HEREIN OR OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE CLAIMS BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS ON OR BEFORE THE CONFIRMATION HEARING SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.**

K&E 15870975.22

DEL1 73728-1

*G.* *Amendments to Claims.*

On or after the Effective Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors, and any such new or amended Claim Filed shall be deemed disallowed in full and expunged without any further action.

*H.* *No Distributions Pending Allowance.*

If an objection to a Claim or portion thereof is Filed as set forth in Article VII.B, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

*I.* *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim unless required under applicable bankruptcy law.

# ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

*A.* *Compromise and Settlement of Claims, Interests and Controversies*

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and Holders, and is fair, equitable and reasonable. In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against them and Causes of Action against other Entities.

*B.* *Discharge of Claims and Termination of Interests.*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument or other agreement or document created pursuant to the Plan, the distributions, rights and treatment that are provided in the Plan shall be in complete satisfaction, discharge and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt, right or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right or Interest is Allowed pursuant to section 502

40

of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. Any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases or the CCAA Proceeding shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

C. *Release of Liens.*

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Reorganized Debtor and its successors and assigns.

D. *Releases by the Debtors.*

Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date of the Plan, the Released Parties are deemed released and discharged by the Debtors, the Reorganized Debtors and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative Claims asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtors, the Reorganized Debtors, the Estates or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the CCAA Proceeding, the purchase, sale or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases or the CCAA Proceeding, the negotiation, formulation or preparation of the Plan, the Plan Supplement, the Disclosure Statement or related agreements, instruments or other documents, including any documents compiled in connection with either the New Value Alternative or the Stand-Alone Alternative, or other act or omission, transaction, agreement, event or other occurrence relating to the Debtors taking place on or before the Confirmation Date of the Plan, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party unknown to the Debtors as of the Petition Date that constitutes willful misconduct or gross negligence.

E. *Releases by Holders.*

As of the Effective Date of the Plan, each Holder of a Claim or an Interest shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged the Debtors, the Reorganized Debtors and the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative Claims asserted on behalf of a debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the CCAA Proceeding, the purchase, sale or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases or the CCAA Proceeding, the negotiation, formulation or preparation of the Plan, the Plan Supplement, the Disclosure Statement or related agreements, instruments or other documents, including any documents compiled in connection with either the New Value Alternative or the Stand-Alone Alternative, or any other act or omission, transaction, agreement, event or

41

other occurrence relating to the Debtors taking place on or before the Confirmation Date of the Plan, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party unknown to the Debtors as of the Petition Date that constitutes willful misconduct or gross negligence.

F.    *Exculpation.*

Except as otherwise specifically provided in the Plan or Plan Supplement, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Exculpated Claim, obligation Cause of Action or liability for any Exculpated Claim, except for gross negligence or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Debtors and the Reorganized Debtors (and each of their respective Affiliates, agents, directors, officers, employees, advisors and attorneys) have participated in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of the Securities pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

G.    *Injunction.*

FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN ARTICLE VIII HEREOF, THE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO ARTICLE VIII HEREOF.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS, OR IN OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO ARTICLE VIII.D OR ARTICLE VIII.E, DISCHARGED PURSUANT TO ARTICLE VIII.B, OR ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE VIII.F ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATE OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (4) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN.

THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTORS OR ANY OF THEIR ASSETS, PROPERTY OR ESTATES.  ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE

K&E 15870975.22

DEL1 73728-1

DEBTORS SHALL BE FULLY RELEASED AND DISCHARGED, AND THE INTERESTS SHALL BE CANCELLED.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR HEREIN OR IN OBLIGATIONS ISSUED PURSUANT HERETO FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS SHALL BE FULLY RELEASED AND DISCHARGED, AND THE INTERESTS SHALL BE CANCELLED, AND THE DEBTORS' LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF THE BANKRUPTCY CODE.

ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTORS, THE DEBTORS' ESTATES, THE REORGANIZED DEBTORS, EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS AND EACH OF THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.

*H.*     *Setoff and Recoupment*

Except with respect to Claims or payments allowed in or provided for under the Plan, the Debtors may setoff against or recoup from any Claims of any nature whatsoever that the Debtors may have against the claimant, but the failure to do so shall not constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claim it may have against such claimant.

*I.*     *Subordination Rights Under the Senior Subordinated Notes.*

Subject in all respects to Article III.C.5 and Article III.C.6, any distributions under the Plan to Holders of 11.0% Senior Subordinated Notes Claims and 15.0% Senior Subordinated Notes Claims shall be received and retained free from any obligations to hold or transfer the same to any other creditor, and shall not be subject to levy, garnishment, attachment, or other legal process by any Holder by reason of claimed contractual subordination rights. The Subordination Rights shall be waived and the Confirmation Order shall constitute an injunction enjoining any Person from enforcing or attempting to enforce any contractual, legal or equitable subordination rights to Property distributed under the Plan to Holders of 11.0% Senior Subordinated Notes Claims and Holders of 15.0% Senior Subordinated Notes Claims, in each case other than as provided in the Plan.

*J.*     *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**ARTICLE IX.**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**AND CONSUMMATION OF THE PLAN**

*A.*     *Conditions Precedent to Confirmation.*

It shall be a condition to Confirmation that all provisions, terms and conditions hereof are approved in the Confirmation Order, which shall be reasonably acceptable to: (a) the Debtors; (b) the Senior Secured Agent; (c) the Ad Hoc Group of Senior Secured Lenders; and (d) to the extent the New Value Alternative is implemented, the Plan Investor.

K&E 15870975.22

DEL1 73728-1

*B.*     *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C hereof:

1.     The Confirmation Order (a) shall have been duly entered and not subject to any stay and (b) shall include a finding by the Bankruptcy Court that the New Common Stock to be issued on the Effective Date will be authorized and exempt from registration under applicable securities law pursuant to section 1145 of the Bankruptcy Code.

2.     Any amendments or modifications to the Plan, if any, shall be reasonably acceptable to:  (a) the Debtors; (b) the Senior Secured Agent; (c) the Ad Hoc Group of Senior Secured Lenders; and (d) to the extent the New Value Alternative is implemented, the Plan Investor.

3.     The Plan Supplement, including any amendments, modifications or supplements thereto shall be acceptable to:  (a) the Debtors; (b) the Senior Secured Agent; (c) the Ad Hoc Group of Senior Secured Lenders; and (d) to the extent the New Value Alternative is implemented, the Plan Investor; *provided*, *however*, that all approvals shall be in accordance with Article I.A.98 hereof.

4.     Solely in connection with the Stand-Alone Alternative, the aggregate amount of (a) Administrative Claims (excluding Fee Claims) shall not exceed $30,000,000, (b) Priority Non-Tax Claims shall not exceed $5,000,000 and (c) Other Secured Claims shall not exceed $5,000,000.

5.     All actions, documents, certificates and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable governmental units in accordance with applicable laws.

6.     To the extent the New Value Alternative is implemented, (a) any valid and binding commitment to provide the New Money Investment and/or New Value Alternative Loans, in each case, duly executed and delivered, and containing only conditions that are reasonably acceptable, to the Senior Secured Agent and the Ad Hoc Group of Senior Secured Lenders shall not have terminated and (b) the New Money Investment shall have been consummated within 3 business days after the date of entry of the Confirmation Order; *provided*, *however*, that if Reorganized Atrium shall not have received the proceeds of the New Money Investment within such time period the Stand-Alone Alternative shall be effectuated immediately after the expiration thereof.

7.     The Debtors shall (a) to the extent the New Value Alternative is implemented, enter into the New Value Alternative Loan Agreements and all conditions precedent to funding under the New Value Alternative Loans shall have been satisfied or waived within 3 business days after the date of entry of the Confirmation Order; *provided*, *however*, that if Reorganized Atrium shall not have received the proceeds of the New Value Alternative Loans within such time period the Stand-Alone Alternative shall be effectuated immediately after the expiration thereof; or (b) to the extent the Stand-Alone Alternative is implemented, enter into the New Senior Secured Loan Agreements and all conditions precedent to funding under the New Senior Secured Term Loans shall have been satisfied or waived, including the condition that such Loans are rated at least B2 by Moody's and B by S&P, in each case as of the Effective Date.

8.     Solely to the extent the Stand-Alone Alternative is implemented, either (a) the Receivables Purchase Agreements shall be extended, without any fee or charge, on the same terms and conditions as amended as of the Petition Date to the maturity date of the Exit Facility or (b) a replacement receivables facility shall be implemented on terms and conditions reasonable acceptable to Holders of a majority of the Senior Secured Claims (excluding the Swap Claims).

9.     The CCAA Implementation Order shall have been issued in a form and substance reasonably satisfactory to:  (a) the Debtors; (b) the Senior Secured Agent; (c) the Ad Hoc Group of Senior Secured Lenders; and (d) to the extent that the New Value Alternative is implemented, the Plan Investor.

K&E 15870975.22

DEL1 73728-1

10.     To the extent the Stand-Alone Alternative is implemented, Reorganized Atrium shall have entered into the New Stockholders Agreement in form and substance reasonably satisfactory to the Senior Secured Agent and the Ad Hoc Group of Senior Secured Lenders.

C.      *Waiver of Conditions.*

The conditions to Confirmation and to Consummation set forth in Article IX may be waived only by the Person whom is entitled to satisfaction of such condition (it being understood that the condition contained in Article IX.B.4. may be waived only by the Senior Secured Agent and the Ad Hoc Group of Senior Secured Lenders), without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

D.      *Effect of Failure of Conditions.*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any claims by the Debtors, any Holders or any other Entity; (2) prejudice in any manner the rights of the Debtors, any Holders or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders or any other Entity in any respect.

# ARTICLE X.
# MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments.*

Except as otherwise specifically provided in the Plan, the Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 as well as those restrictions on modifications set forth in the Plan, each of the Debtors expressly reserves its respective rights to revoke or withdraw, to alter, amend or modify the Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X.

B.      *Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan.*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor, any Holder or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by such Debtor, any Holder or any other Entity.

K&E 15870975.22

DEL1 73728-1

# ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount or allowance of Claims or Interests;

2. decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3. resolve any matters related to: (a) the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors amending, modifying or supplementing, after the Effective Date, pursuant to Article V, to the Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4. ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

5. adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6. adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7. enter and implement such orders as may be necessary or appropriate to execute, implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Plan Supplement or the Disclosure Statement;

8. enter and enforce any order for the sale of property pursuant to sections 363, 1123 or 1146(a) of the Bankruptcy Code;

9. resolve any cases, controversies, suits, disputes or Causes of Action that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10. issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11. resolve any cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions and other provisions contained in Article VIII and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

12. resolve any cases, controversies, suits, disputes or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI.K.1;

46

13.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

14.      determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement or the Confirmation Order;

15.      enter an order or Final Decree concluding or closing the Chapter 11 Cases;

16.      adjudicate any and all disputes arising from or relating to distributions under the Plan;

17.      consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.      determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.      hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

20.      hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

21.      hear and determine all disputes involving the existence, nature, scope or enforcement of any exculpations, discharges, injunctions and releases granted in connection with and under the Plan, including under Article VIII;

22.      enforce all orders previously entered by the Bankruptcy Court; and

23.      hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.     *Immediate Binding Effect.*

Subject to Article IX.B and notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors and any and all Holders (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.     *Additional Documents.*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or Reorganized Debtors, as applicable, and all Holders receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

K&E 15870975.22

DEL1 73728-1

C.      *Payment of Fees and Expenses of the Senior Secured Agent and the Ad Hoc Group of Senior Secured Lenders.*

The Debtors shall promptly pay in full in Cash all reasonable and documented fees and expenses of the Senior Secured Agent and the Ad Hoc Group of Senior Secured Lenders (1) that are payable in accordance with the DIP Order and (2) that are incurred in connection with distributions under the Plan and in accordance with the terms hereof.

D.      *Statutory Committee and Cessation of Fee and Expense Payment.*

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases. The Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred by any statutory committees after the Effective Date.

E.      *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders before the Effective Date.

F.      *Successors and Assigns.*

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries or guardian, if any, of each Entity.

G.      *Notices.*

To be effective, all notices, requests and demands to or upon the Debtors shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed to the following

      1.      <u>if to the Debtors, to:</u>

             Atrium Companies, Inc.
             3890 W. Northwest Highway
             Dallas, Texas 75220
             Facsimile:  (214) 905-4351
             Attention:  Philp J. Ragona
             E-mail address:  phil.ragona@atrium.com

             with copies to:

             Kirkland & Ellis LLP
             601 Lexington Avenue
             New York, New York 10022
             Facsimile:  (212) 446-4900
             Attention:  Richard M. Cieri and Joshua A. Sussberg
             E-mail addresses:  richard.cieri@kirkland.com, joshua.sussberg@kirkland.com.

K&E 15870975.22

DEL1 73728-1

2. <u>if to the Senior Secured Agent, to:</u>

        GE Business Financial Services, Inc.
        500 West Monroe Street
        Chicago, Illinois 60661
        Facsimile:
        Attention: Michele Kovatchis and Heidi Rinehart
        Email addresses : Michele.Kovatchis@ge.com, Heidi.Rinehart@ge.com,

        with copies to:

        Latham & Watkins LLP
        233 South Wacker Drive, Suite 5800
        Chicago, Illinois 60606
        Facsimile: (312) 993-9767
        Attention: Douglas Bacon and Robert Drobnak
        Email address: douglas.bacon@lw.com; wobert.drobnak@lw.com

        and

        Wachtell, Lipton, Rosen & Katz
        51 W. 52nd Street
        New York, New York 10019
        Facsimile: (212) 403-2158
        Attention: Scott K. Charles and Michael S. Benn
        E-mail addresses: SKCharles@wlrk.com, MSBenn@wlrk.com

3. <u>if to the Plan Investor, to:</u>

        Kenner & Company, Inc.
        437 Madison Avenue, 36th Floor
        New York, New York 10022
        Facsimile: (212) 758-0406
        Attention: Jeffrey Kenner
        E-mail address: jkenner@kennerco.com

        with copies to:

        Mayer Brown LLP
        1675 Broadway
        New York, New York 10015
        Facsimile: (212) 849-5644
        Attention: James Carlson and Rick Hyman
        E-mail addresses: jcarlson@mayerbrown.com, fhyman@mayerbrown.com

After the Effective Date, the Debtors may, in their sole discretion, notify Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

H.      *Entire Agreement.*

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

I.      *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the website of the Debtors' notice, claims and balloting agent at http://www.[To come] or the Bankruptcy Court's website at [www.deb.uscourts.gov].  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

J.      *Severability of Plan Provisions.*

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (3) nonseverable and mutually dependent.

K.      *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale and purchase of Securities offered and sold under the Plan and any previous plan and, therefore, no such parties, individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale or purchase of the Securities offered and sold under the Plan or any previous plan.

L.      *Closing of Chapter 11 Cases.*

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order necessary to close the Chapter 11 Cases.

M.      *Conflicts.*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

K&E 15870975.22

DEL1 73728-1

*N.*     *Filing of Additional Documents.*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court all agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

K&E 15870975.22

DEL1 73728-1

Dated: January 20, 2010
Wilmington, DE

ATRIUM CORPORATION, on behalf of itself and each of
the other Debtors

By: _____
Name: Gregory T. Faherty
Title: President and Chief Executive Officer

COUNSEL:

_____
Domenic E. Pacitti (Bar No. 3989)
Michael Yurkewicz (Bar No. 4165)
KLEHR HARRISON HARVEY
BRANZBURG LLP
919 Market Street, Suite 1000
Wilmington, DE 19801-3062
(302) 426-1189

- and -

Richard M. Cieri (*pro hac vice* pending)
Joshua A. Sussberg (*pro hac vice* pending)
Brian E. Schartz (*pro hac vice* pending)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
(212) 446-4750

*Proposed Counsel to the Debtors and Debtors in Possession*

48