## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ATRIUM CORPORATION, *et al.*,[1] | ) | Case No. 10-10150 (BLS) |
|  | ) |  |
|  | ) | Jointly Administered |
|  | ) |  |
| Debtors. | ) | **Hearing Date: March 10, 2010 at 1:30 p.m. (ET)** |
|  | ) | **Objection Deadline: March 3, 2010 at 4:00 p.m. (ET)** |

## DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF MOELIS & COMPANY LLC AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

Atrium Corporation and its debtor affiliates, as debtors and debtors in possession in the

above-captioned chapter 11 cases (collectively, the "***Debtors***"),[2] respectfully represent:

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are:  Atrium Corporation (4598); ACIH, Inc. (7822); Aluminum Screen Manufacturers, Inc. (6750); Atrium Companies, Inc. (2488); Atrium Door and Window Company - West Coast (2008); Atrium Door and Window Company of Arizona (2044); Atrium Door and Window Company of the Northeast (5384); Atrium Door and Window Company of the Northwest (3049); Atrium Door and Window Company of the Rockies (2007); Atrium Enterprises Inc. (6531); Atrium Extrusion Systems, Inc. (5765); Atrium Florida, Inc. (4562); Atrium Vinyl, Inc. (0120); Atrium Windows and Doors of Ontario, Inc. (0609); Champion Window, Inc. (1143); North Star Manufacturing (London) Ltd. (6148); R.G. Darby Company, Inc. (1046); Superior Engineered Products Corporation (4609); Thermal Industries, Inc. (3452); and Total Trim, Inc. (8042).  The Debtors' main corporate address is 3890 W. Northwest Highway, Suite 500, Dallas, Texas 75220.

[2]     A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this application and the Debtors' restructuring, are set forth in greater detail in the Declaration of Gregory T. Faherty, President and Chief Executive Officer of Atrium Corporation, in Support of First Day Motions [Docket No. 4], filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") on January 20, 2010 (the "***Petition Date***").  Simultaneously with the commencement of these chapter 11 cases, Debtor North Star Manufacturing (London) Ltd. sought relief under the Companies' Creditors Arrangement Act in the Ontario Superior Court of Justice in Toronto, Ontario, Canada (the "***CCAA Proceeding***").

**<u>Jurisdiction</u>**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 327(a) and 328(a) of title 11 of the Bankruptcy Code, Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and Rules 2014-1, 2016-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***").

**<u>Relief Requested</u>**

4.      By this application, the Debtors request entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>**, (a) authorizing the employment and retention of Moelis & Company LLC ("***Moelis***") as the Debtors' financial advisor and investment banker, *nunc pro tunc* to the Petition Date, in accordance with the terms and conditions set forth in the engagement letter between the Debtors and Moelis, dated as of August 10, 2009 and made effective as of October 29, 2009 (the "***Original Engagement Letter***," a copy of which is attached as **<u>Exhibit 1</u>** to **<u>Exhibit A</u>** annexed hereto) and amended on February 17, 2010 (the "***Amendment***," a copy of which is attached as **<u>Exhibit 2</u>** to **<u>Exhibit A</u>** annexed hereto, and, together with the Original Engagement Letter, the "***Engagement Letter***"); (b) approving the terms of Moelis' employment, including the proposed compensation arrangement (the "***Fee Structure***") and the indemnification provisions in the Engagement Letter; and (c) modifying the time keeping requirements of Local Rule 2016-2(g) in connection with Moelis' proposed engagement.  In support of this application, the Debtors submit the Declaration of Jared J. Dermont, a Managing Director in the

2

Restructuring and Recapitalization Group of Moelis (the "***Dermont Declaration***"), a copy of which is attached hereto as **Exhibit B**.

**Moelis' Qualifications**

5.       Moelis is an investment banking firm with its principal office located at 399 Park Avenue, New York, New York 10022.  Moelis is a registered broker-dealer with the United States Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation.  Moelis was founded in 2007 and is a wholly-owned subsidiary of Moelis & Company Holdings LLC, a privately-owned company.  Moelis & Company Holdings LLC, together with its subsidiaries, has approximately 270 employees located in offices in New York, Los Angeles, Boston, Chicago, London and Sydney.

6.       Moelis provides a broad range of corporate advice to its clients, including, with respect to, among other things:  (a) general corporate finance; (b) mergers, acquisitions and divestitures; (c) corporate restructurings; (d) special committee assignments; and (e) capital raising.  Moelis and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 proceedings.  Moelis' business reorganization professionals have served as financial and strategic advisors in numerous cases, including:  *In re Int'l Aluminum Corp.,* Case No. 10-10003 (Bankr. D. Del. Jan. 27, 2010); *In re Simmons Bedding Co.*, Case No. 09-14037 (Bankr. D. Del. Nov. 16, 2009); *In re Reader's Digest Ass'n Inc.*, Case No. 09-23529 (Bankr. S.D.N.Y. Aug. 24, 2009); *In re NV Broadcasting LLC*, Case No. 09-12473 (Bankr. D. Del. Jul. 13, 2009); *In re Fontainebleau Las Vegas Holdings LLC*, Case No. 09-21481 (Bankr. S.D. Fla. Jun. 9, 2009); *In re ION Media Networks Inc.*, Case No. 09-13125 (Bankr. S.D.N.Y. May 19, 2009); *In re J.G. Wentworth LLC*, Case

3

No. 09-11731 (Bankr. D. Del. May 19, 2009); *In re Source Interlink Cos.*, Case No. 09-11424 (Bankr. D. Del. Apr. 27, 2009); *In re Dayton Superior Corp.*, Case No. 09-11351 (Bankr. D. Del. Apr. 19, 2009); *In re Idearc Inc.*, Case No. 09-31828 (Bankr. N.D. Tex. Mar. 31, 2009); *In re Aleris Int'l Inc.*, Case No. 09-10478 (Bankr. D. Del. Feb. 12, 2009); *In re Muzak Holdings LLC*, Case No. 09-10422 (Bankr. D. Del. Feb. 10, 2009); *In re Hartmarx Corp.*, Case No. 09-02046 (Bankr. N.D. Ill. Jan. 23, 2009); *In re Lyondell Chemical Co.*, Case No. 09-10023 (Bankr. S.D.N.Y. Jan. 6, 2009); *In re Tribune Co.*, Case No. 08-13141 (Bankr. D. Del. Dec. 8, 2008); *In re Pilgrim's Pride Corp.*, Case No. 08-45664 (Bankr. N.D. Tex. Dec. 1, 2008); *In re Motor Coach Industries Int'l Inc.*, Case No. 08-12136 (Bankr. D. Del. Sep. 15, 2008); *In re Greektown Holdings LLC*, Case No. 08-53106 (Bankr. E.D. Mich. May 29, 2008); *In re Pappas Telecasting Inc.*, Case No. 08-10916 (Bankr. D. Del. May 10, 2008); *In re Tropicana Ent. LLC*, Case No. 08-10856 (Bankr. D. Del. May 5, 2008); *In re Tousa Inc.*, Case No. 08-10928 (Bankr. S.D. Fla. Jan. 29, 2008); and *In re Delphi Corp.*, Case No. 05-44481 (Bankr. S.D.N.Y. Oct. 8, 2005).

7.     Since Moelis' registration as a broker-dealer in 2007, it has provided advisory services to a number of large clients in complex transactions, including: Allied Waste Industries, Inc., Anheuser-Busch Companies, Inc., Cannery Casino Resorts LLC, Entravision Communications Corporation, Invitrogen Corporation, NBTY, Inc., WCI Steel, Inc., Westwood One, Inc. and Yahoo! Inc.

8.     The Debtors have selected Moelis as their financial advisor based upon, among other things, (a) the Debtors' need to retain a skilled financial advisory firm to provide advice with respect to the Debtors' complex restructuring activities and (b) Moelis' extensive experience and excellent reputation in providing financial advisory and investment banking services in complex chapter 11 cases such as these.  In light of the size and complexity of these

4

chapter 11 cases, the resources, capabilities and experience of Moelis in advising the Debtors are crucial to the success of these proceedings. An experienced investment bank and financial advisor, such as Moelis, fulfills a critical service that complements the services provided by the Debtors' other professionals. As discussed in detail below, Moelis will concentrate its efforts on serving as the Debtors' financial advisor and investment banker and, more specifically, in formulating strategic alternatives and assisting the Debtors in their efforts with regard to their overall restructuring efforts.

9. Moelis has been advising the Debtors on strategic and restructuring initiatives for the past six months. Indeed, since its engagement in August of last year, Moelis has provided extensive prepetition services in preparation for the Debtors' restructuring efforts, including: (a) assisting management in the development of both a financial model and other alternative liquidity models; (b) conducting extensive meetings and negotiations with the various stakeholders in these cases; (c) facilitating extensive diligence for interested parties, including purchasers; (d) arranging and negotiating the debtor in possession financing; (e) developing a going concern valuation; and (f) providing additional investment banking services in preparation for the Debtors' chapter 11 filing.

10. As a result of its work with the Debtors, Moelis has developed a valuable reserve of institutional knowledge about the Debtors' businesses, operations, capital structure and other material information. Accordingly, the Debtors believe Moelis is well qualified and able to represent the Debtors in a cost-effective, efficient and timely manner and the Debtors submit that the employment and retention of Moelis is in the best interests of the Debtors, their creditors and all parties in interest.

K&E 16300985.4

PHIL1 914306-1

## Services to Be Provided

11.    Subject to further order of the Court, and consistent with the terms of the Engagement Letter, in consideration for the compensation contemplated therein, Moelis' anticipated services include the following:[3]

<blockquote>

a.    review and analyze business plans and financial projections prepared by the Debtors;

b.    evaluate the Debtors' debt capacity and assist in the determination of an appropriate capital structure for the Debtors;

c.    identify, initiate, review, negotiate and evaluate any Restructuring Transaction and, if directed, develop and evaluate alternative proposals for a Restructuring Transaction;[4]

</blockquote>

---

[3]    The summary of the Engagement Letter provided herein is qualified in its entirety by the Engagement Letter. In case of any inconsistency between this summary and the Engagement Letter, the Engagement Letter shall govern.

[4]    Per the Engagement Letter, "***Restructuring Transaction***" is defined, in relevant part, as follows:

(a)    any restructuring, reorganization, rescheduling, or recapitalization of all or any material portion of the [Debtors'] outstanding debt obligations, however such result is achieved, including without limitation through any one or more of the following means, whether in one or a series of transactions: a plan of reorganization or liquidation confirmed in connection with any case or cases commenced by or against the [Debtors] or any of its subsidiaries or affiliates, whether individually or on a consolidated basis under the Bankruptcy Code, consent solicitation, rescheduling of debt maturities, change in interest rates, settlement or forgiveness of debt, conversion of debt into equity, other amendments to the terms of the [Debtors'] debt instruments, issuance of new securities, raising of new debt or equity capital, sale or other transfer of equity, assets or other interests of the [Debtors] or

(b)    any merger, consolidation, reorganization or other business combination pursuant to which an asset, property or business of the [Debtors] is combined through any means with that of an Acquirer (as defined below); the acquisition by an Acquirer, directly or indirectly, of all or any portion of the capital stock of the [Debtors], by way of negotiated purchase or by merger, reorganization, recapitalization or otherwise; the acquisition by an Acquirer, directly or indirectly, of all or any portion of the assets, properties or businesses of the [Debtors], taken as a whole, by way of a direct or indirect purchase, exchange, joint venture or other means.

*See* Engagement Letter at paragraph 2.

K&E 16300985.4

PHIL1 914306-1

     d.      solicit and evaluate indications of interest and proposals regarding any Restructuring Transaction (or any combination thereof) from current or potential lenders, equity investors, acquirers or strategic partners;

     e.      assist the Debtors in developing strategies to effectuate, and ultimately negotiate, any Restructuring Transaction;

     f.      determine and evaluate the risks and benefits of considering and consummating any Restructuring Transaction; and

     g.      such other financial advisory and investment banking services as may be agreed upon by Moelis and the Debtors.

## Professional Compensation

12.    Moelis' decision to advise and assist the Debtors in connection with these chapter 11 cases is subject to its ability to be retained in accordance with the Fee Structure.

13.    Specifically, the Fee Structure provides for the following compensation:

     a.      <u>Monthly Fee</u>. A monthly fee (the "***Monthly Fee***") will apply as follows:

          i.      If a Restructuring Transaction does not involve an Acquirer,[5] the Debtors shall pay Moelis a Monthly Fee according to the following schedule:

              A.      Months 1-5: $150,000 per month.
              B.      Month 6: No amount due, if applicable.
              C.      Month 7 and thereafter (until such time as the engagement is terminated pursuant to the Engagement Letter): $150,000 per month; <u>provided</u>, <u>however</u>, that Moelis' Monthly Fee shall not extend beyond (i) the term of the $40 Million Senior Secured Priming and Superpriority Delayed Draw Term Loan Credit Facility (the "***DIP Facility***"),

---

[5]    Per the Engagement Letter, "***Acquirer***" is defined as "any of Kenner & Company, Inc., other existing shareholders of the Debtors or any other investor; provided, further, that in connection with sale of the Debtors' assets pursuant to section 363 of the Bankruptcy Code, any purchaser of substantially all of the Debtors' assets shall be deemed an Acquirer."

including any extension thereof or (ii) confirmation of a Plan (as defined in the Engagement Letter).

ii.    If a Restructuring Transaction involves an Acquirer and the terms of such Restructuring Transaction are acceptable to the Debtors' Required Lenders (as such term is defined in the Engagement Letter) the Debtors will pay Moelis a Monthly Fee according to the following schedule:

    A.    Months 1-6:   $150,000 per month, with payments for the fifth and sixth months 100% creditable against the Restructuring Fee (discussed below) to the extent paid.

    B.    Month 7 and thereafter (until such time as the engagement is terminated pursuant to the Engagement Letter):   $150,000 per month; provided, however, that Moelis' Monthly Fee shall not extend beyond (i) the term of the DIP Facility, including any extension thereof or (ii) confirmation of a Plan.   For the avoidance of doubt, any Monthly Fee due and owing to Moelis pursuant to this subparagraph shall be 100% creditable against the Restructuring Fee paid to Moelis in the event of a Restructuring Transaction involving an Acquirer.

b.    Restructuring Fee.   In addition to the Monthly Fee, the Debtors will pay Moelis a fee in cash, upon consummation of a Restructuring Transaction (the "**_Restructuring Fee_**"), as follows:

i.    If a Restructuring Transaction does not involve an Acquirer, the Debtors will only pay Moelis a Restructuring Fee if there is a contested valuation and Moelis testifies via deposition or in-court testimony in connection therewith.   Under such circumstances, the Debtors will pay Moelis a Restructuring Fee in cash of $650,000, of which 50% will be due and payable upon request for such services with the remaining 50% payable upon the occurrence of a Restructuring Transaction.

8

ii. If a Restructuring Transaction involves an Acquirer and the terms of such Restructuring Transaction are acceptable to the Required Lenders, the Debtors will pay Moelis a Restructuring Fee of $3,000,000 in cash upon consummation of a Restructuring Transaction. Under this scenario, the Debtors will pay Moelis an incremental fee (an "***Incremental Restructuring Fee***") equal to 1.0% of the consideration value above the amount of senior lender total indebtedness, provided that the senior lenders have been paid in cash in full or, with consent of the Required Lenders, the indubitable equivalent thereof.

c. <u>Maximum Total Monthly Fees, Restructuring Fee and Incremental Restructuring Fee</u>. Notwithstanding anything to the contrary in the Engagement Letter, the sum of the Monthly Fees, the Restructuring Fee and any Incremental Restructuring Fee payable by the Debtors will not exceed a total of $6,000,000, including additional services that may be requested by the Debtors.

14. In addition to any fees payable to Moelis, the Debtors will reimburse Moelis for all reasonable expenses incurred in connection with the engagement.

15. Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the guidelines established by the United States Trustee for the District of Delaware (the "***U.S. Trustee***") and any other applicable procedures and orders of the Court.[6] Further, because the Debtors are seeking to retain Moelis under section 328(a) of the Bankruptcy Code, the Debtors request that (a) Moelis not be required to file time records in

---

[6] Moelis is aware that the Debtors filed the *Motion for Entry of an Order Establishing Procedures for Interim Compensation and Reimbursement for Professionals* [Docket No. 30].

accordance with the guidelines of the U.S. Trustee and (b) that, except with respect to the U.S. Trustee and in recognition of the practice in this jurisdiction, Moelis' compensation not be subject to any additional standard of review under section 330 of the Bankruptcy Code.

16. The Debtors believe the Fee Structure is consistent with, and typical of, compensation arrangements entered into by Moelis and other comparable firms in connection with the rendering of similar services under similar circumstances. In determining the Fee Structure to be paid to Moelis and the reasonableness of such compensation, the Debtors compared Moelis' fee proposal to other proposals received by the Debtors in the investment banking selection process, as well as comparable precedent. The Debtors also discussed the terms of Moelis' retention with counsel to the agent under the Debtors' prepetition credit facility and the ad hoc group of senior secured lenders. After such comparison, discussion and arm's-length negotiations, the Debtors believe that the Fee Structure is in fact reasonable, market-based and designed to compensate Moelis fairly for its work and to cover fixed and routine overhead expenses.

17. Moelis' strategic and financial expertise, as well as its capital markets knowledge, financing skills, restructuring capabilities and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Moelis' engagement, were all important factors to the Debtors in determining the Fee Structure. The Debtors believe that the ultimate benefit of Moelis' services hereunder cannot be measured by reference to the number of hours to be expended by Moelis' professionals in the performance of such services. The Debtors and Moelis have agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of Moelis and its professionals in connection with these chapter 11 cases and in light of the fact that (a) such commitment may foreclose other

10

opportunities for Moelis and (b) the actual time and commitment required of Moelis and its professionals to perform its services under the Engagement Letter may vary substantially from week-to-week and month-to-month, creating "peak load" issues for Moelis.

18.     Moelis will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these chapter 11 cases.  In addition, Moelis will maintain records (in summary format) of services rendered for the Debtors, including reasonably detailed descriptions of those services, the approximate time expended in providing those services and the individuals who provided those services, and will present such records to the Court.  To the extent, however, that Moelis would be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the guidelines of the U.S. Trustee or other applicable procedures and orders of the Court, the Debtors request that Moelis be permitted to submit summary time records kept in one hour increments in applications for payment of compensation.

19.     As of the Petition Date, the Debtors do not owe Moelis any fees for services performed or expenses incurred under the Engagement Letter.  According to the books and records of Moelis, during the 90 day period before the Petition Date, Moelis received $464,516 for professional services performed and $11,728 for expenses incurred.

## Indemnification

20.     As part of the overall compensation payable to Moelis under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification obligations.  Specifically, **Annex A** to the Engagement Letter provides as follows:

> a.     The Debtors agree that Moelis, its subcontractors and their respective personnel shall not be liable to the Debtors for any claims, liabilities or expenses related to the

11

engagement (the "***Claims***") for an aggregate amount in excess of the fees paid by the Debtors to Moelis pursuant to the engagement, except to the extent finally judicially determined to have resulted primarily from the bad faith or intentional misconduct of Moelis or its subcontractors. In no event shall Moelis, its subcontractors, or their respective personnel be liable for any loss of use, data, goodwill, revenues or profits (whether or not deemed to constitute a direct Claim), or any consequential, special, indirect, incidental, punitive or exemplary loss, damage or expense relating to this engagement.

b. The Debtors agree to indemnify and hold harmless Moelis, its subcontractors and their respective personnel from all Claims, except to the extent finally judicially determined to have resulted primarily from the bad faith or willful misconduct or gross negligence of Moelis or its subcontractors.

c. In circumstances where all or any portion of the provisions of paragraph 20(a) and paragraph 20(b) above are finally judicially determined to be unavailable, the aggregate liability of Moelis, its subcontractors and their respective personnel for any Claim will not exceed an amount that is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

21.     The terms of the Engagement Letter and indemnification and contribution provisions were fully negotiated at arm's-length between the Debtors and Moelis and the Debtors respectfully submit that these indemnification and contribution provisions and the Engagement Letter are reasonable and in the best interests of the Debtors, their estates and creditors.

22.     Moreover, consistent with the practice in this jurisdiction, the Debtors request, and Moelis has agreed, that the Court approve the indemnification and contribution provisions reflected on **Annex A** to the Engagement Letter subject to the following modifications:

a. The Debtors shall have no obligation to indemnify any Indemnified Person (as defined in the Engagement Letter),

K&E 16300985.4

PHIL1 914306-1

or provide contribution or reimbursement to any Indemnified Person, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from the Indemnified Person's gross negligence, willful misconduct, bad faith or self-dealing to which the Debtors have not consented; (ii) for a contractual dispute in which the Debtors allege breach of the Indemnified Person's obligations to maintain the confidentiality of non-public information, unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Company, et al.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled without the Debtors' consent prior to a judicial determination as to the Indemnified Person's gross negligence, willful misconduct, bad faith or uncontested self-dealing but determined by this Court, after notice and a hearing to be a claim or expense for which such Indemnified Person should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter, as modified by the order granting this application.

b.       If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these chapter 11 cases, any Indemnified Person believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letter (as modified by the order granting this application), including without limitation, the advancement of defense costs, such Indemnified Person must file an application therefore in this Court, and the Debtors may not pay any such amounts to the Indemnified Person before the entry of an order by this Court approving the payment. This subparagraph (b) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by any Indemnified Persons for indemnification, contribution and/or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Indemnified Persons. All parties in interest shall retain the right to object to any demand by any Indemnified Person for indemnification, contribution and/or reimbursement.

13

c.    Contribution shall not be available to an Indemnified Person under the Engagement Letter if that Indemnified Person's bad faith, willful misconduct or gross negligence is finally determined by a court or arbitral tribunal to have primarily caused the Losses (as defined in the Engagement Letter).

d.    Any limitations on any amounts to be contributed by the parties to the Engagement Letter shall be eliminated.

23.    The Debtors believe that the proposed modifications to the indemnification provisions of the Engagement Letter are appropriate under the circumstances, consistent with recent orders entered in this jurisdiction and should be approved.

## No Duplication of Services

24.    The Debtors intend that the services of Moelis will complement, and not duplicate, the services to be rendered by any other professional retained in these chapter 11 cases. Moelis understands that the Debtors have retained and may retain additional professionals during the term of the engagement and will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

## Moelis' Disinterestedness

25.    Moelis has reviewed the list of parties in interest provided by the Debtors. To the best of Moelis' knowledge as of the date hereof, and except to the extent disclosed herein and in the Dermont Declaration, Moelis: (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (b) does not hold or represent an interest adverse to the Debtors' estates; and (c) has no connection to the Debtors, their creditors or their related parties.

26.    During the pendency of these cases, Moelis will periodically review its files to ensure that no conflicts or other disqualifying circumstances exist or arise. To the extent that Moelis discovers any new relevant facts or relationships bearing on the matters described herein

14

during the period of Moelis' retention, Moelis will use reasonable efforts to promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a) and Local Rule 2014-1(a).

27.     Moelis has agreed not to share with any person or firm the compensation to be paid for professional services rendered in connection with this engagement.

## Supporting Authority

### A.     The Bankruptcy Code Permits the Employment and Retention of Moelis on Terms Substantially Similar to Those in the Engagement Letter

28.     Section 327(a) of the Bankruptcy Code authorizes a debtor to employ professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons."  11 U.S.C. § 327(a).

29.     In addition, section 328(a) of the Bankruptcy Code provides, in relevant part, that debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ." 11 U.S.C. § 328(a).

30.     Additionally, Bankruptcy Rule 2016 and Local Rule 2016-2 require retained professionals to submit applications for payment of compensation in chapter 11 cases.  Local Rule 2016-2(d) also requires retained professionals to submit detailed time entries that set forth, among other things, a detailed description of each activity performed, the amount of time spent on the activity (in tenth of an hour increments), the subject matter of the activity and the parties involved with the activity at issue.  Local Rule 2016-2(g), however, allows a retained professional to request a waiver of these requirements, for cause.

K&E 16300985.4

PHIL1 914306-1

31.     As discussed above and in the Dermont Declaration, Moelis satisfies the disinterestedness standard in section 327(a) of the Bankruptcy Code.  Additionally, given the numerous issues that Moelis may be required to address in the performance of its services hereunder, Moelis' commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Moelis' services for engagements of this nature, the Debtors believe that the terms and conditions of the Engagement Letter are fair, reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

32.     The Debtors believe that the Fee Structure appropriately reflects the nature and scope of services to be provided by Moelis, Moelis' substantial experience with respect to investment banking and financial advisory services and the fee structures typically utilized by Moelis and other leading investment banks and financial advisors who do not bill their clients on an hourly basis.

33.     As set forth above, and notwithstanding approval of the Engagement Letter under section 328 of the Bankruptcy Code, Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee guidelines and any other applicable procedures and orders of the Court, with certain limited modifications.

34.     Specifically, the Debtors request that the requirements of Local Rule 2016-2(d) be tailored to the nature of Moelis' engagement and its compensation structure.  Moelis has requested, pursuant to section 328(a) of the Bankruptcy Code, payment of its fees on a fixed-rate basis, and payment of the Monthly Fee and the Restructuring Fee, which, as set forth above, is

16

customary in the investment banking industry. Additionally, it is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys. As discussed above, however, Moelis' restructuring personnel, when formally retained in chapter 11 cases, and when required by Local Rules, do, and in these chapter 11 cases will, keep time records in one-hour increments describing their daily activities and the identity of persons who performed such tasks. In addition, apart from the time recording practices described above, Moelis' restructuring personnel do not maintain their time records on a "project category" basis. As such, the Debtors request modification of the requirements under Local Rule 2016-2(g).

35. Courts in this jurisdiction have approved relief similar to the relief requested in this application. *See, e.g.*, *In re Int'l Aluminum Corp.,* Case No. 10-10003 (Bankr. D. Del. Jan. 27, 2010) (authorizing retention of Moelis as financial advisor to the debtors); *In re Majestic Star Casino, LLC*, Case No. 09-14136 (Bankr. D. Del. Nov. 23, 2009) (authorizing the retention of XRoads Solutions Group as financial advisor to the debtors); *In re Masonite,* Case No. 09-10844 (Bankr. D. Del. Apr. 15, 2009) (authorizing the retention of Perella Weinberg Partners as financial advisor to the debtors); )*; In re Aleris Int'l, Inc.,* Case No. 09-10478 (Bankr. D. Del. Mar. 16, 2009) (authorizing the retention of Moelis as financial advisor to the debtors); *In re Muzak Holdings LLC*, Case No. 09-10422 (Bankr. D. Del. Mar. 12, 2009) (authorizing the retention of Moelis & Company LLC as financial advisor to the debtors)*; In re Leiner Health Prods., Inc.*, Case No. 08-10446 (Bankr. D. Del. Apr. 8, 2008) (authorizing the retention of Houlihan Lokey Howard & Zukin Capital, Inc. as financial advisor); *In re FLYi, Inc.*, Case No.

05-20011 (Bankr. D. Del. Jan. 17, 2006) (authorizing the retention of Miller Buckfire & Co., LLC as financial advisor).[7]

## B.     The Indemnification is Appropriate

36.     The indemnification and contribution provisions in the Engagement Letter and in **Annex A** thereto, and as modified herein, were fully negotiated between the Debtors and Moelis. The Debtors and Moelis believe that the indemnification provisions in the Engagement Letter are customary and reasonable for financial advisory engagements both out of court and in chapter 11 cases.  As described above, however, the Debtors are seeking approval of the indemnification provisions consistent with other orders of the Court where Moelis has been retained.  *See e.g., In re Int'l Aluminum Corp.,* Case No. 10-10003 (Bankr. D. Del. Jan. 27, 2010)*; In re Aleris Int'l, Inc.,* Case No. 09-10478 (Bankr. D. Del. Mar. 16, 2009).  Copies of these orders are attached hereto as collective **Exhibit C**.

37.     Accordingly, the Debtors respectfully submit that the terms of the indemnification provisions (as modified) are reasonable and customary and should be approved in these chapter 11 cases.

## C.     The Retention of Moelis Is Critical To The Debtors' Success

38.     Denial of the relief requested herein will deprive the Debtors of the assistance of uniquely qualified investment banking and financial advisors and, certainly, would affect an unjust disadvantage to the Debtors and all parties in interest, especially in light of Moelis' prepetition services provided to the Debtors and understanding of the Debtors' operations.

---

[7]     Because of the voluminous nature of the orders cited herein, they are not attached to the motion.  Copies of these orders are available on request of the Debtors' counsel.

K&E 16300985.4

PHIL1 914306-1

Indeed, if the Debtors were forced to engage a new investment banker and financial advisor who lacks a thorough understanding of the Debtors' businesses and the initiatives that have been implemented over the course of the last six months, such change would mandate the commitment of significant and costly resources to educate a replacement. Moreover, the Debtors have already engaged in numerous and constructive negotiations with each of their major creditor constituencies concerning the parameters of a global financial restructuring. Moelis, along with the Debtors' other restructuring advisors, has led these negotiations and the interface with the Debtors' creditors. To build upon this momentum and continue a constructive dialogue that will serve to effectuate the ultimate resolution of these chapter 11 cases, it is vital that Moelis continue to lead the charge on the Debtors' behalf.

39. Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules to support entry of an order authorizing the Debtors to retain and employ Moelis in these chapter 11 cases on the terms described herein and in the Engagement Letter.

### Notice

40. The Debtors have provided notice of this application to: (a) the Office of the United States Trustee for the District of Delaware; (b) the proposed counsel to the statutory committee of unsecured creditors appointed in these chapter 11 cases; (c) counsel to the agent for the Debtors' postpetition secured lenders; (d) counsel to the agent under the Debtors' prepetition credit facility; (e) counsel to the ad hoc group of lenders under the Debtors' prepetition credit facility; (f) counsel to the agent under the Debtors' accounts receivable securitization facility; (g) counsel to Kenner & Company, Inc.; (h) the indenture trustee for each of the Debtors' outstanding bond issuances; (i) the monitor appointed in the CCAA Proceeding; and (j) those

19

parties who have formally appeared and requested service in these cases pursuant to Bankruptcy Rule 2002. In light of the relief requested in this application, the Debtors respectfully submit that no further notice is necessary.

## No Prior Request

41.     No prior application for the relief requested herein has been made to this or any other court.

K&E 16300985.4

PHIL1 914306-1

WHEREFORE, for the reasons set forth herein and in the Dermont Declaration, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing the Debtors to retain and employ Moelis as their financial advisor and investment banker in accordance with the terms and conditions set forth in the Engagement Letter attached hereto as **Exhibit 1** to **Exhibit A**, subject to the modifications described herein, *nunc pro tunc* to the Petition Date and (b) granting such other and further relief as may be appropriate.

Dated:  February 17, 2010
       Wilmington, DE

Atrium Corporation
ACIH, Inc.
Aluminum Screen Manufacturers, Inc.
Atrium Companies, Inc.
Atrium Door and Window Company – West Coast
Atrium Door and Window Company of Arizona
Atrium Door and Window Company of the Northeast
Atrium Door and Window Company of the Northwest
Atrium Door and Window Company of the Rockies
Atrium Enterprises, Inc.
Atrium Extrusion Systems, Inc.
Atrium Florida, Inc.
Atrium Vinyl, Inc.
Atrium Windows and Doors of Ontario, Inc.
Champion Window, Inc.
North Star Manufacturing (London), Ltd.
R.G. Darby Company, Inc.
Superior Engineered Products Corporation
Thermal Industries, Inc.
Total Trim, Inc.

/s/ *Gregory T. Faherty*
Gregory T. Faherty
Chief Executive Officer and President

K&E 16300985.4

PHIL1 914306-1