# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

ATRIUM CORPORATION, et al.,[1]

        Debtors.

)
)
)
)
)
)
)
)

Chapter 11

Case No. 10-10150 (BLS)

Jointly Administered

**Related to Docket Nos. 591, 590, 589, 587**

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING THE SECOND MODIFIED JOINT PLAN OF REORGANIZATION OF ATRIUM CORPORATION AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

The *Second Modified Joint Plan of Reorganization of Atrium Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, dated April 26, 2010 [Docket No. 587], a copy of which is attached hereto as **Exhibit 1** and incorporated herein by reference (the "***Plan***"),[2] having been filed with the United States Bankruptcy Court for the District of Delaware (the "***Court***") by the above-referenced debtors and debtors in possession (collectively, the "***Debtors***"); and the Court having entered an order dated March 19, 2010 (the "***Disclosure***

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: Atrium Corporation (4598); ACIH, Inc. (7822); Aluminum Screen Manufacturers, Inc. (6750); Atrium Companies, Inc. (2488); Atrium Door and Window Company – West Coast (2008); Atrium Door and Window Company of Arizona (2044); Atrium Door and Window Company of the Northeast (5384); Atrium Door and Window Company of the Northwest (3049); Atrium Door and Window Company of the Rockies (2007); Atrium Enterprises Inc. (6531); Atrium Extrusion Systems, Inc. (5765); Atrium Florida, Inc. (4562); Atrium Vinyl, Inc. (0120); Atrium Windows and Doors of Ontario, Inc. (0609); Champion Window, Inc. (1143); North Star Manufacturing (London) Ltd. (6148); R.G. Darby Company, Inc. (1046); Superior Engineered Products Corporation (4609); Thermal Industries, Inc. (3452); and Total Trim, Inc. (8042). The Debtors' main corporate address is 3890 W. Northwest Highway, Suite 500, Dallas, Texas 75220.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The *Joint Plan of Reorganization of Atrium Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* was filed on January 20, 2010 [Docket No. 23]; the *First Modified Joint Plan of Reorganization of Atrium Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* was filed on March 16, 2010 [Docket No. 377].

*Statement Order*") [Docket No. 419], after due notice and a hearing pursuant to sections 105, 502, 1125, 1126 and 1128 of title 11 of the United States Code (the "*Bankruptcy Code*"), Rules 2002, 3003, 3016, 3017, 3018 and 3020 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*") and Rules 2002-1 and 3017-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States District Court for the District of Delaware (the "*Local Rules*"), (i) approving the Disclosure Statement, (ii) establishing a record date for voting on the Plan, (iii) approving solicitation procedures for distribution thereof, (iv) approving the forms of ballots and establishing voting procedures and (vi) scheduling a hearing (the "*Confirmation Hearing*") and establishing notice and objection procedures in respect of Confirmation; and the Disclosure Statement having been transmitted to all Holders of Claims in Classes 4A, 4B, 5A, 5B, 5C, 6A and 6B (collectively, the "*Voting Classes*") as provided for by the Disclosure Statement Order; and the exhibits to the Plan Supplement having been filed on April 14, 2010 [Docket No. 533] and amended thereafter on April 16, 2010 [Docket No. 538], April 26, 2010 [Docket No. 589] and April 27, 2010 [Docket No. 601]; and the Confirmation Hearing having been held before the Court on April 28, 2010, after due notice to Holders of Claims and Interests and all other parties in interest in accordance with the Disclosure Statement, the Disclosure Statement Order, the Bankruptcy Code and the Bankruptcy Rules and the Local Rules; and upon all of the proceedings had before the Court, and after full consideration of (i) the objections to the Plan, including the objections of (a) Wylie Independent School District and County of Denton, Texas [Docket No. 543], (b) Carrolton-Farmers Branch Independent School District [Docket No. 551], (c) Missouri Department of Revenue [Docket No. 552], (d) PPG Industries Ohio, Inc. [Docket No. 553], (e) Merrill Lynch Capital Services, Inc. [Docket No. 554] (the "*Merrill Lynch Objection*"), (f) General Electric Capital Corporation [Docket No. 555],

2

(g) David and Linda Bailey, Park Lane Construction, Inc. and Regency Club Condominium Owners Associations, Inc. [Docket No. 556], (h) Texas Comptroller of Public Accounts [Docket No. 557] and (i) Royal Window and Door Profiles Plant 13, Inc. [Docket No. 566] (late-filed) (collectively, the "*Objections*"), (ii) the Debtors' omnibus response to the Objections, dated April 26, 2010 [Docket No. 591], (iii) the Debtors' memorandum of law filed in support of Confirmation of the Plan, dated April 26, 2010 [Docket No. 590], (iv) the *Declaration of Jeffrey S. Stein of The Garden City Group, Inc. Certifying the Methodology for the Tabulation of Votes On and Results of Voting with Respect to the First Modified Joint Plan of Reorganization of Atrium Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, dated April 23, 2010 [Docket No. 570] (the "*Vote Certification*"), and the testimony contained therein and (v) all other evidence proffered or adduced at the Confirmation Hearing, as well as oral arguments of counsel made in connection therewith; and after due deliberation and sufficient cause appearing therefor;

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.    Exclusive Jurisdiction; Venue; Core Proceeding

1.    The Court has jurisdiction over the Debtors' chapter 11 cases in accordance with 28 U.S.C. §§ 157 and 1334. Confirmation is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and the Court has jurisdiction to enter a final order with respect thereto. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

**B.     Eligibility for Relief**

2.      The Debtors were and are Entities eligible for relief under section 109 of the Bankruptcy Code.

**C.     Commencement and Joint Administration of these Chapter 11 Cases**

3.      On the Petition Date, each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code.  By prior order of the Court, the Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015 [Docket No. 3].  Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.

**D.     Judicial Notice**

4.      The Court takes judicial notice of the main case docket of these chapter 11 cases maintained by the Clerk of the Court [Case No. 10-10150 (BLS)], including all pleadings and other documents filed and orders entered thereon.  The Court also takes judicial notice of all evidence proffered or adduced and all arguments made at the hearings held before the Court during the pendency of these chapter 11 cases.

**E.     Claims Bar Date**

5.      On April 1, 2010, the Court entered an order (the "*Bar Date Order*") [Docket No. 499] which, among other things:     (a) established bar dates for filing Proof of Claims; (b) approved procedures for filing Proofs of Claim; and (c) approved notice of the General Bar Date.  The Bar Date Order established, as applicable, (i) 4:00 p.m. prevailing Eastern Time on

4

June 11, 2010, (ii) the Governmental Bar Date or (iii) such other period of limitation as may be specifically fixed by an order of the Court as the deadline for filing Proof of Claims.

**F.      Burden of Proof**

6.      The Debtors, as proponents of the Plan in accordance with section 1121(a) of the Bankruptcy Code, have met their burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation. Further, the Debtors have proven the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by clear and convincing evidence.

**G.      Transmittal and Mailing of Materials; Notice**

7.      As evidenced by the *Affidavit/Declaration of Service of Solicitation Packages Filed by The Garden City Group, Inc.* on April 9, 2010 [Docket No. 514], due, adequate and sufficient notice of the Disclosure Statement, the Plan, the Plan Supplement and the Confirmation Hearing, together with all deadlines for objecting to and voting to accept or reject the Plan, has been provided to: (a) the Office of the United States Trustee for the District of Delaware (the "*U.S. Trustee*"); (b) counsel to the statutory committee of unsecured creditors appointed in these chapter 11 cases (the "*Creditors' Committee*"); (c) counsel to the agent for the Debtors' postpetition secured lenders; (d) counsel to the Senior Secured Agent; (e) counsel to the Ad Hoc Group of Senior Secured Lenders; (f) counsel to the agent under the A/R Facility; (g) counsel to the Plan Investor; (h) the indenture trustees for each of the Debtors' outstanding bond issuances; (i) the monitor appointed in the CCAA Proceeding; (j) the Internal Revenue Service; and (k) any persons who have filed a request for notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002 and the Local Rules, in substantial compliance with the Disclosure Statement Order and Bankruptcy Rules 2002(b), 3017 and 3020(b). Adequate and

5

sufficient notice of the Confirmation Hearing and other dates and hearings described in the Disclosure Statement Order was provided in compliance with the Bankruptcy Rules and Disclosure Statement Order, and no other or further notice is or shall be required.

8. The Debtors published notice of the Confirmation Hearing (the "*Confirmation Hearing Notice*") in the national edition of *The Wall Street Journal* and Canada's *The Globe and Mail* in substantial compliance with the Disclosure Statement Order and Bankruptcy Rule 2002(l), as evidenced by the *Affidavit of Wall Street Journal Regarding Notice of Hearing to Consider Confirmation of the Chapter 11 Plan Filed by the Debtors and Related Voting and Objection Deadlines*, filed on April, 22, 2010 [Docket No. 560] and the *Affidavit of Legal Notice of the Globe and Mail Regarding Notice of Hearing to Consider Confirmation of the Chapter 11 Plan Filed by the Debtors and Related Voting and Objection Deadlines*, filed on April 23, 2010 [Docket No. 563].

## H. Solicitation

9. Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Disclosure Statement Order, all applicable provisions of the Bankruptcy Code and all other applicable rules, laws and regulations. Specifically, the solicitation materials approved by the Court in the Disclosure Statement Order (including, the Disclosure Statement, the Plan, ballots ("*Ballots*"), note ballots ("*Note Ballots*"), master ballots ("*Master Ballots*") and the Disclosure Statement Order) (the "*Solicitation Packages*") were transmitted to and served on all Holders of Claims in the Voting Classes, as well as to other parties in interest in the Debtors' chapter 11 cases, in compliance with section 1125 of the Bankruptcy Code, the Disclosure Statement Order, the Bankruptcy Rules and the Local Rules.

6

Such transmittal and service of the Solicitation Packages were adequate and sufficient and no further notice is or shall be required. In addition, Holders of Claims or Interests in the Non-Voting Classes were provided with a notice of non-voting status in lieu of a Solicitation Package, the form of which was approved by the Court as part of the Disclosure Statement Order. The Debtors were not required to provide the Holders of Class 8 Intercompany Claims with a Solicitation Package or any other type of notice. The Debtors were excused from mailing Solicitation Packages to: (a) Holders of Claims that have already been paid in full during these chapter 11 cases or that are authorized to be paid in full in the ordinary course of business pursuant to an order previously entered by this Court; (b) except as otherwise provided in the Disclosure Statement Order, Holders of Claims listed on the Debtors' schedules as contingent, unliquidated or disputed or zero or unknown in amount; or (c) any party to whom the notice of the Disclosure Statement hearing was returned as undeliverable. All procedures used to distribute the Solicitation Packages to Holders of Claims and Interests were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and all other applicable rules, laws and regulations.

## I. Vote Certification

10.     Before the Confirmation Hearing, the Debtors filed the Vote Certification. All procedures used to tabulate the Ballots, Note Ballots and Master Ballots were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and all other applicable rules, laws and regulations.

11.     As evidenced by the Vote Certification, Classes 4A, 5A, 5B, 5C, 6A and 6B voted to accept the Plan.

7

## J. Plan Supplement

12. On April 14, 2010 [Docket No. 533], the Debtors filed certain exhibits to the Plan Supplement, including: (a) the New By-Laws of Reorganized Atrium; (b) the New Certificate of Incorporation of Reorganized Atrium and Atrium Companies, Inc.; (c) the New Value Alternative Loan Agreements, including, the ABL Credit Agreement with General Electric Capital Corporation and the $185 million Credit Agreement with UBS Securities LLC; (d) the List of Rejected Executory Contracts and Unexpired Leases; (e) the List of Assumed Executory Contracts and Unexpired Leases and Cure Schedule; (f) the List of Retained Causes of Action; (g) the New Stockholders Agreement; (h) the Qualified Vendor Support Agreement; (i) the Members of the New Atrium Board and the New Subsidiary Boards; (j) the Officers of Reorganized Atrium; and (k) the Officers of the other Reorganized Debtors. On April 16, 2010, the Debtors filed an amendment to the Plan Supplement [Docket No. 538], which amendment included certain changes to the List of Rejected Executory Contracts and Unexpired Leases and the List of Assumed Executory Contracts and Unexpired Leases and Cure Schedule. On April 26, 2010, the Debtors filed a second amendment to the Plan Supplement [Docket No. 589], which includes (a) the $75 million Mezzanine Note Purchase Agreement with GGC Unlevered Credit Opportunities, LLC, (b) certain changes to the List of Rejected Executory Contracts and Unexpired Leases and the List of Assumed Executory Contracts and Unexpired Leases and Cure Schedule and (c) a description of various internal restructuring transactions that the Debtors and/or Reorganized Debtors intend to undertake as part of the New Value Alternative under the Plan. On April 27, 2010, the Debtors filed a third amendment to the Plan Supplement [Docket No. 601], which includes revised versions of the ABL Credit Agreement with General Electric Capital Corporation, the $185 million Credit Agreement with UBS Securities LLC and the

8

$75 million Mezzanine Note Purchase Agreement with GGC Unlevered Credit Opportunities, LLC. All materials included in the Plan Supplement and the amendments thereto are integral to, part of and incorporated by reference into the Plan. The Plan Supplement and the amendments thereto comply with the terms of the Plan, and the filing and notice of such documents is good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and no other or further notice is necessary. The Debtors reserve their right to alter, amend, update or modify the Plan Supplement prior to the Effective Date to be consistent with the Plan.

**K.     Modifications to the Plan**

13.     Subsequent to the Solicitation Deadline, the Debtors made certain modifications to the Plan. All modifications to the Plan since the entry of the Disclosure Statement Order are consistent with all of the provisions of the Bankruptcy Code, including, but not limited to, sections 1122, 1123, 1125 and 1127 of the Bankruptcy Code, including any modifications disclosed on the record at the Confirmation Hearing. Except as provided for by law, contract or previous order of the Court, none of the modifications made since the commencement of solicitation adversely affects the treatment of any Holder of a Claim or Interest under the Plan, except to the extent such Holder of a Claim or Interest has agreed to such different treatment. Accordingly, pursuant to section 1127(a) of the Bankruptcy Code, none of the modifications require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code.

14.     The filing of the Plan as modified and the disclosure of the Plan modifications on the record at or before the Confirmation Hearing constitute due and sufficient notice of any and all of such modifications.

9

15.     In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified. No Holder of a Claim shall be permitted to change its vote as a consequence of the Plan modifications, unless otherwise agreed to by the Holder of the Claim and the Debtors. All modifications to the Plan made after the Solicitation Deadline are hereby approved, pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. The Plan as modified shall constitute the Plan submitted for Confirmation.

## L.     Bankruptcy Rule 3016

16.     The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the Clerk of the Court satisfied Bankruptcy Rule 3016(b).

## M.     Compliance with the Requirements of Section 1129 of the Bankruptcy Code

17.     The Plan complies with all applicable provisions of section 1129(a) of the Bankruptcy Code, as follows:

### i.     Section 1129(a)(1) — Compliance with the Applicable Provisions of the Bankruptcy Code

#### a.     Section 1122 and 1123(a)(1) — Proper Classification

18.     The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Interests into 16 Classes, based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Claims and Priority Tax Claims, which are addressed in Article II of the Plan and are required not to be designated as separate Classes pursuant to section 1123(a)(1) of

the Bankruptcy Code). Valid business, factual and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan, the classifications were not done for any improper purpose and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Interests.

19.     As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class. As a result, the requirements of sections 1122 and 1123(a)(1) of the Bankruptcy Code have been satisfied.

### b.     Section 1123(a)(2) — Specification of Not Impaired Classes

20.     Article III of the Plan specifies that Claims in Classes 1, 2, 3, 7, 8 and 9 are Not Impaired under the Plan. Additionally, Article II of the Plan specifies that Administrative Claims and Priority Tax Claims are not Impaired, although these Claims are not classified under the Plan. As a result, the requirements of section 1123(a)(2) of the Bankruptcy Code have been satisfied.

### c.     Section 1123(a)(3) — Specification of Treatment of Impaired Classes

21.     Article III of the Plan specifies the treatment of each Impaired Class under the Plan, including Classes 4A, 4B, 5A, 5B, 5C, 6A, 6B, 6C, 6D, 7 and 10. As a result, the requirements of section 1123(a)(3) of the Bankruptcy Code have been satisfied.

### d.     Section 1123(a)(4) — No Discrimination

22.     Pursuant to section 1123(a)(4) of the Bankruptcy Code, Article III of the Plan uniformly provides for the same treatment of each Claim or Interest in a particular Class, as the case may be, unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest. As a result, the requirements of section 1123(a)(4) of the Bankruptcy Code have been satisfied.

11

### e.    Section 1123(a)(5) — Adequate Means for Plan Implementation

23.    The Plan provides for potential implementation of one of two restructuring alternatives: (a) the New Value Alternative and (b) the Stand-Alone Alternative. To the extent the New Value Alternative is not effectuated for any reason whatsoever, the Debtors shall seek Confirmation of the Stand-Alone Alternative.[3] Pursuant to section 1123(a)(5) of the Bankruptcy Code, Article IV and various other provisions of the Plan specifically provide in detail adequate and proper means for the Plan's implementation under either the New Value Alternative and the Stand-Alone Alternative, including, without limitation: (a) general settlement of claims; (b) authorization to consummate certain restructuring transactions contemplated in Article IV.B of the Plan and as described in the Plan Supplement (the *"Restructuring Transactions"*), as necessary to implement the Plan; (c) satisfaction of the DIP Facility; (d) satisfaction of the Senior Secured Credit Agreement; (e) satisfaction or extension of the A/R Facility; (f) issuance and distribution of the New Common Stock; (g) the continuation of the corporate existence of the Debtors and the vesting of assets in the Reorganized Debtors, following consummation of the Restructuring Transactions; (h) cancellation of the Senior Secured Credit Agreement, the Senior Subordinated Notes Indenture and the ACIH Notes Indenture, except as provided in the Plan; (i) the filing of New Certificates of Incorporation by each respective Reorganized Debtor; (j) the selection of the members of the New Atrium Board and the Reorganized Subsidiary Boards; (k) the continuation of all employment, retirement, indemnification and other agreements or arrangements relating to employee and retiree benefits in place as of the Effective Date; (l) the

---

[3]    The definition of Confirmation Order in the Plan was modified to provide for the separate entry of confirmation orders with respect to the New Value Alternative and the Stand-Alone Alternative. Specifically, to the extent the New Value Alternative is not implemented for any reason whatsoever, the Debtors will submit documentation to implement the Stand-Alone Alternative (consistent with Article I.A.123 of the Plan) and seek confirmation thereof at such time.

preservation of Causes of Action; and (m) the appointment of the Post-Confirmation Committee; *provided, however,* the Debtors are not, at this time, seeking confirmation of the Stand-Alone Alternative. As a result, the requirements of section 1123(a)(5) of the Bankruptcy Code have been satisfied.

### f.     Section 1123(a)(6) — Voting Power of Equity Securities

24.     The Plan and the Reorganized Debtors' corporate documents do not contemplate the issuance of non-voting equity securities. As a result, the requirements of section 1123(a)(6) of the Bankruptcy Code have been satisfied.

### g.     Section 1123(a)(7) — Selection of Officers and Directors

25.     Article IV of the Plan describes the manner of selection of directors and officers of the Reorganized Debtors. In addition, to the extent known and determined, the identities and affiliations of any and all persons proposed to serve as a director or officer were disclosed in the Plan Supplement, at or before the Confirmation Hearing, in compliance with applicable law. The selection of the initial directors of the New Atrium Board and the officers of the Reorganized Debtors was consistent with the interests of Holders of Claims and Interests and public policy. As a result, the requirements of section 1123(a)(7) of the Bankruptcy Code have been satisfied.

### h.     Section 1123(b) — Discretionary Contents of the Plan

26.     The Plan contains various provisions that may be construed as discretionary but are not required for Confirmation under the Bankruptcy Code. As set forth below, such discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent in any way with the applicable provisions of the Bankruptcy Code. As a result, the requirements of section 1123(b) of the Bankruptcy Code have been satisfied.

13

27.    Pursuant to sections 1123(b)(1) and 1123(b)(2) of the Bankruptcy Code, Article III of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims or Interests and Article V of the Plan provides for the assumption or rejection of the Executory Contracts and Unexpired Leases of the Debtors not previously assumed or rejected pursuant to section 365 of the Bankruptcy Code.

*(2)    Section 1123(b)(3) — Settlement, Releases, Exculpation,*
*Injunction and Preservation of Claims Provisions*

28.    **Compromise and Settlement.** Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The compromise and settlement of such Claims and Interests embodied in the Plan is in the best interests of the Debtors, their Estates and all Holders of Claims and Interests, and is fair, equitable and reasonable.

29.    **Release of Liens.** The full release and discharge of all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates described in Article VIII.C of the Plan, and excluding the Liens and security interests granted under the New Value Alternative Loan Documents (the "***Lien Release***") is necessary to implement the Plan. The Lien Release provisions in the Plan are appropriate, fair, equitable and reasonable and are in the best interests of the Debtors, their Estates and Holders of Claims and Interests.

30.    **Releases by the Debtors.** The release and discharge of Claims and Causes of Action by the Debtors and Reorganized Debtors described in Article VIII.D of the Plan (the

14

"*Debtor Release*") releases certain parties defined in the Plan as the "*Released Parties*" and are a necessary and an important aspect of the Plan. The Debtor Release is based on a valid exercise of sound business judgment and is reasonable and acceptable pursuant to the standards that courts in this district generally apply. Each of the Released Parties provided good and valuable consideration in exchange for the Debtor Release, including the service of the Released Parties in facilitating the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated in the Plan. The Released Parties played an integral role in the formulation of the Plan and have expended significant time and resources analyzing and negotiating the issues presented by the Debtors' prepetition capital structure.

31.     **Third Party Release by Holders of Claims and Interests.** The release of Claims and Causes of Action by Holders of Claims and Interests solely in their capacities as Released Parties as described in Article VIII.E of the Plan (the "*Third Party Release*") is an important aspect of the Plan. The Third Party Release is designed to provide finality for the Debtors, the Reorganized Debtors and the Released Parties regarding the parties' respective obligations under the Plan. The Ballots and Note Ballots sent to all Holders of Impaired Claims entitled to vote, as well as the Confirmation Hearing Notice, unambiguously provided in CAPITAL letters that the Third Party Release was contained in the Plan. Further, the Ballots and Note Ballots sent to all Holders of Impaired Claims entitled to vote provided as follows:

BY VOTING TO ACCEPT THE PLAN, YOU AGREE TO BE SUBJECT TO THE RELEASE IN ARTICLE VIII.E OF THE PLAN, WHICH PROVIDES:

**As of the Effective Date of the Plan, each Holder of a Claim or an Interest shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged the Debtors, the Reorganized Debtors and the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative Claims asserted on behalf of a debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such entity would have been legally entitled to assert (whether individually or**

> collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the CCAA Proceeding, the purchase, sale or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases or the CCAA Proceeding, the negotiation, formulation or preparation of the Plan, the Plan Supplement, the Disclosure Statement or related agreements, instruments or other documents, including any documents compiled in connection with either the New Value Alternative or the Stand-Alone Alternative, or any other act or omission, transaction, agreement, event or other occurrence relating to the Debtors taking place on or before the Confirmation Date of the Plan, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party unknown to the Debtors as of the Petition Date that constitutes willful misconduct or gross negligence.

If you would like to vote to accept the Plan but *not* be subject to the above release provision, please indicate so by checking this box: ☐[4]

Thus, the Released Parties were given due and adequate notice that they would be bound by the Third Party Release if they did not otherwise "opt-out."

32. **Exculpation.** The exculpation described in Article VIII.F of the Plan (the "*Exculpation*") is appropriate under applicable law because it is part of a Plan proposed in good faith, was vital to the Plan formulation process and is appropriately limited in scope. The Exculpation, including its carve-out for gross negligence and willful misconduct, is entirely consistent with established practice in this jurisdiction and others.

33. **Preservation of Causes of Action.** Article IV.P of the Plan appropriately provides for the preservation by the Debtors of the Causes of Action in accordance with section 1123(b)(3)(B) of the Bankruptcy Code. The retained Causes of Action include, but are not limited to, any actions specifically enumerated in the Plan Supplement. The provisions

---

[4] *See e.g.* Disclosure Statement Order at Exhibits 4, 5-A, 5-B and 5-C.

16

regarding Causes of Action in the Plan are appropriate, fair, equitable and reasonable and are in the best interests of the Debtors, their Estates and Holders of Claims and Interests.

34. **Injunction.** The injunction provision set forth in Article VIII.G of the Plan (the "*Injunction*") is necessary to preserve and enforce the Lien Release, the Debtor Release, the Third Party Release and the Exculpation, and the Injunction is narrowly tailored to achieve this purpose.

35. Thus, each of the Lien Release, the Debtor Release, the Third Party Release, the Exculpation and the Injunction set forth in the Plan: (a) is within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), 1334(b) and 1334(d); (b) is necessary to implement the Plan pursuant to section 1123(a)(6) of the Bankruptcy Code; (c) is an integral element of the transactions incorporated into the Plan; (d) confers material benefits on, and is in the best interests of, the Debtors, their Estates and the Holders of Claims and Interests; (e) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in these chapter 11 cases with respect to the Debtors; and (f) is consistent with sections 105, 1123, 1129, and other applicable provisions of the Bankruptcy Code. The releases are given in exchange for and are supported by fair, sufficient and adequate consideration provided by each and all of the parties receiving such releases. The record of the Confirmation Hearing and these chapter 11 cases is sufficient to support the Lien Release, the Debtor Release, the Third Party Release, the Exculpation and the Injunction provisions contained in Article VIII of the Plan. The failure to implement the Lien Release, the Debtor Release, the Third Party Release, the Exculpation and the Injunction provisions of the Plan would seriously impair the Debtors' ability to confirm the Plan.

### i.     Section 1123(d) — Cure of Defaults

36.    Article V of the Plan provides for the satisfaction of any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan in accordance with section 365 of the Bankruptcy Code by payment of any "cure amount" on the Effective Date, subject to the limitations described in Article V of the Plan, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. The Debtors, in accordance with the Plan, distributed notices of proposed assumption and proposed amounts of Cure Claims to the applicable counterparties, which notices included procedures for objecting to (and ultimately resolving) proposed assumptions of Executory Contracts and Unexpired Leases and any amounts of Cure Claims to be paid in connection therewith.

### ii.     Section 1129(a)(2) — Compliance of the Debtors and Others with the Applicable Provisions of the Bankruptcy Code

37.    The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, including sections 1123, 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018 and 3019. As a result, the requirements of section 1129(a)(2) of the Bankruptcy Code have been satisfied.

38.    The Debtors and their members (including ex officio members), officers, directors, employees, partners, attorneys, financial advisors, accountants, managed funds, investment bankers, investment advisors, actuaries, professionals, agents, affiliates, fiduciaries and representatives (collectively, the "*Debtors' Representatives*") as of or after the Petition Date did not solicit the acceptance or rejection of the Plan by any Holders of Claims or Interests after the Petition Date and before the approval and transmission of the Disclosure Statement. Votes to accept or reject the Plan were only solicited after the Petition Date by the Debtors and certain of

the Debtors' agents after disclosure to Holders of Claims and Interests of adequate information as defined in section 1125(a) of the Bankruptcy Code.

39. The Debtors' Representatives as of or after the Petition Date have solicited acceptance or rejection of the Plan in good faith and in compliance with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules and all other applicable rules, laws and regulations and have participated in good faith and in compliance with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules and all other applicable rules, laws and regulations in the issuance and distribution of the New Common Stock and Cash and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Debtor Release, the Third Party Release, the Exculpation and the Injunction provisions set forth in Article VIII of the Plan.

40. The Debtors, the Creditors' Committee, the Senior Secured Agent, the Ad Hoc Group of Senior Secured Lenders, the Holders of Senior Secured Claims, the New Value Alternative Agents, the New Value Alternative Lenders, the Plan Investor, Kenner, Golden Gate and each of their respective members (including ex officio members), officers, directors, principals, managers, employees, partners, attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, consultants, agents, affiliates, management companies, fund advisors, managed accounts or funds and representatives of each of the foregoing Entities (in each case in his, her, or its capacity as such) as of or after the Petition Date, have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance and distribution of recoveries under the Plan and, therefore, are not, and on account of such distributions will not be, liable at any

time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

a.     **Section 1129(a)(3) — Proposal of Plan in Good Faith**

41.     The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of these chapter 11 cases, the Plan itself and the process leading to its formulation.  The good faith of each of the Entities who negotiated the Plan is evident from the facts and records of these chapter 11 cases, the Disclosure Statement and the hearing thereon and the record of the Confirmation Hearing and other proceedings held in these chapter 11 cases.    The Plan (including the Plan Supplement) is the product of arm's-length negotiations between the Debtors, the Senior Secured Agent, the Ad Hoc Group of Senior Secured Lenders, the Holders of Senior Secured Claims, the Creditors' Committee, the New Value Alternative Agents, the New Value Alternative Lenders, the Plan Investor, Kenner and Golden Gate through their respective professionals.  The Plan itself, and the process leading to its formulation, provide independent evidence of the good faith of such Entities who negotiated the Plan, serve the public interest and assure fair treatment of Holders of Claims and Interests. The Debtors, the Senior Secured Agent, the Ad Hoc Group of Senior Secured Lenders, the Creditors' Committee, the New Value Alternative Agents, the New Value Alternative Lenders, the Plan Investor, Kenner and Golden Gate through their respective professionals negotiated with the legitimate and honest purposes of maximizing the value of the Debtors' Estates for the benefit of all creditors and afford the Debtors the ability to emerge from bankruptcy with a deleveraged capital structure.  Consistent with the overriding purpose of chapter 11 of the Bankruptcy Code, these chapter 11 cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to reorganize and emerge from

bankruptcy with a capital structure that will allow them to satisfy their obligations with sufficient liquidity and capital resources.

### b. Section 1129(a)(4) — Court Approval of Certain Payments as Reasonable

42.　The procedures set forth in the Plan for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with these chapter 11 cases, or in connection with the Plan and incident to these chapter 11 cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code. As a result, the requirements of section 1129(a)(4) of the Bankruptcy Code have been satisfied.

### c. Section 1129(a)(5) — Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy

43.　The Debtors have provided, to the extent known and determined, requisite disclosures regarding the proposed directors of the New Atrium Board and the Reorganized Subsidiary Boards as well as the officers of the Reorganized Debtors following Confirmation, as and to the extent required by section 1129(a)(5) of the Bankruptcy Code. The identity of any insider that will be employed or retained by the Reorganized Debtors and the nature of each such insider's compensation has been disclosed. As a result, the requirements of section 1129(a)(5) of the Bankruptcy Code have been satisfied.

### d. Section 1129(a)(6) — Approval of Rate Changes

44.　The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require any such governmental regulatory approval. As a result, the requirements of section 1129(a)(6) of the Bankruptcy Code have been satisfied.

### e. Section 1129(a)(7) — Best Interests of Holders of Claims and Interests

45.     The liquidation analysis attached as **Exhibit C** to the Disclosure Statement (the "*Liquidation Analysis*") and the other evidence related thereto that was proffered or adduced at or before the Confirmation Hearing:  (a) are reasonable, persuasive and credible; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that, with respect to each Impaired Class, each Holder of an Allowed Claim in such Class has voted to accept the Plan or will receive under the Plan on account of such Claim property of a value, as of the Effective Date, that is not less than the amount such Holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.  As a result, the requirements under section 1129(a)(7) of the Bankruptcy Code have been satisfied.

### f. Section 1129(a)(8) — Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Each Impaired Class

46.     Classes 1, 2 and 3 are each a Class of not Impaired Claims and are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

47.     Classes 4A, 5A, 5B, 5C, 6A and 6B are each Classes of Impaired Claims that have voted to accept the Plan.

48.     One Class, Class 4B, voted to reject the Plan.  Class 4B, however, is receiving a 100% recovery in Cash under New Value Alternative and, as reflected in the Plan, at this time the Debtors are only seeking Confirmation of the New Value Alternative.  To the extent the Debtors seek Confirmation of the Stand-Alone Alternative (in accordance with the terms of the Plan) following termination of the Equity Purchase Agreement, the rights and objections of Merrill Lynch Capital Services, Inc. as it relates to the Stand-Alone Alternative, including the objections set forth in the Merrill Lynch Objection, are expressly preserved.

49.     Classes 8 and 9 are not Impaired and are deemed to have accepted the Plan. These Classes are rendered not Impaired to maintain the Debtors' prepetition organizational structure for the administrative benefit of the Reorganized Debtors and as a mechanism to ensure continuation of the Debtors' current corporate structure subject to certain Restructuring Transactions contemplated to be accomplished on the Effective Date in accordance with Article IV of the Plan.

50.     Classes 6C, 6D, 7 and 10 are each a Class of Impaired Claims or Interests and each is deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code because Holders of Claims or Interests in these Classes are not entitled to receive or retain any property under the Plan. While the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code with respect to Classes 6C, 6D, 7 and 10, the Plan is confirmable because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code, as discussed below.

g.      **Section 1129(a)(9) — Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code**

51.     Allowed Administrative Claims and Allowed Priority Tax Claims are not Impaired pursuant to Article II of the Plan. Allowed Priority Non-Tax Claims are not Impaired pursuant to Article III of the Plan. As a result, the requirements of section 1129(a)(9) of the Bankruptcy Code with respect to such Classes have been satisfied.

h.      **Section 1129(a)(10) — Acceptance by At Least One Impaired Class**

52.     As set forth in the Vote Certification, Classes 4A, 5A, 5B, 5C, 6A and 6B are each a Class of Impaired Claims and have voted to accept the Plan. As such, there is at least one Class of Claims that is Impaired and has accepted the Plan, determined without including any acceptance of the Plan by any insider. As a result, the requirements of section 1129(a)(10) of the Bankruptcy Code have been satisfied.

23

### i.  Section 1129(a)(11) — Feasibility of the Plan

53.    The evidence proffered or adduced at, or before, the Confirmation Hearing in connection with the feasibility of the Plan, including the projections of the Debtors' financial performance for the years 2010 through 2014, attached as **Exhibit D** to the Disclosure Statement, is reasonable, persuasive and credible, has not been controverted by other evidence, and establishes that Confirmation of the Plan is not likely to be followed by the liquidation or need for further financial reorganization of the Reorganized Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

### j.  Section 1129(a)(12) — Payment of Bankruptcy Fees

54.    Article II.C of the Plan provides that all fees payable pursuant to section 1930 of the United States Judicial Code shall be paid for each quarter (including any fraction thereof) until these chapter 11 cases are converted, dismissed or closed, whichever occurs first. As a result, the requirements of section 1129(a)(12) of the Bankruptcy Code have been satisfied.

### k.  Section 1129(a)(13) — Retiree Benefits

55.    Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for retiree benefits at levels established pursuant to section 1114 of the Bankruptcy Code. The Debtors do not have any obligations on account of retiree benefits (as such term is used in section 1114 of the Bankruptcy Code) and, therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to these chapter 11 cases. As a result, the requirements of section 1129(a)(13) of the Bankruptcy Code have been satisfied.

l. **Sections 1129(a)(14), (15), and (16) — Domestic Support Obligations; Unsecured Claims Against Individual Debtors; Transfers by Nonprofit Organizations**

56.     None of the Debtors have domestic support obligations, are individuals or are nonprofit organizations. Therefore, sections 1129(a)(14), (15), and (16) of the Bankruptcy Code do not apply to these chapter 11 cases.

m. **Section 1129(b) — No Unfair Discrimination; Fair and Equitable**

57.     Despite the Debtors' inability to satisfy section 1129(a)(8) of the Bankruptcy Code, based upon the evidence proffered, adduced and presented by the Debtors at the Confirmation Hearing, or otherwise filed or on the record in these chapter 11 cases, including the Disclosure Statement and the exhibits thereto, the Plan does not discriminate unfairly and is fair and equitable with respect to Classes 6C, 6D, 7 and 10, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code. The New Common Stock to be received by Kenner in connection with the New Value Alternative is solely on account of its new money investment in Reorganized Atrium, which investment was market tested and determined to be the highest and best available under the circumstances. Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by Classes 6C, 6D, 7 and 10.

n. **Section 1129(c) — Only One Plan**

58.     Other than the Plan (including previous versions thereof), no other plan has been filed in these chapter 11 cases. As a result, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

o. **Section 1129(d) — Principal Purpose of the Plan Is Not Avoidance of Taxes**

59.     No Governmental Unit has requested that the Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of

the application of section 5 of the Securities Act. As a result, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

## N.  Satisfaction of Confirmation Requirements

60.    Based upon the foregoing, all other filed pleadings, documents, exhibits, statements, declarations and affidavits filed in connection with Confirmation of the Plan and all evidence and arguments made, proffered or adduced at the Confirmation Hearing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

## O.  Good Faith

61.    Based on the record before the Court in these chapter 11 cases: (a) the Debtors; (b) the Creditors' Committee; (c) the Senior Secured Agent; (d) the Ad Hoc Group of Senior Secured Lenders; (e) the Holders of Senior Secured Claims; (f) the Plan Investor; (g) Kenner; (h) Golden Gate; (i) the New Value Alternative Agents and the New Value Alternative Lenders and (j) all of the current members (including ex officio members), officers, directors, employees, partners, attorneys, financial advisors, accountants, managed funds, investment bankers, investment advisors, actuaries, professionals, agents, affiliates, fiduciaries and representatives of each of the foregoing Entities (in each case in his, her or its capacity as such) as of or after the Petition Date have acted in good faith within the meaning of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any applicable non-bankruptcy law, rule or regulation, will continue to act in good faith if they proceed to: (i) consummate the Plan, the Restructuring Transactions and the agreements, settlements, transactions and transfers contemplated thereby; and (ii) take the actions authorized and directed by this Confirmation Order, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent such parties are listed therein, the Exculpation provisions set forth in Article VIII of the Plan.

**P.     Disclosure:  Agreements and Other Documents**

62.     The Debtors have disclosed all material facts regarding:  (a) the New By-Laws of Reorganized Atrium; (b) the New Certificate of Incorporation of Reorganized Atrium and Atrium Companies, Inc.; (c) the New Value Alternative Loan Agreements, including, the ABL Credit Agreement with General Electric Capital Corporation, the $185 million Credit Agreement with UBS Securities LLC and the $[75] million Mezzanine Note Purchase Agreement with GGC Unlevered Credit Opportunities, LLC and the other New Value Alternative Loan Documents; (d) the List of Rejected Executory Contracts and Unexpired Leases; (e) the List of Assumed Executory Contracts and Unexpired Leases and Cure Schedule; (f) the List of Retained Causes of Action; (g) [the Management Incentive Plan]; (h) the issuance of the New Common Stock and the New Stockholders Agreement; (i) the Qualified Vendor Support Agreement; (j) the selection of the members of the New Atrium Board and the Reorganized Subsidiary Boards; and the (k) the selection of the officers of Reorganized Atrium and the other Reorganized Debtors.

**Q.     Transfers by the Debtors; Vesting of Assets**

63.     All transfers of property of the Estates, including, but not limited to, the issuance of the New Common Stock, shall be free and clear of all Liens, charges, Claims, encumbrances and other interests, except as expressly provided in the Plan and except for the Liens and security interests granted pursuant to the New Value Alternative Loan Documents.  Pursuant to sections 1141(b) and (c) of the Bankruptcy Code and subject to paragraph 90 below, all property of each of the Debtors (excluding property that has been abandoned pursuant to the Plan or an order of the Court) shall vest in each respective Reorganized Debtor or its successors or assigns, as the case may be, free and clear of all Liens, charges, Claims, encumbrances and other interests, except as expressly provided in the Plan and except for the Liens and security interests granted

27

pursuant to the New Value Alternative Loan Documents. Such vesting does not constitute a voidable transfer under the Bankruptcy Code or applicable non-bankruptcy law.

## R. Likelihood of Satisfaction of Conditions Precedent to the Effective Date

64. Each of the conditions precedent to the Effective Date, as set forth in Article IX of the Plan, has been satisfied or waived in accordance with the provisions of the Plan or is reasonably likely to be satisfied or waived.

## S. Approval of the Equity Purchase Agreement

65. On March 22, 2010, the Court entered an order (the "*EPA Order*") [Docket No. 432] authorizing the Debtors to enter into the Equity Purchase Agreement (the "*EPA*"), which is attached as **Exhibit 1** to the EPA Order, with the Plan Investor in connection with the Plan. As set forth in more detail in the EPA, the Plan Investor will invest up to $169.2 million in exchange for 92.5% of the New Common Stock of Reorganized Atrium. The EPA is an essential element of the Plan and entry into and consummation of the transactions contemplated by the Equity Purchase Agreement is in the best interests of the Debtors, the Debtors' Estates and Holders of Claims and Interests.

66. For the avoidance of doubt, and as stated in the EPA Order, the EPA is approved in all respects and the Debtors are authorized to take all action necessary or appropriate to implement the EPA and the transactions contemplated therein. The Debtors are authorized, without any further notice to or action, order or approval of the Court, to execute and deliver all agreements, documents, instruments and certificates relating to the EPA and to perform their obligations thereunder. Moreover, the Debtors are authorized, in accordance with Section 4.08 of the EPA, to reimburse the Plan Investor and each of its equity investors for and in respect of all documented fees, costs and expenses incurred by such persons arising from or in connection

with their participation in the chapter 11 cases (including the New Value Alternative and the transactions contemplated by the EPA), including, without limitation, commitment fees of prospective financing sources, reasonable fees and expenses of counsel and other expenses; provided, however, that no such reimbursement shall be permitted to the extent that the making of such reimbursement would render the Plan unfeasible.

## T.    Exit Financing

67.    Subject to, and upon the occurrence of, the Effective Date, and without further notice to or order or other approval of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person or Entity (including any board of directors of any of the Debtors), except for this Confirmation Order and as otherwise required by the New Value Alternative Loan Documents, the Reorganized Debtors shall, and are hereby authorized to, enter into and perform and receive the proceeds of the New Value Alternative Loans and to execute and deliver the New Value Alternative Loan Documents, in each case consistent with the terms of the Plan and the New Value Alternative Loan Agreements or otherwise on terms and conditions acceptable to the New Value Alternative Agents. Confirmation of the Plan shall be deemed (a) approval of the New Value Alternative Loans and the New Value Alternative Loan Documents and all transactions contemplated thereby, including, without limitation, any supplemental or additional syndication of the New Value Alternative Loans, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein and (b) authorization of the Reorganized Debtors to enter into and execute the New Value Alternative Loan Documents and such other documents as the New Value Alternative Agents and/or New Value Alternative Lenders may

require to effectuate the New Value Alternative Loans, subject to such modifications as the Reorganized Debtors may deem to be necessary to consummate the New Value Alternative Loans with the prior written consent of the New Value Alternative Agents, if required under the terms therein.

68. The New Value Alternative Loan Documents shall constitute legal, valid, binding and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the New Value Alternative Loan Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to recharacterization for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any other applicable non-bankruptcy law. On the Effective Date, all of the Liens and security interests to be granted in accordance with the New Value Alternative Loan Documents (a) shall be deemed to be approved, (b) shall be legal, binding and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the New Value Alternative Loan Documents, (c) shall be deemed perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the New Value Alternative Loan Documents and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtors and the Persons and Entities granted such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal or other law (whether domestic or foreign) that would

30

be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals and consents shall not be required) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

69. Upon the Effective Date, all commitments under the DIP Credit Agreement and Senior Secured Credit Agreement shall have terminated and the proceeds of the New Value Alternative Loans and, to the extent necessary, the proceeds of the equity investments under the Equity Purchase Agreement shall be used to repay all of (a) the DIP Claims then outstanding and (b) that portion of the Allowed Senior Secured Claims then outstanding that are required to be repaid in Cash pursuant to Article III.C.4 of the Plan. Upon the making of such repayments in respect of the DIP Claims and the Senior Secured Claims, all DIP Claims and all Senior Secured Claims shall have be deemed satisfied in full (other than unasserted contingent obligations which from and after the Effective Date (to the extent such contingent obligations survive the termination of the DIP Credit Agreement or Senior Secured Credit Agreement, as applicable) shall constitute unsecured claims against the applicable Reorganized Debtors and shall not be secured by any Lien or security interest on any assets of the Estates or the Reorganized Debtors; *provided, however*, that notwithstanding anything herein or otherwise the Debtors are required hereunder to satisfy all such contingent obligations on a current basis), and all of the respective Liens and security interests on the assets of the Estates securing any or all of the DIP Claims and the Senior Secured Claims shall be, and shall be deemed to be, cancelled, released and discharged in their entirety. Upon the Effective Date, all payments made on account of the Allowed Senior Secured Claims shall be indefeasible. Notwithstanding the foregoing, to the

31

extent that any of the DIP Agent, the DIP Lenders, the Senior Secured Agent or any other Holders of Senior Secured Claims have filed or recorded publicly any Liens and/or security interests to secure the DIP Claims or the Senior Secured Claims, the DIP Agent, the DIP Lenders, the Senior Secured Agent and/or other holders of Senior Secured Claims, as the case may be, shall take any and all steps reasonably requested by the Debtors or any New Value Alternative Agent that are necessary to cancel and/or extinguish such publicly-filed Liens and/or security interests, in each case all costs and expenses in connection therewith to be paid by the Debtors.

70.     The Debtors are authorized, without any further notice to or action, order, or approval of the Court, to enter into and be bound by a termination and reassignment agreement (the "*A/R Facility Termination Agreement*") with respect to the A/R Facility. Upon the Effective Date, all obligations owed under the A/R Facility shall have terminated in accordance with the terms of the A/R Facility Termination Agreement and the proceeds of the New Value Alternative Loans and, to the extent necessary, the proceeds of the equity investments under the Equity Purchase Agreement, shall be used by the Debtors to pay the purchase price for the repurchase by the Debtors of all outstanding accounts receivable that were previously transferred by such Debtors under the A/R Facility. Upon the making of such payments in respect of the A/R Facility, which, upon the Effective Date shall be indefeasible, all of the respective Liens and security interests in any and all assets of the Debtors under the A/R Facility shall be, and shall be deemed to be, cancelled, released and discharged in their entirety.

## U.     Implementation of Necessary Documents and Agreements

71.     All documents and agreements necessary to implement the Plan, including, but not limited to, the documents and agreements necessary to consummate the Restructuring

Transactions and all other relevant and necessary documents and agreements, are in the best interests of the Debtors, the Reorganized Debtors and Holders of Claims and Interests, have been negotiated in good faith and at arm's-length and shall, upon completion of documentation and execution, be valid, binding and enforceable agreements and not be in conflict with any federal or state law. The Debtors have exercised reasonable business judgment in determining to enter into all such documents and agreements and have provided sufficient and adequate notice of such documents and agreements. The terms and conditions of such documents and agreements are fair and reasonable and are approved. The Debtors are authorized, without any further notice to or action, order, or approval of the Court, to finalize and execute and deliver all agreements, documents, instruments and certificates relating thereto and perform their obligations thereunder in accordance with the Plan.

## V.     Executory Contracts and Unexpired Leases

72.     The Debtors have exercised reasonable business judgment in determining whether to assume or reject each of their Executory Contracts and Unexpired Leases as set forth in Article V of the Plan, the Plan Supplement, this Confirmation Order or otherwise. Each assumption or rejection of an Executory Contract or Unexpired Lease in accordance with Article V of the Plan, the Plan Supplement, this Confirmation Order or otherwise shall be legal, valid and binding upon (a) the applicable Debtor and upon the Reorganized Debtors if such Executory Contract or Unexpired Lease is assumed and (b) all non-Debtor parties to such Executory Contract or Unexpired Lease, all to the same extent as if such assumption or rejection had been authorized and effectuated pursuant to a separate order of the Court that was entered pursuant to section 365 of the Bankruptcy Code before Confirmation.

73.     Any Executory Contract or Unexpired Lease set forth on the Rejected Executory Contract and Unexpired Lease List shall be deemed rejected as of the date rejected on the schedule to such list.

74.     The assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date the Debtors or Reorganized Debtors assume such Executory Contract or Unexpired Lease. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order or approval of the Court.

## W.     Landlord Waiver and Consent

75.     On or before April 14, 2010, the Debtors provided individual notices of the proposed assumption of Executory Contracts and Unexpired Leases in accordance with Article V.C of the Plan, in the form attached hereto as **Exhibit 3** (the "*Assumption Notice*") and incorporated herein by reference. The Assumption Notice also indicated that counterparties (each, a "*Landlord*") to Unexpired Leases that were to be assumed were required to execute, or would otherwise be bound by, the form of Waiver and Consent attached hereto as **Exhibit 4** (the "*Landlord Waiver and Consent*") and included with each applicable Assumption Notice. As stated in the Assumption Notice, this Order includes the specific provisions included in the Landlord Waiver and Consent and shall be deemed binding on each Landlord whether or not an executed version of the Landlord Waiver and Consent was delivered to the Debtors.

34

Accordingly, each Landlord to an Unexpired Lease assumed pursuant the Plan shall be deemed to be bound by the terms and conditions included in the Landlord Waiver and Consent, as reflected on **Exhibit 5** attached hereto and incorporated herein by reference (such terms, the "*Assumption Terms*").

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

76.     **Confirmation of the Plan.** All requirements for Confirmation of the Plan have been satisfied. The Plan, which constitutes a separate chapter 11 plan of reorganization for each Debtor, and the Plan Supplement (as such may be amended by this Confirmation Order or in accordance with the Plan) and each of the provisions thereof are confirmed in each and every respect pursuant to section 1129 of the Bankruptcy Code, as may be modified by this Confirmation Order; *provided, however,* that to the extent the New Value Alternative is not effectuated for any reason whatsoever, the Debtors shall, consistent with Article I.A.123 of the Plan, submit, as part of an amended Plan Supplement, documents necessary to implement the Stand-Alone Alternative and thereafter seek confirmation of the Stand-Alone Alternative, without the need for further solicitation; *provided, further, however*, that the rights and objections to the Stand-Alone Alternative of Merrill Lynch Capital Services, Inc., Delaware Frame (TX), L.P., Windough (DE) LP and Windough Lot (DE) LP are expressly reserved. Subject to Article I.A.123 of the Plan (as it relates to the submission of the Plan Supplement documents with respect to the Stand-Alone Alternative), the documents contained in the Plan Supplement, and any amendments, modifications and supplements thereto, and all documents and agreements related thereto (including all exhibits and attachments thereto and documents referred to in such papers), and the execution, delivery and performance thereof by the

Reorganized Debtors, are authorized and approved as finalized, executed and delivered. Without any further notice to or action, order or approval of the Court, the Debtors, the Reorganized Debtors and their successors are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that are consistent with the Plan. As set forth in the Plan, once finalized and executed, the documents comprising the Plan Supplement and all other documents contemplated by the Plan shall constitute legal, valid, binding and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create, as of the Effective Date, all Liens and other security interests purported to be created thereby.

77. **Objections.** All objections, responses to, statements, comments and all reservations of rights pertaining to Confirmation that have not been withdrawn, waived or settled, before or on the record at, the Confirmation Hearing are hereby overruled on the merits.

78. **Findings of Fact and Conclusions of Law.** The findings of fact and the conclusions of law stated in this Confirmation Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the proceeding by Bankruptcy Rule 9014. To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

79. The terms of the Plan, the Plan Supplement and exhibits thereto are incorporated by reference into, and are an integral part of, this Confirmation Order. The terms of the Plan, the Plan Supplement, all exhibits thereto and all other relevant and necessary documents, shall be effective and binding as of the Effective Date.

80.     **Plan Modifications.**  Subsequent to filing the Plan on January 20, 2010 and March, 16, 2010, the Debtors made certain modifications to the Plan, which are reflected in the version of the Plan attached hereto as **Exhibit 1**.  Except as provided for by law, contract or prior order of the Court, none of the modifications made since the commencement of solicitation adversely affects the treatment of any Claim against or Interest in any of the Debtors under the Plan, except to the extent such Holder of a Claim or Interest has agreed to such different treatment.  The filing with the Court of the Plan as modified and the disclosure of the modifications to the Plan on the record at the Confirmation Hearing constitute due and sufficient notice thereof.  Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, none of the modifications to the Plan require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code (especially in light of previously provided disclosures), nor do they require that Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.  The Plan as modified and attached hereto shall constitute the Plan submitted for Confirmation.

81.     **Deemed Acceptance of Plan as Modified.**  Upon entry of this Confirmation Order all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

82.     **Plan Classifications Controlling.**  The classification of Claims and Interests for purposes of distributions made under the Plan shall be governed solely by the terms of the Plan.  The classifications set forth on the Ballots, Note Ballots and Master Ballots tendered to or returned by the creditors in connection with voting on the Plan (a) were set forth on the Ballots,

37

Note Ballots and Master Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes and (c) shall not be binding on the Debtors.

83. **Operation as of the Effective Date.** Subject to Article IX.B of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors and any and all Holders (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. This Confirmation Order shall not be stayed and the terms and conditions of this Confirmation Order shall be immediately effective and enforceable upon its entry.

84. **Cancellation of Securities.** Except as otherwise provided in the Plan, the EPA or any agreement, instrument or other document incorporated in the Plan or the Plan Supplement, on and after the Effective Date, the obligations of the Debtors under any existing agreement, document or instrument relating to any indebtedness or obligation of or ownership interest in the Debtors shall be cancelled solely as to the Debtors and the Reorganized Debtors shall not have any continuing obligations thereunder consistent with the terms and conditions set forth in Article IV.I of the Plan. In particular, on or as soon as reasonably practicable after the Effective Date, The Depository Trust and Clearing Corporation shall cancel the Senior Subordinated Notes.

85.     **Administrative Claims.** Except with respect to Administrative Claims that are Fee Claims and except to the extent that a Holder of an Allowed Administrative Claim and the applicable Debtor(s) agree to less favorable treatment, each Holder of an Allowed Administrative Claim shall be paid in full in Cash on the later of: (a) on or as soon as reasonably practicable after the Effective Date; (b) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed; and (c) the date such Allowed Administrative Claim becomes due and payable, or as soon thereafter as is practicable; *provided, however,* that Allowed Administrative Claims that arise in the ordinary course of the Debtors' business shall be paid in full in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to, such transactions.

86.     **Administrative Claim Bar Date.** Except as otherwise provided in Article II.A of the Plan, requests for payment of an Administrative Claim must be Filed with the Court and served on the Reorganized Debtors pursuant to the procedures specified in this Confirmation Order and the notice of entry of this Confirmation Order no later than 30 days after entry of this Confirmation Order. **Any Holder of an Administrative Claim that is required to, but does not, File and serve a request for payment of such Administrative Claim by such date shall be forever barred, stopped and enjoined from asserting such Administrative Claim against the Debtors or their property and such Administrative Claim shall be deemed discharged as of the Effective Date.** Objections to such requests, if any, must be Filed and served on the Reorganized Debtors and the requesting party no later than 90 days after the Effective Date.

87.     **Fee Claims.** Except as otherwise provided in the Plan, pursuant to Article II.A.2 of the Plan, Professionals asserting a Fee Claim for services rendered before the Confirmation

39

Date must File and serve on the Reorganized Debtors and such other Entities who are designated by the Bankruptcy Rules, this Confirmation Order, the Interim Compensation Order or other order of the Court, an application for final allowance of such Fee Claim no later than 20 days after the Effective Date; *provided*, that any such final application may include amounts incurred in connection with preparing such final application, attending any hearing (or hearings) on such final application, responding to objections to such final application or appeals of this Confirmation Order; *provided, further*, that any Professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Confirmation Date, without further order of the Court, pursuant to the Ordinary Course Professionals Order. Objections to any Fee Claim must be Filed and served on the Reorganized Debtors and the requesting party no later than 50 days after the Effective Date. Upon the Court's approval of a Fee Claim and unless otherwise agreed to by the Professional, the Professional who Filed such Fee Claim will be compensated pursuant to Article IV.R of the Plan. To the extent necessary, this Confirmation Order shall amend and supersede any previously entered order of the Court regarding the payment of Fee Claims. Notwithstanding the foregoing, the Professional fees and expenses incurred by the DIP Agent, the Senior Secured Agent, and the Ad Hoc Group of Senior Secured Lenders shall be payable in accordance with the terms of the DIP Order. The Canadian Professionals (as that term is defined in the Cross-Border Protocol) are not required to File and serve applications in respect of any Fee Claims.

88.     **Fee Claims Escrow Account.** On the Effective Date, in accordance with Article IV.R of the Plan, the Plan Investor may (a) establish and fund the Fee Claims Escrow Account in an amount equal to all Fee Claims outstanding as of the Effective Date (including unbilled and

estimated amounts, if applicable) or (b) enter into an agreement with any Holder of a Fee Claim acceptable to such Holder. Amounts held in the Fee Claims Escrow Account shall not constitute property of the Plan Investor or the Reorganized Debtors. The Fee Claims Escrow Account may be an interest-bearing account. In the event there is a remaining balance in the Fee Claims Escrow Account following (i) payment to all Holders of Fee Claims under the Plan and (ii) the closing of the chapter 11 cases pursuant to Article XII.L, such remaining amount, if any, shall be returned to the Reorganized Debtors.

89.    **Post-Confirmation Fee Claims.** Except as otherwise provided in the Plan, pursuant to Article II.A of the Plan, from and after the Confirmation Date, the Reorganized Debtors or the Creditors' Committees shall, in the ordinary course of business and without any further notice to or action, order or approval of the Court, pay in Cash the reasonable legal, professional or other fees and expenses related to implementation and consummation of the Plan incurred by the Reorganized Debtors through and including the Effective Date. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional for services rendered or expenses incurred after the Confirmation Date in the ordinary course of business without any further notice to any party or action, order or approval of the Court.

90.    **Vesting of Assets in the Reorganized Debtors.** Pursuant to Article IV.H of the Plan, except as otherwise provided in the Plan, the EPA, any agreement, instrument or other document incorporated in the Plan or the Plan Supplement or this order, on the Effective Date, all property in each Estate, all Causes of Action and any property acquired by any of the Debtors pursuant to the Plan shall vest in each applicable Reorganized Debtor, free and clear of all Liens,

Claims, charges or other encumbrances, except for the Liens and security interests granted pursuant to the New Value Alternative Loan Documents. On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire or dispose of property and compromise or settle any Claims, Interests or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

91. **The Post-Confirmation Committee.** Following entry of this Confirmation Order, the Creditors' Committee, in consultation with the Debtors, shall appoint the members of the Post-Confirmation Committee consistent with the provisions of Article IV.Q of the Plan, such Post-Confirmation Committee being established for the sole purpose of reviewing and consulting with the Debtors regarding objections to Claims pursuant to Article VII of the Plan and overseeing distributions to Holders of Allowed General Unsecured Claims.

92. **Rejection Claims and Rejection Bar Date.** All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or this Confirmation Order, if any, must be Filed on the later of (a) 30 days after service of notice of entry of an order of the Court (including this Confirmation Order) approving such rejection or (b) June 11, 2010.[5] **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time will be automatically disallowed, forever barred from assertion and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates or their property without the need for any objection by**

---

[5] On April 1, 2010, the Court entered the Bar Date Order [Docket No. 499] establishing, among other things, bar dates for filing Proofs of Claim. Pursuant to the Bar Date Order, all Proofs of Claim must be filed by June 11, 2010.

the **Reorganized Debtors or further notice to, or action, order or approval of the Court.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims (against the applicable Debtor) and shall be treated in accordance with Article III.C.10, Article III.C.11, or Article III.C.12 of the Plan, as applicable.

93. **Assumption of Executory Contracts or Unexpired Leases: Release and Satisfaction of Claims or Defaults.** Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date of the Debtors or Reorganized Debtors' assumption of such Executory Contract or Unexpired Lease. **Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order or approval of the Court.** The Consummation of the Plan shall not constitute a change of ownership or change in control, as such terms are used in any statute, regulation, contract or agreement, including, but not limited to, any employment, severance, termination or insurance agreements, in effect on the Effective Date and to which any of the Debtors are a party or under any applicable law of any applicable Governmental Unit. Notwithstanding the foregoing, the Debtors and the Reorganized Debtors reserve the right to selectively waive this provision.

94. **Assumption of Insurance Policies.** Pursuant to Article V.D of the Plan, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto,

are treated as Executory Contracts under the Plan. On the Effective Date, the Debtors shall be deemed to have assumed all insurance policies.

95.     **Discharge of Claims and Termination of Interests.**    As provided in Article VIII.B of the Plan, pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument or other agreement or document created pursuant to the Plan, the Discharge of Claims and Termination of Interests provision in the Plan is approved in all respects.    This Confirmation Order shall constitute a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

96.     **Release of Liens.  As provided for in Article VIII.C of the Plan, as of the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, subject to satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, and in the case of each Senior Secured Claim, subject to the receipt by each Holder of an Allowed Senior Secured Claim of the distributions specified in Article III.C.4 of the Plan, the Lien Release is approved and authorized in all respects.** Any Person (other than the DIP Agent, the DIP Lenders, the Senior Secured Agent or any other Holders of Senior Secured Claims, all of whom shall be subject to the provisions of Paragraph 69) holding Liens or Interests that are subject to release and discharge pursuant to the Lien Release shall, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Reorganized Debtors such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Reorganized Debtors.

97.     **Release by the Debtors**.  As provided for in Article VIII.D of the Plan, pursuant to section 1123(b) of the Bankruptcy Code, as of the Effective Date, the Debtor Release is approved and authorized in all respects.

98.     **Release by Holders of Claims and Interests**.  As provided for in Article VIII.E of the Plan, as of the Effective Date, the Third Party Release is approved and authorized in all respects.

99.     Notwithstanding the foregoing, nothing in this Plan discharges, releases, precludes or enjoins (a) any environmental liability to any Governmental Unit that is not a Claim as such term is defined in section 101 of the Bankruptcy Code or (b) any environmental Claim of any Governmental Unit on the part of any Person other than the Debtors, the Reorganized Debtors, the Plan Investor, Golden Gate or Kenner.  The Debtors and the Reorganized Debtors reserve the right to assert that any environmental liability is a Claim that arose on or prior to the Effective Date and that such Claim has been discharged and/or released under sections 524 and 1141 of the Bankruptcy Code.  In addition, nothing in the Plan discharges, releases, precludes or enjoins any environmental liability to any Governmental Unit that any entity would be subject to as the owner or operator of property after the Effective Date.  Notwithstanding any other provisions in this Confirmation Order or the Plan, the Court retains jurisdiction, but not exclusive jurisdiction, to determine whether environmental liabilities asserted by a Governmental Unit are discharged or otherwise barred by this Confirmation Order, the Plan or the Bankruptcy Code.

100.    **Exculpation**.  As provided for in Article VIII.F of the Plan, as of the Effective Date, the Exculpation is approved and authorized in all respects.

101.    **Injunction**.  From and after the Effective Date, and as contemplated in Article VIII.G of the Plan, the Injunction shall be in full force and effect.

102.    **Termination of Injunction or Stays.** Pursuant to Article VIII.J of the Plan, unless otherwise provided, all injunctions or stays in effect in these chapter 11 cases pursuant to sections 105 or 363 of the Bankruptcy Code or any order of the Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

103.    **General Unsecured Claims Distribution Escrow Account.** On or as reasonably practicable after the Effective Date, the Debtors shall establish and fund the General Unsecured Claims Distribution Escrow Account in accordance with Article VI.B of the Plan. Cash held in the General Unsecured Claims Distribution Escrow Account shall not constitute property of the Debtors or the Reorganized Debtors.

104.    **The Disbursing Agent.** All distributions under the Plan shall be made by the Disbursing Agent on the Effective Date in accordance with the terms and conditions set forth in Article VI of the Plan. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Court. Additionally, in the event that the Disbursing Agent is otherwise so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors. The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated under the Plan and hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Court or the Canadian Court, pursuant to the Plan, or as

deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof. The amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors. Pursuant to Article VIII.I of the Plan, any distributions under the Plan to Holders of 11.0% Senior Subordinated Notes Claims and 15.0% Senior Subordinated Notes Claims shall be received and retained free from any obligations to hold or transfer the same to any other creditor, and shall not be subject to levy, garnishment, attachment, or other legal process by any Holder by reason of claimed contractual subordination rights. The Subordination Rights shall be waived and this Confirmation Order shall constitute an injunction enjoining any Persons from enforcing or attempting to enforce any contractual, legal or equitable subordination rights to Property distributed under the Plan to Holders of 11.0% Senior Subordinated Notes Claims and Holders of 15.0% Senior Subordinated Notes Claims, in each case other than as provided in the Plan.

105.     **Distribution of Noteholders New Common Stock Certificates.** Consistent with Article IV.E.3 of the Plan, on the Effective Date, the Debtors shall (a) issue a New Common Stock certificate representing 50,000 shares of New Common Stock to "Wells Fargo Bank, National Association, as indenture trustee for the Atrium Companies, Inc. 15.0% Senior Subordinated Noteholders" (the "*15% Noteholders Certificate*") and (b) issue a New Common Stock certificate representing 100,000 shares of New Common stock to "U.S. Bank National Association, as indenture trustee for the Atrium Companies, Inc. 11% Senior Subordinated Noteholders" (the "*11% Noteholders Certificate*" and, together with the 15% Noteholders Certificate, the "*Noteholders New Common Stock Certificates*"). Consistent with

47

Article VI.E.1(b) of the Plan, on the Effective Date, the Debtors shall deliver the 11% Noteholders Certificate and the 15% Noteholders Certificate to the applicable Senior Subordinated Notes Trustee, which distribution shall be governed by the Senior Subordinated Notes Indenture and shall be deemed completed when delivery is made to the Senior Subordinated Notes Trustees, who shall be deemed to be the Holders of 11.0% Senior Subordinated Notes Claims and Holders of 15.0% Senior Subordinated Notes Claims, as appropriate, for purposes of distributions to be made under the Plan. To facilitate further distribution of New Common Stock certificates to the Holders of Claims in Class 5A and Class 5B pursuant to last sentence of Article VI.E.1(b) of the Plan, the Debtors shall retain a stock transfer agent (the "*Stock Transfer Agent*") on, before, or as soon as practicable after, the Effective Date, but in any event no later than five Business Days after the Effective Date. After retention of the Stock Transfer Agent, which, for the avoidance of doubt may occur after the Effective Date, the Senior Subordinated Notes Indenture Trustees shall deliver the Noteholders New Common Stock Certificates to the Stock Transfer Agent, which shall then use commercially reasonable means to distribute New Common Stock to the appropriate Holders of Claims in Class 5A and Class 5B in certificated form or in another form reasonably requested by such Holders as soon as practicable thereafter (subject to each such Holder of Claims in Class 5A and Class 5B first executing and delivering to the Debtors the Joinder Agreement set forth as Exhibit A to the New Stockholders Agreement). The Senior Subordinated Notes Indenture Trustees shall assist and cooperate with the Debtors and the Stock Transfer Agent with respect to the Stock Transfer Agent's duties, it being understood, however, that the delivery of the Noteholders New Common Stock Certificates to the Stock Transfer Agent pursuant to the preceding sentence shall constitute the sole obligation of the Senior Subordinated Notes Indenture Trustees to

48

arrange for delivery to the Holders of 11.0% Senior Subordinated Notes Claims and Holders of 15.0% Senior Subordinated Notes Claims pursuant to Article VI.E.1(b)(2) of the Plan.

106.    **Section 1145 Exemption.**  Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance and distribution of the New Common Stock as contemplated by Article II.B of the Plan under the New Value Alternative shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution or sale of Securities.  In addition, under section 1145 of the Bankruptcy Code, such New Common Stock will be freely tradable in the United States by the recipients thereof, subject to  the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with applicable securities laws and any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments and subject to any restrictions in the New Stockholders Agreement and Reorganized Atrium's New Certificate of Incorporation.

107.    **Section 1146 Exemption.**  Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any Security, or the making, delivery, filing, or recording of any instrument of transfer under, or in connection with, the Plan (including, for this purpose, in connection with the organizational documents relating to the Reorganized Debtors, the New Value Alternative Loan Documents and the other documents relating to the transactions described in Article IV. of the Plan) shall not be taxed under any law imposing a recording tax, stamp tax, transfer tax, or similar tax.  Furthermore, and without limiting the foregoing, any transfers from a Debtor to a Reorganized Debtor or to any other Person pursuant to the Plan, as contemplated by the Plan or pursuant to any agreement regarding the transfer of title to or

ownership of any of the Debtors' property in the United States, shall not be subject to any document recording tax, stamp tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording tax, or other similar tax or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. The Court shall retain specific jurisdiction with respect to these matters.

108. **Corporate Action: Authorizations and Approvals.** Upon the Effective Date, or as soon thereafter as is reasonably practicable, all actions contemplated by the Plan shall be deemed authorized and approved in all respects. All matters provided for in the Plan involving the corporate structure of the Reorganized Debtors, including the contemplated occurrence of certain Restructuring Transactions pursuant to Article IV.B of the Plan, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors or officers of the Debtors or the Reorganized Debtors. On or (as applicable) before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors shall be authorized and (as applicable) directed to issue, execute and deliver the agreements, documents, securities and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtors and any and all other agreements, documents, securities and instruments relating to the implementation of the New Value Alternative. The authorizations and approvals

contemplated by Article IV.J of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law, including with respect to the Restructuring Transactions.

109. **Government Approvals Not Required.** This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan and any documents, instruments or agreements, and any amendments or modifications thereto.

110. **Resolution of Tax Objections.** In full and final resolution of the formal and informal objections to Confirmation of the Plan asserted by (a) Carrollton-Farmers Branch Independent School District [Docket No. 551], (b) Wylie Independent School District and County of Denton, Texas [Docket No. 543], (c) Dallas County, Texas, (d) Harris County, Texas, (e) Cypress-Fairbanks Independent School District, (f) Irving Independent School District, (g) the City of Wylie, Texas, (h) the Missouri Department of Revenue (the "*MoDR*") [Docket No. 552] and (i) the Texas Comptroller of Public Accounts (the "*Texas Comptroller*") [Docket No. 557] (collectively, the "*Tax Claimants*"), which objections shall be deemed withdrawn upon entry of this Confirmation Order to the extent not previously withdrawn, the Debtors and the Reorganized Debtors agree to the following terms:

a. To the extent not previously paid, the Debtors or the Reorganized Debtors shall, within five business days of entry of this Confirmation Order, pay MoDR in the amount of $5,451.23 (the "*MoDR Claim*");

b. the Debtors or the Reorganized Debtors shall pay the secured tax claims of Texas ad valorem tax jurisdictions for the 2010 tax year and tax claims owed to the Texas Comptroller (collectively, and together with the MoDR Claim, the "*Tax Claims*") in the ordinary course of the Debtors' businesses, and the Tax Claimants shall retain all liens they currently hold, the priority of which shall not be affected by any financing entered into in conjunction with or subsequent to entry of this Confirmation Order. In the

51

event the Debtors and/or the Reorganized Debtors do not timely pay the Tax Claims under applicable State law, the Tax Claims shall receive interest from the Petition Date through the Effective Date under section 506(b) of the Bankruptcy Code, as well as from the Effective Date until paid in full under section 1129(b) of the Bankruptcy Code, whether or not Disputed, at the applicable statutory rate, and shall be entitled to penalties and interest;

c.    the Tax Claims shall not be subject to a maximum limitation under Article VII.C of the Plan, and any objection to the Tax Claims shall be filed no later than 90 days after October 18, 2010;

d.    any over-payment of a Tax Claim shall be handled under the terms of and within the time parameters specified under applicable state law and shall not be subject to the provisions of Article VI.L.1 of the Plan;

e.    nothing in this Confirmation Order shall affect the right of the Texas Comptroller to assert a right of set off under section 553 of the Bankruptcy Code and the applicable provisions of non-bankruptcy law;

f.    the release provisions in Article VIII of the Plan shall not effect (i) the Texas Comptroller's rights to assert liability, if any, against the Debtors' directors and officers under section 111.016 of the Texas Tax Code and (ii) the MoDR's right to assert liability, if any, against the Debtors' directors and officers under section 144.157.3 of the Missouri Revised Statutes; *provided, however*, that if the Debtors and the Texas Comptroller or the Debtors and the MoDR, as the case may be, agree to resolve any such Tax Claims on terms mutually acceptable to the parties, then the Texas Comptroller and/or the MoDR, as the case may be, shall have no right to assert liability against any of the Debtors' officers or directors and the release provisions in Article VIII of the Plan shall be in full force and effect against the Texas Comptroller and/or the MoDR, as the case may be; and

g.    notwithstanding anything to the contrary contained herein, the Debtors and the Reorganized Debtors shall retain any and all rights whatsoever with respect to the Tax Claims, including all rights to contest the value or amount of the Tax Claims under applicable State law procedures, the Plan, the applicable provisions of the Bankruptcy Code and any other order entered by the Court.

111.    **Resolution of GECC Objection.** For the avoidance of doubt, notwithstanding any other provision of the Plan or this Order, with respect to the Master Leases and related Schedules (together, the "*Leases*") between any of the Debtors, as lessee, and General Electric

Capital Corporation ("**GECC**"), as lessor, the Debtors will pay to GECC (a) the cure amounts set forth in Exhibit E to the Second Amendment to the Plan Supplement on the Effective Date, and (b) all amounts accruing from and after February 1, 2010 (to the extent not already paid) as such amounts become due under the Leases, it being understood that no such amounts are outstanding as of the date of entry of this Order and, furthermore, that the Debtors and the Reorganized Debtors reserve all rights to contest or otherwise object to any claims described in subclause (b) of this paragraph under the terms of the Leases or any other order entered by the Court.

112. **Resolution of Royal Objection.** Notwithstanding anything contained in this Order, the Plan or the Plan Supplement (including any amendments thereto), Atrium Companies, Inc. and Thermal Industries, Inc. shall assume the Second Amended and Restated Vinyl Extrusion Supply Agreement, dated April 1, 2009, (the "*Royal Agreement*") with Royal Group, Inc. ("*Royal*"), and shall, in accordance with the applicable provisions of the Plan, pay to Royal's affiliate and designee, Royal Window and Door Profiles Plant 13, Inc., P.O. Box 33092, Newark, NJ 07188-0092, the total amount of $187,905.10 in full and final satisfaction of its prepetition Cure Claim. All other amounts due and owing to Royal under the Royal Agreement after the Petition Date shall be paid in the ordinary course of business, it being understood that the Debtors and the Reorganized Debtors reserve all rights to contest or otherwise object to such post-Petition Date amounts alleged to be due and owing in accordance with the terms of the Royal Agreement.

113. **Severability of Plan Provisions.** This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable

pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (c) nonseverable and mutually dependent.

114.    **Substantial Consummation.** On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

115.    **Conflicts with the Plan.** Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement or any other order (other than this Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

116.    **Conflicts Between Confirmation Order and Plan.** The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided, however,* that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

117.    **Effectiveness of All Actions and Reservation of Rights.** Except as expressly set forth in the Plan, the Plan shall have no force or effect before the entry by the Court of this Order, and this Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders before the Effective Date.

118.     **Notice of Entry of Confirmation Order and Occurrence of the Effective Date.** Pursuant to Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c), the Reorganized Debtors shall file and serve notice of entry of this Confirmation Order and occurrence of the Effective Date in substantially the form annexed hereto as **Exhibit 2** (the "*Notice of Confirmation and Effective Date*") on all Holders of Claims and Interests, the U.S. Trustee, counsel to the Creditors' Committee, counsel to the Senior Secured Agent, counsel to the Ad Hoc Group Senior Secured Lenders, the Plan Investor, Kenner, Golden Gate and other parties in interest by first-class mail, postage prepaid, within three Business Days after the Effective Date.     The Notice of Confirmation and Effective Date shall also be published in *The Wall Street Journal* (national edition) and Canada's *The Globe and Mail* and posted electronically at www.atriumrestructuring.com.  Such notice is adequate under the particular circumstances and no other or further notice is necessary.  The form of Notice of Confirmation and Effective Date substantially in the form annexed hereto as **Exhibit 2** is approved.

119.     **Final Order.** This Confirmation Order is a final order.

120.     **Effectiveness of Order.** In accordance with Bankruptcy Rules 3020(e), 6004(h) and 6006(d) (and notwithstanding any other provision of the Bankruptcy Code or the Bankruptcy Rules), this Confirmation Order shall not be stayed and shall be effective immediately upon its entry.  This Confirmation Order is and shall be deemed to be a separate order with respect to each Debtor for all purposes.

121. **Retention of Jurisdiction.** Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, and subject to applicable law, on and after the Effective Date, the Court shall retain jurisdiction over all matters arising out of, or related to, these chapter 11 cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including, without limitation, jurisdiction over those matters set forth in Article XI of the Plan. Notwithstanding the foregoing or any provision of the Plan, on and after the Effective Date this Court shall not exercise jurisdiction over any matters arising out of, or related to, the New Value Alternative Loan Documents.

Dated: April 28, 2010
Wilmington, Delaware

THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE